**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| RICHARD DASCHBACH, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| ROCKET MORTGAGE, LLC, a Michigan limited liability company, | |
| *Defendant.* | |

Plaintiff Richard Daschbach ("Daschbach" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Rocket Mortgage, LLC ("Rocket Mortgage" or "Defendant") to stop Rocket Mortgage's practice of placing calls to consumers that violate the Telephone Consumer Protection Act (TCPA) and New Hampshire state telemarketing laws, and to obtain redress for all persons similarly injured by Rocket Mortgage's conduct. Plaintiff also seeks an award of statutory damages to the members of the Classes, plus court costs and reasonable attorneys' fees. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.     Plaintiff Daschbach is an individual who resides in Exeter, Rockingham County, New Hampshire.

2.     Defendant Rocket Mortgage is a Michigan limited liability company whose principal place of business is located at 1050 Woodward Avenue, Detroit, MI 48226.

## JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §
1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*
("TCPA" or the "Act"), a federal statute. This Court also has subject matter jurisdiction under
the Class Action Fairness Act, 28 U.S.C. § 1332 ("CAFA"), because the alleged Classes consists
of over 100 persons, there is minimal diversity, and the claims of the class members when
aggregated together exceeds $5 million. Further, none of the exceptions to CAFA applies.

4.      The Court has personal jurisdiction over Defendant and venue is proper in this
District, because Defendant regularly conducts business in this District and a substantial part of
the wrongful conduct giving rise to the claims asserted here occurred in, was directed to, and/or
emanated from this District.

## COMMON ALLEGATIONS OF FACT

5.      Defendant Rocket Mortgage is a nationwide mortgage loan provider.

6.      In an attempt to promote its business and to generate leads for its mortgage related
products and services, Rocket Mortgage conducted (and continues to conduct) a wide scale
telemarketing campaign. Unfortunately for consumers, Rocket Mortgage places repeated
unsolicited, autodialed telephone calls and texts to numbers that appear on the National Do Not
Call Registry—all without securing prior express consent, invitation, or permission. Such
conduct violates the TCPA.

7.      The TCPA and its implementing regulations, 47 C.F.R. § 64.1200, *et seq.*,
prohibit companies and persons, such as Rocket Mortgage, from placing multiple, unsolicited
autodialed telephone calls to persons who have had their phone numbers listed on the national
Do Not Call registry for the past thirty (30) days.

8.      In making the autodialed calls at issue in this Complaint, Defendant and/or its agents utilized an automatic telephone dialing system ("ATDS"). Specifically, the hardware and software used by Defendant and/or its agents has the capacity to store, produce, and dial random or sequential numbers *en masse*, in an automated fashion.

9.      On information and belief, the dialing system used to place the calls at issue has the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting and calling at a later date. When placing the calls and texts at issue, Defendant employed this feature of its dialing system.

10.     On further information and belief, the dialing system at issue also has the capacity to produce telephone numbers using a random or sequential number generator. When placing the calls and texts at issue, Defendant employed this feature of its dialing system.

11.     The TCPA was enacted to protect consumers from unauthorized, unsolicited telephone calls exactly like those alleged in this Complaint—autodialed calls and texts placed to numbers without prior express consent, invitation, or permission to persons who listed their phone numbers on the Do Not Call registry.

12.     Defendant also repeatedly violated New Hampshire's state telemarketing laws which forbid telephone sales calls to New Hampshire residents whose numbers are registered on the Do Not Call Registry. Defendant placed repeated, unsolicited telemarketing calls to New Hampshire residents, such as Plaintiff, whose numbers appear on the Do Not Call Registry.

13.     By placing the unsolicited calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such telephone calls and texts as well as a loss of value realized for any monies that consumers paid to

their carriers for the receipt of such telephone calls. Furthermore, the calls interfered with and interrupted Plaintiff's and the other class members' peace and quiet, their right to be left alone, and their use and enjoyment of their phones, including the related data, software, and hardware components. Defendant also injured the Plaintiff and class members by causing wear and tear on their phones.

14.    At no time did Defendant obtain prior express consent, invitation, or permission from Plaintiff and the class members orally or in writing to receive telephone calls or texts from Defendant.

15.    Defendant was, and is, aware that telephone calls or texts described herein were made to consumers like Plaintiff who have not consented to receive them.

16.    To the extent any third party placed the telephone calls, the third party acted on behalf of Defendant, with Defendant's knowledge and approval, and under Defendant's direction and control. Further, Defendant knowingly received the benefit of the calls and has ratified the making of calls.

17.    On behalf of the Classes, Plaintiff seeks an injunction requiring Rocket Mortgage to cease making unsolicited autodialed telephone calls and text messages and repeated unauthorized calls and texts to persons registered on the Do Not Call registry and an award of statutory damages to the class members, together with pre- and post-judgment interest, costs and reasonable attorneys' fees.

## FACTS SPECIFIC TO PLAINTIFF

18.    Plaintiff Daschbach is the primary and customary user of the cellular telephone number ending in 7110. Daschbach registered the telephone number ending in 7110 on the National Do Not Call Registry on February 23, 2019.

4

19.     Plaintiff's cellular telephone number ending in 7110 is used for residential purposes and is not associated with a business.

20.     In or around early September 2021, Plaintiff viewed an online article entitled "16 Things To Do To Save Money In September", which included various tips for visitors to save money. One of the tips informed individuals born prior to 1986 that they could qualify to save $3,600 per year off their mortgage. To learn more, individuals were instructed to "click your state" to "instantly check your eligibility".

21.     After clicking his state, Plaintiff was redirected to the webpage smart.iloveretirement.com, which again advertised that individuals could save up to $3,600 per year off their mortgage. The website requested that Plaintiff select his age to check his eligibility and explained that "it costs nothing to check" and "takes maybe 2 minutes".

22.     After selecting his age range, Plaintiff was redirected to the website fedratewatch.org. The website included the claim that visitors could "SAVE UP TO $3,252 ($271 PER MONTH) OFF YOUR MORTGAGE! CHECK IF YOU QUALIFY FOR REFINANCE RELIEF PROGRAMS". All that visitors were required to do was answer a series of questions presented on successive webpages. When each question would appear on a new page, the webpage would denote the visitor's progress as "Question 1 of 11", "Question 2 of 11", etc. The questions included as follows:

        a.  Question 1 of 11: "Are you a homeowner?"

        b.  Question 2 of 11: "What type of home do you have?"

        c.  Question 3 of 11: "How is Your Credit?"

        d.  Question 4 of 11: "Have you or your spouse served in the military?"

        e.  Question 5 of 11: "How much is your home worth?"

      f.   Question 6 of 11: "How much do you owe on your mortgage?"

      g.   Question 7 of 11: "What is your current interest rate?"

      h.   Question 8 of 11: "Where do you currently live?"

      i.   Question 9 of 11: "What is your employment status?"

23.    On the tenth page, or "Question 10 of 11", the webpage proclaims that "Your rates are ready to view!" and "Enter your information for personalized results". The page requests that visitors enter their first name, last name, e-mail, phone number, and alternative phone number and then select "Submit"

24.    A reproduction of the webpage as it was viewed by Plaintiff is reproduced below:



**SAVE UP TO $3,252 ($271 PER MONTH) OFF YOUR MORTGAGE
CHECK IF YOU QUALIFY FOR REFINANCE RELIEF PROGRAMS**

Question 10 of 11

## Your rates are ready to view!

Enter your information for personalized results

**First Name**

First Name

**Last Name**

Last Name

**E-mail**

E-Mail

**Phone**

Phone Number

**Alternate Phone (not required)**

Alternate Phone Number

**Submit**

25.    To view his results, Plaintiff entered his information and selected Submit. After clicking submit, Plaintiff was redirected to a page that claims, "We've Found Your Rates!", but the webpage included no rates whatsoever. Rather, the webpage included a list of links to third party websites that Plaintiff can contact for products and services. None of the links explicitly claim to relate to the webpage's previously advertised so-called "mortgage program" to reduce your monthly payments.

26.    After Plaintiff's counsel reviewed the fedratewatch.org website, it was clear that the website is a classic bait and switch. Indeed, fedratewatch.org does not, as it promises, determine visitors' eligibility for a mortgage program, nor does it provide visitors with any rates to review. Instead, fedratewatch.org deceives visitors into believing that they will learn helpful information regarding their mortgage loans. But fedratewatch.org is actually a lead mill that captures visitors' personal information, including their telephone numbers and email addresses and then sells that information to third parties, including Rocket Mortgage, who then use the information to solicit consumers via telemarketing calls.

27.    During Plaintiff's counsel's review of the fedratewatch.org webpage, it was revealed that buried at the bottom of page 10 (which, again, is denoted as "Question 10 of 11") includes an inconspicuous "disclosure" regarding future telemarketing calls. The disclosure claims that visitors agree to be matched with 4,300 marketing partners[1], including Rocket Mortgage. The bottom portion of page 10 is reproduced on the following page:

---

[1] The total number of marketing partners is as listed on fedratewatch.org on of August 26, 2022. The total marketing partners on the date Plaintiff visited the website may vary slightly.

## Your rates are ready to view!

Enter your information for personalized results

**First Name**

First Name

**Last Name**

Last Name

**E-mail**

E-Mail

**Phone**

Phone Number

**Alternate Phone (not required)**

Alternate Phone Number

**Submit**

We take your privacy seriously. By clicking the button, you agree to be matched with partners from our network including Rocket Mortgage and loanDepot, and consent (not required as a condition to purchase a good/service) for us and/or them to contact you (including through automated means; e.g. autodialing, text and pre-recorded messaging) via telephone, mobile device (including SMS and MMS), and/or email, even if you are on a corporate, state or national Do Not Call Registry. You agree that we can share your personal data with third parties, such as our mortgage partners, service providers and other affiliates, and that we can use this data for marketing and analytics, and to make your experience easier. Consent is not a condition to receive our services. As an alternative, you may contact us by email at customercare@twcfeedback.com.

28.     The disclosure is not presented in clear and conspicuous manner. Indeed, the disclosure does not appear on the screen when a visitor accesses the webpage. Rather, a visitor can go through the entire process, enter all of their personal information, select "Submit" and never even know that the disclosure existed. To view the disclosure, visitor would need to scroll beyond the submit button. In Plaintiff's case, Plaintiff never scrolled past the submit button and the disclosure was never presented to him.

29.     Moreover, the webpage is designed to detract from the disclosure. Nothing on the tenth page (or any prior page) would lead a website visitor to understand that they are providing consent to be contacted by third parties. Rather, the webpage claims that visitors are on "Question 10 of 11", that their "rates are ready to view!", and that they only need to "[e]nter

8

[their] information for personalized results". All of these statements are in larger font size than the "disclosure" and are located above where a visitor inputs their personal information. More problematic, all of these statements are false. Indeed, there is no next question nor is there any "personalized results" that a visitor will ever get to view on the website. And if a visitor enters their information, the information is not utilized to provide an immediate personalized result. Instead, the information is captured and sold to third parties. Together, the webpage can only be viewed as a deceptive means to trick visitors into capturing their personal information to be used for telemarketing purposes absent any clear or conspicuous disclosure. This cannot be considered sufficient prior express consent, invitation, or permission under the TCPA.

30.     Shortly after visiting fedratewatch.org, Plaintiff began receiving telemarketing calls from Rocket Mortgage. Indeed, on September 13, 2021, Plaintiff received a call from Rocket Mortgage from the telephone number (888) 371-2180.

31.     On September 14, 2021, at 8:16 a.m., Plaintiff received a call from Rocket Mortgage from the telephone number (603) 520-9861.

32.     On September 14, 2021, at 10:27 a.m., Plaintiff received a call from Rocket Mortgage from the telephone number (888) 371-2180. During this call, a representative of Rocket Mortgage solicited Plaintiff to purchase Defendant's mortgage related products and services. After the call concluded, Plaintiff received a follow-up email from Mollie Warsing, a mortgage banker with Rocket Mortgage. The email also solicited Plaintiff to purchase Defendant's products and services.

33.     On or around September 15, 2021, Plaintiff received another call from Mollie Warsing, a mortgage banker with Rocket Mortgage. Ms. Warsing again solicited Plaintiff to purchase Defendant's mortgage related products and services. During this call, Plaintiff

requested that Rocket Mortgage stop placing calls to his cellular telephone.

34. On or around September 23, 2021, Plaintiff received a text message from Rocket Mortgage from the shortcode 762538. The text read as follows: "Rocket Mortgage: Rates are near historic lows AGAIN! Is your rate over 3%? Call us today at (888) 980-2752. Reply HELP for help, STOP to end texts."

35. On March 10, 2022, Plaintiff received another text message from Rocket Mortgage from the shortcode 762538. The text read as follows: "Rocket Mortgage: Simple. Convenient. Designed for you. Call us today at (888) 329-2881 to buy a home with the experts! Reply HELP for help, STOP to end texts."

36. On March 25, 2022, Plaintiff received yet another text message from Rocket Mortgage from the shortcode 762538. The text read as follows: "Rocket Mortgage: Today, we're opening up our pricing so you can save even more! Call us at (888) 329-4027 to save! Reply HELP for help, STOP to end texts."

37. On information and belief, Rocket Mortgage has placed additional telemarketing calls to Plaintiff's cellular telephone number.

38. All of the calls solicited or sought to solicit Plaintiff to purchase Defendant's mortgage related products and services.

39. At no time did Plaintiff ever consent to receive telephone calls from Defendant, and Plaintiff has no prior relationship with Defendant.

40. To redress these injuries, Daschbach, on behalf of himself and the Classes of similarly situated individuals, brings suit under the TCPA, which prohibits the making of unsolicited autodialed calls as well as repeated, unsolicited telemarketing calls to cellular telephones registered on the National Do Not Call Registry. On behalf of the Classes, Daschbach

seeks an injunction requiring Rocket Mortgage to cease placing unsolicited autodialed telephone calls and texts, repeated unauthorized calls and texts to persons registered on the Do Not Call registry, and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and the following Classes:

**Autodialed Call Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, called or texted; (2) on the person's cellular telephone; (3) for the same purpose Plaintiff was called; (4) using the equipment used to call Plaintiff; and (5) for whom Defendant claims it obtained prior express consent via the website fedratewatch.org.

**Autodialed Stop Call Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, called or texted; (2) on the person's cellular telephone; (3) for the same purpose Plaintiff was called; (4) using the equipment used to call Plaintiff; and (5) who requested that Defendant not call them again.

**DNC Registry Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, caused to be called or texted; (2) on his/her telephone; (3) at least twice within any 12-month period; (4) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (5) for the purpose of selling or promoting Defendant's products or services; and (6) for whom Defendant claims it obtained prior express invitation or permission via the website fedratewatch.org.

**DNC Stop Class:** All persons in the United States who from four years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, caused to be called or texted; (2) on his/her telephone; (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling or promoting Defendant's products or services; and (5) who received at least two additional calls or texts from Defendant at least thirty days after requesting not to be called again.

**NH DNC Registry Class:** All persons that reside in New Hampshire who from three years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, caused to be called or texted at least once; (2) on his/her telephone; (3) where the telephone number had been listed on the National Do Not Call Registry for at least ninety two (92) days; (4) for the purpose of selling or promoting Defendant's products or services; and (5) for whom Defendant claims it obtained express consent via the website fedratewatch.org.

**NH DNC Stop Class:** All persons that reside in New Hampshire who from three years prior to the filing of the initial complaint in this action through the date notice is sent to the class members: (1) Defendant, or a third person acting on behalf of Defendant, caused to be called or texted at least once; (2) on his/her telephone; (3) where the telephone number had been listed on the National Do Not Call Registry for at least ninety two (92) days; (4) for the purpose of selling or promoting Defendant's products or services; and (5) after the person requested not to receive future calls.

42.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assignees of any such excluded persons. Plaintiff anticipates the need to amend the class definition following appropriate discovery.

43.     **Numerosity:** The exact number of members within the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has placed unsolicited calls to thousands of consumers who fall into the defined Classes. Members of the Classes can be objectively identified through reference to Defendant's records, consumer phone records, and other evidence to be gained in

12

discovery.

44.     **Typicality:** Plaintiff's claims are typical of the claims of other members of the

Classes, in that Plaintiff and the members of the Classes sustained damages arising out of

Defendant's uniform wrongful conduct.

45.     **Adequate Representation:** Plaintiff will fairly and adequately represent and

protect the interests of the Classes and has retained counsel competent and experienced in

complex class actions. Plaintiff has no interests antagonistic to those of the Classes, and

Defendant has no defenses unique to Plaintiff.

46.     **Commonality and Predominance:** There are questions of law and fact common

to the claims of Plaintiff and the Classes, and those questions predominate over any questions

that may affect individual members of the Classes. Common questions for the Classes include,

but are not necessarily limited to the following:

   (a) Whether Defendant's conduct violated the TCPA;

   (b) Whether Defendant obtained prior express consent, as required by the

   TCPA, prior to placing the telemarketing calls at issue;

   (c) Whether Defendant obtained prior express invitation or permission, as

   required by the TCPA, prior to placing the telemarketing calls at issue;

   (d) Whether Defendant's conduct violated New Hampshire's state

   telemarketing laws;

   (e) Whether Defendant made the calls and/or text messages utilizing an

   ATDS;

   (f) Whether Rocket Mortgage systematically placed unsolicited telephone

   calls to consumers whose telephone numbers were registered with the National

Do Not Call Registry for at least 30 days without first obtaining prior express

consent, invitation, or permission;

(g)     Whether Defendant's calls constitute "telemarketing sales calls" under the

New Hampshire's state telemarketing laws;

(h)     Whether any third party made the calls and, if so, whether Defendant is

liable for such calls;

(i)     Whether the Plaintiff and the other members of the Classes are entitled to

statutory damages; and

(j)     Whether Defendant acted willfully so as to require an award of treble

damages.

47.     **Superiority:** This case is also appropriate for class certification because class

proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy. Joinder of all parties is impracticable, and the damages suffered by the

individual members of the Classes will likely be relatively small, especially given the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

Thus, it would be virtually impossible for the individual members of the Classes to obtain

effective relief from Defendant's misconduct. Even if class members could sustain such

individual litigation, it would still not be preferable to a class action, because individual litigation

would increase the delay and expense to all parties due to the complex legal and factual

controversies presented in this Complaint. By contrast, a class action presents far fewer

management difficulties and provides the benefits of single adjudication, economy of scale, and

comprehensive supervision by a single court. Economies of time, effort and expense will be

fostered and uniformity of decisions ensured.

48.     **Conduct Similar Towards All Class Members:** By committing the acts set forth in this pleading, Defendant has acted or refused to act on grounds substantially similar towards all members of the Classes so as to render certification of the Classes for final injunctive relief and corresponding declaratory relief appropriate under Rule 23(b)(2).

## FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq*
### (On Behalf of Plaintiff and the Autodialed Call Class)

49.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

50.     Defendant made unsolicited and unwanted autodialed telemarketing calls and texts to telephone numbers belonging to Plaintiff and the other members of the Autodialed Call Class—without their prior express written consent—in an effort to sell its products and services.

51.     Further, Defendant placed the calls and texts using equipment that, on information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

52.     Defendant failed to obtain any prior express written consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i), a "clear and conspicuous" disclosure informing the person that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

53.     By making unsolicited telephone calls and texts to Plaintiff and members of the Autodialed Call Class's cellular telephones using an ATDS without first obtaining prior express

consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

54.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls and texts on their cellular phones, lost data, and other damages, and, under Section 227(b)(3)(B) are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

55.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Call Class.

56.     Plaintiff and the Autodialed Call Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

### SECOND CAUSE OF ACTION
**Violation of 47 U.S.C. § 227, *et seq***
**(On Behalf of Plaintiff and the Autodialed Stop Call Class)**

57.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

58.     Defendant made unsolicited and unwanted autodialed telemarketing calls and texts to telephone numbers belonging to Plaintiff and the other members of the Autodialed Stop Call Class—without their prior express written consent—in an effort to sell its products and services.

59.     Further, Defendant placed the calls and texts using equipment that, on information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

60.     Any prior express consent Plaintiff or any other class member may have provided was expressly revoked by Plaintiff and the Autodialed Stop Call Class members when they requested that the calls stop.

61.     Prior express consent under the TCPA may be revoked.

62.     Plaintiff and the Autodialed Stop Call Class members expressly requested that Defendant no longer place telemarketing calls, including text messages, to them, after which Defendant failed to honor the requests and failed to place Plaintiff and members of the Autodialed Stop Call Class on Defendant's internal do-not-call list.

63.     The calls and text messages to Plaintiff and the Autodialed Stop Call Class were made after any consent had been expressly revoked.

64.     Indeed, Defendant acknowledged the stop call request and indicated no further calls would be placed. Despite this, Defendant continued to send text messages to Plaintiff.

65.     By making unsolicited telephone calls and texts to Plaintiff and members of the Autodialed Stop Call Class's cellular telephones using an ATDS after any prior express consent was revoked, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

66.     As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed Stop Call Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls and texts on their cellular phones, lost data, and other damages, and, under Section 227(b)(3)(B) are each entitled to, inter alia, a minimum of $500 in damages for each such violation of the TCPA.

67.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Autodialed Stop Call Class.

68.    Plaintiff and the Autodialed Stop Call Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

### THIRD CAUSE OF ACTION
### Violation of 47 U.S.C. § 227, *et seq*
### (On Behalf of Plaintiff and the DNC Registry Class)

69.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

70.    47 U.S.C. § 227(c)(5) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

71.    The TCPA's implementing regulation—47 C.F.R. § 64.1200(c)—provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." See 47 C.F.R. § 64.1200(c).

72.    47 C.F.R. § 64.1200(e) provides that 47 C.F.R. §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" and the Commission's Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and

must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

73.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate

any call for telemarketing purposes to a residential telephone subscriber unless such person or

entity has instituted procedures for maintaining a list of persons who request not to receive

telemarketing calls made by or on behalf of that person or entity. The procedures instituted must

meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long-distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product

19

being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made."

74.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers like the Plaintiff and the DNC Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.     Defendant and/or its agent(s) placed more than one unsolicited telephone call or text to Daschbach and the other members of the DNC Registry Class within a 12-month period without having prior express invitation or permission to place such calls and texts.

76.     Each such telephone call or text was directed to a telephone number that had been registered with the National Do Not Call Registry for at least 30 days.

77.     Daschbach and the other members of the DNC Registry Class did not provide consent to receive such telemarketing calls or texts from Rocket Mortgage or its agents.

78.     Neither Rocket Mortgage nor its agents have any record of consent to place such telemarketing calls or texts to Plaintiff or the other members of the DNC Registry Class.

79.     Defendant violated 47 C.F.R. §§ 64.1200(d) and (e) by causing calls and texts to be placed for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the members of the DNC Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a do not call policy and a list of persons who request not to receive telemarketing calls.

80.     Additionally, on information and belief, Defendant fails to have a written do not

call policy that is available on request. On further information and belief, Defendant fails to train its employees and personnel involved in telemarketing in the existence and use of its do not call policy or do not call list.

81.     As a result of Defendant's conduct as alleged herein, Daschbach and the members of the DNC Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled to, inter alia, receive at least $500 in damages for each such violation of 47 C.F.R. § 64.1200.

82.     To the extent Defendant's misconduct is determined to have been willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the members of the DNC Registry Class.

83.     Plaintiff and the DNC Registry Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

**FOURTH CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq***
**(On Behalf of Plaintiff and the DNC Stop Class)**

84.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

85.     Plaintiff and other members of the DNC Stop Class expressly requested that Defendant no longer place calls to them, after which Defendant failed to place Plaintiff and other members of the DNC Stop Class on its internal do not call list (or failed to do so within a reasonable time period).

86.     More than thirty days following Plaintiff and the other members of the DNC Stop Class express stop requests to cease their receipt of future calls from Defendant, Defendant placed additional text message calls to Plaintiff and the class members without their consent and

contrary to their prior requests not to be called.

87. Thus, Defendant violated 47 C.F.R. § 64.1200 by initiating calls for telemarketing purposes to telephone subscribers such as Plaintiff and the DNC Stop Class who were registered on the national do not call registry and who specifically told Defendant to stop calling them, and who received more calls within a 12-month period from Defendant after informing Defendant to stop calling them.

88. Defendant made these calls without instituting procedures that comply with minimal regulatory standards, including having a written policy for maintaining a list of persons who request not to receive telemarketing calls from them, and by not informing and training their personnel engaged in telemarketing in the existence and use of any such do-not-call policy or list.

89. As a result of Defendant's unlawful conduct, Plaintiff and the DNC Stop Class suffered actual damages and, under section 47 U.S.C. § 227(c)(5), Plaintiff and each member of the DNC Stop Class are each entitled to receive up to $500 in damages for each violation of 47 C.F.R. § 64.1200.

90. In the event the Court determines that Defendants' conduct was willful and knowing, the Court may, pursuant to Section 227(c)(5), treble the amount of statutory damages recoverable by Plaintiff and the other members of the DNC Stop Class.

91. Plaintiff and the DNC Stop Class members are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

**FIFTH CAUSE OF ACTION**
**Violation of N.H. Rev. Stat. Ann. § 359-E:8**
**(On Behalf of Plaintiff and the NH DNC Registry Class)**

92. Plaintiff incorporates by reference the foregoing allegations as if fully set forth

herein.

93.     N.H. Rev. Stat. Ann. § 359-E:8 provides that "Telemarketers are prohibited from conducting telemarketing sales calls to any customer who has registered his or her name or telephone number with the do-not-call registry maintained by the list administrator or Federal Trade Commission."

94.     A "telemarketer" is defined as "any person who, for financial profit or commercial purposes in connection with telemarketing, makes telemarketing sales calls to a customer when the customer is in this state or any person who directly controls or supervises the conduct of a telemarketer or causes to be made a telemarketing call on such seller's own behalf or through a salesperson." N.H. Rev. Stat. Ann. § 359-E:7.

95.     Rocket Mortgage is a telemarketer within the meaning of N.H. Rev. Stat. Ann. § 359-E:7.

96.     Rocket Mortgage placed calls and text messages directed to Plaintiff and the NH DNC Registry Class in the State of New Hampshire to solicit sales of its mortgage related products and services.

97.     Plaintiff and members of the NH DNC Registry Class are registered on the Do Not Call Registry.

98.     The calls at issue constitute a "telemarketing sales call" within the meaning of N.H. Rev. Stat. Ann. § 359-E:7(XI).

99.     Daschbach and the other members of the NH DNC Registry Class did not provide consent to receive such telemarketing calls or texts from Rocket Mortgage or its agents.

100.    As a result of Defendant's conduct as alleged herein, Daschbach and the members of the NH DNC Registry Class suffered actual damages and, under N.H. Rev. Stat. Ann. § 359-

E:11, and are each entitled to, inter alia, receive at least $1,000 in damages for each such violation of N.H. Rev. Stat. Ann. § 359-E:8. In addition to damages, Plaintiff and the members of the NH DNC Registry Class also seek attorneys' fees and costs.

101.    To the extent Defendant's misconduct is determined to have been willful and knowing, the Court should, pursuant to N.H. Rev. Stat. Ann. § 359-E:11, shall award up to three times (but not less than 2 times) the damages recoverable by Plaintiff and the members of the NH DNC Registry Class.

102.    Plaintiff and the members of the NH DNC Registry Class are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

## SIXTH CAUSE OF ACTION
### Violation of N.H. Rev. Stat. Ann. § 359-E:8
### (On Behalf of Plaintiff and the NH DNC Stop Class)

103.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

104.    N.H. Rev. Stat. Ann. § 359-E:8 provides that "Telemarketers are prohibited from conducting telemarketing sales calls to any customer who has registered his or her name or telephone number with the do-not-call registry maintained by the list administrator or Federal Trade Commission."

105.    A "telemarketer" is defined as "any person who, for financial profit or commercial purposes in connection with telemarketing, makes telemarketing sales calls to a customer when the customer is in this state or any person who directly controls or supervises the conduct of a telemarketer or causes to be made a telemarketing call on such seller's own behalf or through a salesperson." N.H. Rev. Stat. Ann. § 359-E:7.

106.    Rocket Mortgage is a telemarketer within the meaning of N.H. Rev. Stat. Ann. §

359-E:7.

107.    Plaintiff and other members of the NH DNC Stop Class expressly requested that Defendant no longer place calls to them, after which Defendant failed to place Plaintiff and other members of the NH DNC Stop Class on its internal do not call list (or failed to do so within a reasonable time period).

108.    Despite requests for calls to stop, Rocket Mortgage placed text messages directed to Plaintiff and the NH DNC Stop Class in the State of New Hampshire to solicit sales of its mortgage related products and services.

109.    The text messages at issue constitute a "telemarketing sales call" within the meaning of N.H. Rev. Stat. Ann. § 359-E:7(XI).

110.    As a result of Defendant's conduct as alleged herein, Daschbach and the members of the NH DNC Stop Class suffered actual damages and, under N.H. Rev. Stat. Ann. § 359-E:11, and are each entitled to, *inter alia*, receive at least $1,000 in damages for each such violation of N.H. Rev. Stat. Ann. § 359-E:8. In addition to damages, Plaintiff and the members of the NH DNC Stop Class also seek attorneys' fees and costs.

111.    To the extent Defendant's misconduct is determined to have been willful and knowing, the Court should, pursuant to N.H. Rev. Stat. Ann. § 359-E:11, shall award up to three times (but not less than 2 times) the damages recoverable by Plaintiff and the members of the NH DNC Stop Class.

112.    Plaintiff and the members of the NH DNC Stop Class are also entitled to injunctive relief and corresponding declaratory relief to ensure that the calls stop.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and the Classes, prays for the following

relief:

A.    An order certifying this case as a class action on behalf of the Classes as defined
      above; appointing Plaintiff as the representative of the Classes, and appointing
      their attorneys as Class Counsel;

B.    A declaratory judgment that Defendant's telephone dialing equipment constitutes
      an automatic telephone dialing system under the TCPA;

C.    An order declaring Defendant's telephone calls, as set out above, violate the
      TCPA;

D.    An award of actual monetary loss from such violations or the sum of five hundred
      dollars ($500.00) for each violation of the TCPA, whichever is greater, to be
      trebled where the calls were knowingly or willfully placed, all to be paid into a
      common fund for the benefit of the Plaintiff and the Class Members;

E.    An injunction requiring Rocket Mortgage to stop placing calls and text messages
      to consumers registered on the National Do Not Call Registry absent prior express
      consent, invitation, or permission and to honor requests to cease telemarketing
      calls;

F.    An award of actual monetary loss from such violations or the sum of one
      thousand dollars ($1000.00) for each violation of N.H. Rev. Stat. Ann. § 359-E:8,
      whichever is greater, to be trebled where the calls were knowingly or willfully
      placed, all to be paid into a common fund for the benefit of the Plaintiff and the
      Class Members;

G.    An award of pre-judgment interest;

H.    An award of reasonable attorneys' fees and costs; and

I.      Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


Respectfully Submitted,

**RICHARD DASCHBACH**, individually and on behalf of all others similarly situated,

Dated: September 2, 2022

By:   */s/ V. Richard Ward*
One of Plaintiff's Attorneys

V. Richard Ward, Jr. (NH Bar #14262)
rick@vrwardlaw.com
Law Offices of V. Richard Ward, Jr., PLLC
98 Center Street
PO Box 1117
Wolfeboro, NH 03894
Tel: (603) 569-9222
Fax: (603) 569-9022

Taylor T. Smith*
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 907-7628

*Motion for admission *pro hac vice* to be filed