# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| RICHARD DASCHBACH | : | |
| *individually and on behalf of all* | : | |
| *others similarly situated,* | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | **CASE NO. 1:22-cv-00346-JL** |
| v. | : | |
| | : | |
| ROCKET MORTGAGE, LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | November 29, 2022 |
| | : | |

## ROCKET MORTGAGE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS

**By Its Attorneys,**

/s/ *W. Kyle Tayman*
W. Kyle Tayman (*PHV*)
Brooks R. Brown (*PHV*)
Christina L. Hennecken (*PHV*)
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

Steven J. Dutton (NH 17101)
McLane Middleton
900 Elm Street | Manchester, NH 03101
(603) 628-1379 |steven.dutton@mclane.com

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    I.     Rocket Mortgage and LMB Are Affiliated Companies.............................2

    II.    Plaintiff Agreed to Arbitrate His Claims Against Rocket Mortgage Multiple
        Times in September 2021 and December 2021. ........................................3

        A.    The September 13, 2021 Agreement to LMB's Consent Language and
            Terms of Use................................................................................3

        B.    The December 20, 2021 Agreement to LMB's Consent Language and
            Terms of Use................................................................................5

        C.    LMB's Terms of Use ....................................................................6

    III.    The Lawsuit ............................................................................................7

LEGAL STANDARD............................................................................................ 8

ARGUMENT ...................................................................................................... 9

    I.     Plaintiff Affirmatively Agreed To LMB's Terms of Use After Being on Inquiry
        Notice of Them. ....................................................................................10

    II.    Rocket Mortgage Is Entitled To Enforce the LMB Terms of Use.........................13

        A.    Rocket Mortgage Is a Third-Party Beneficiary..........................14

        B.    Daschbach Is Estopped from Denying Application of The Agreement. ...16

    III.    While the Issue is Expressly Reserved to the Arbitrator, This Dispute Does Not
        Fall Outside the Arbitration Agreement. ...............................................18

CONCLUSION.................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Amazon.com, Inc.*,
  490 F. Supp. 3d 1265 (M.D. Tenn. 2020)...............................................................................11

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)...................................................................................................................8

*Barbosa v. Midland Credit Mgmt., Inc*,
  981 F.3d 82 (1st Cir. 2020)......................................................................................................16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000) .................................................................................................19

*Comer v. Micor, Inc.*,
  436 F.3d 1098 (9th Cir. 2006) .................................................................................................18

*Concord Int'l HK Ltd. v. Instabill Corp.*,
  No. 218-2015-CV-00058, 2015 WL 12967715 (N.H. Super. May 13, 2015)...................16, 17

*Dean Witter Reynolds, Inc. v. Byrd*,
  470 U.S. 213 (1985)...................................................................................................................9

*Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*,
  638 F.3d 367 (1st Cir. 2011).................................................................................................9, 19

*Dohrmann v. Intuit, Inc.*,
  823 F. App'x 482 (9th Cir. 2020) ............................................................................................13

*Ege v. Express Messenger Sys. Inc.*,
  745 F. App'x 19 (9th Cir. 2018)...............................................................................................16

*Emmanuel v. Handy Techs., Inc.*,
  992 F.3d 1 (1st Cir. 2021).........................................................................................................10

*Franklin v. Cmty. Reg'l Med. Ctr.*,
  998 F.3d 867 (9th Cir. 2021) ........................................................................................13, 14, 16

*Garcia v. Pexco, LLC*,
  217 Cal. Rptr. 3d 793 (Cal. Ct. App. 2017).............................................................................14

*GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*,
  140 S. Ct. 1637 (2020)..............................................................................................................14

ii

*Gilbert v. Bank of Am.*,
    No. C 13-01171 JSW, 2015 WL 12953229 (N.D. Cal. Jan. 12, 2015)...................................14

*Golub v. Ne. Univ.*,
    No. 19-cv-10478-ADB, 2020 WL 3086050 (D. Mass. June 10, 2020), *aff'd*,
    No. 20-1674, 2021 WL 6425374 (1st Cir. July 20, 2021)....................................................8, 11

*H.E. Contracting v. Franklin Pierce Coll.*,
    360 F. Supp. 2d 289 (D.N.H. 2005)..............................................................................................11

*Hajibekyan v. BMW of N. Am., LLC*,
    839 F. App'x 187 (9th Cir. 2021) .........................................................................................14, 15

*Hargen-Rodriguez v. UBS Tr. Co. of P.R.*,
    No. 16-2340 (FAB), 2017 WL 2937592 (D.P.R. July 7, 2017)...................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019).....................................................................................................................18

*Kramer v. Toyota Motor Corp.*,
    705 F.3d 1122 (9th Cir. 2013) ......................................................................................................14

*Labajo v First Int'l Bank & Tr.*,
    No. EDCV 14-00627-VAP, 2014 WL 4090527 (C.D. Cal. July 9, 2014) ..............................16

*Landry v. Time Warner Cable, Inc.*,
    No. 16-cv-507-SM, 2018 WL 4697578 (D.N.H. Sept. 27, 2018) .............................................9

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) .........................................................................................10, 13

*Lei v. Amway Corp.*,
    No. 14-04022-RGK, 2014 WL 12596787 (C.D. Cal. July 23, 2014)......................................15

*Lifchits v. Integon Nat'l Ins. Co.*,
    No. 18-cv-12637-ADB, 2020 WL 4756272 (D. Mass. Aug. 17, 2020) ..................................11

*Macklin v. Biscayne Holding Corp.*,
    No. 19-561 WES, 2021 WL 1904523 (D.R.I. May 12, 2021)...................................................9

*Main Course FoodSolutions, Inc. v. Kraft Heinz Co.*,
    523 F. Supp. 3d 198 (D.P.R. 2021)...............................................................................................17

*Meyer v. Uber Techs., Inc.*,
    868 F.3d 66 (2d Cir. 2017)............................................................................................................10

*Mohamed v. Uber Techs., Inc.*,
    109 F. Supp. 3d 1185 (N.D. Cal. 2015), *aff'd in part, rev'd in part, remanded*,
    848 F.3d 1201 (9th Cir. 2016) ...................................................................................19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)......................................................................................................8, 9, 19

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) ...................................................................................14

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ...................................................................................10

*Nicosia v. Amazon.com, Inc*.,
    384 F. Supp. 3d 254 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020)......................18

*Okereke v. Uber Techs., Inc.*,
    No. 16-12487-PBS, 2017 WL 6336080 (D. Mass. June 13, 2017) ....................................9, 19

*Pizarro v. QuinStreet, Inc.*,
    No. 22-cv-02803-MMC, 2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) ................................13

*Register.com, Inc. v. Verio, Inc*.,
    356 F.3d 393 (2d Cir. 2004)......................................................................................10

*Rivera-Colon v. AT&T Mobility P.R., Inc*.,
    913 F.3d 200 (1st Cir. 2019) ....................................................................................10

*Rizzo v. Allstate Ins. Co.*,
    185 A.3d 836 (N.H. 2018) ........................................................................................14

*Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    170 F.3d 1 (1st Cir. 1999)..........................................................................................9

*Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co*.,
    976 F.2d 58 (1st Cir. 1992)......................................................................................11

*Shirley v. Rocket Mortg*.,
    No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) (Cox, J.).1, 2, 3, 10, 12, 13,
    15, 16

*Shivkov v. Artex Risk Sols., Inc.*,
    974 F.3d 1051 (9th Cir. 2020), *cert denied*, 141 S. Ct. 2856 (2021)......................................17

*Simpson v. Calivas*,
    650 A.2d 318 (N.H. 1994) ........................................................................................14

iv

*Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC*,
    No. 21-40108-TSH, 2022 WL 3916362 (D. Mass. Aug. 30, 2022) .......................................17

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
    64 F.3d 773 (2d Cir. 1995)........................................................................................................17

**Statutes**

9 U.S.C. § 2........................................................................................................................................8

47 U.S.C. § 227 *et seq*.......................................................................................................................1

N.H. Rev. Stat. Ann. § 359-E:8 .......................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 11 ..............................................................................................................................8

## INTRODUCTION

In direct violation of multiple agreements to arbitrate (not litigate) his claims against Rocket Mortgage on an individual (not class) basis, Plaintiff Richard Daschbach ("Plaintiff" or "Daschbach") purports to bring this putative class action lawsuit against Rocket Mortgage—a multiple J.D. Power award winner for customer service in mortgage loan origination and servicing—for alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and N.H. Rev. Stat. Ann. § 359-E:8 (the "New Hampshire Telemarketing Sales Call Rule" or "NHTSC") arising from purported calls and texts to his cellphone.  *See* First Amended Complaint (ECF No. 10, "FAC").  This Court should foreclose this effort and compel Daschbach's claims to arbitration just as a court in the Eastern District of Michigan did just four months ago in a similar TCPA class action against Rocket Mortgage involving the ***same arbitration agreement*** under nearly identical facts and circumstances as those at issue here.  *Shirley v. Rocket Mortg.*, No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) (Cox, J.).

The record evidence shows that Daschbach visited and used the website refinance.enhancedrefinow.com, a website belonging to Rocket Mortgage's affiliate LMB Mortgage Services, Inc. d/b/a LowerMyBills.com ("LMB").  Viner Decl. ¶ 8.  Daschbach visited the site to request mortgage loan refinance information from Rocket Mortgage (and others), and in so doing, Daschbach expressly agreed to the same arbitration provision contained as part of LMB's Terms of Use as the plaintiff in *Shirley*.  That arbitration provision requires that Daschbach arbitrate any TCPA and other claims against Rocket Mortgage arising from his use of and submissions at refinance.enhancedrefinow.com—*i.e.*, the precise claims at issue here.  Indeed, in *Shirley,* the court held that LMB's arbitration provision was enforceable by Rocket Mortgage, and that its terms were clearly and conspicuously disclosed to the plaintiff.  2022 WL 2541123, at *7-

1

8.  As such, the court granted Rocket Mortgage's motion and compelled plaintiff's TCPA claims to binding, non-class arbitration.  *Id.* at *8.  Similarly, here, Daschbach was presented with nearly identical disclosures (albeit on a different LMB website) and entered into that same arbitration agreement two separate times in 2021 as part his request for and consent to the subsequent calls and text messages challenged in the FAC.  Therefore, as in *Shirley*, this Court should grant Rocket Mortgage's motion and compel this matter to arbitration and dismiss the complaint.

## **BACKGROUND**

### I.    **ROCKET MORTGAGE AND LMB ARE AFFILIATED COMPANIES.**

As part of its residential mortgage business, Rocket Mortgage contacts individuals who have expressed an interest in learning more about its mortgage products and consented to being contacted.   While many of these individuals come to Rocket Mortgage directly (through RocketMortgage.com or by calling the Company's direct line), others like Daschbach express their interest and provide their consent to be contacted by Rocket Mortgage through other channels, including websites run by its affiliate, LMB.   Courtney Decl. ¶ 3.   LMB and Rocket Mortgage share the same parent company, RKT Holdings, LLC.   Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *1.

LMB operates a free online service for consumers seeking home mortgage and refinance loans at its websites, including refinance.enhancedrefinow.com.   Viner Decl. ¶ 3.   For consumers (like Plaintiff) who navigate to this website and voluntarily enter various pieces of information about themselves—such as their property address, phone number, e-mail address, estimated home value, current interest rate, and amount of debt—LMB will match and refer consumers to Rocket Mortgage and other mortgage loan providers.   Viner Decl. ¶ 4.   To avail themselves of this free referral service, consumers visiting the site in September 2021 and December 2021 (like Plaintiff)

2

had to, among other things, first agree to be bound by LMB's Terms of Use.  Viner Decl. ¶¶ 11, 17.  LMB's Terms of Use provide for, among other things, mandatory arbitration of all claims, disputes, and controversies with LMB and its affiliates like Rocket Mortgage arising from or relating to the use of LMB's services, including claims alleging violations of the TCPA.  *Id*. Ex. 4 ¶ 2; *Shirley*, 2022 WL 2541123, at *2.

## II. PLAINTIFF AGREED TO ARBITRATE HIS CLAIMS AGAINST ROCKET MORTGAGE MULTIPLE TIMES IN SEPTEMBER 2021 AND DECEMBER 2021.

According to public records, Plaintiff has owned a home at 4 Harvard St, Exeter, NH 03833 (the "Property") since July 2006.  Hennecken Decl. Ex. 1.  In his original complaint, Plaintiff admitted that in September 2021, he was online looking for mortgage refinance information. Compl. ¶¶ 20-25.  Consistent with that admission, on September 13, 2021 (and later again on December 20, 2021), Plaintiff visited refinance.enhancedrefinow.com seeking mortgage refinance information relating to the Property.  Viner Decl. ¶ 8.  During each visit, Plaintiff entered his information, including his name, his email address, the telephone number ending in 7110, and the street address 4 Harvard St, the state New Hampshire, and the zip code 03833.  *Id.*, Exs. 1 and 2, p. 2.  The telephone number Plaintiff entered into the refinance.enhancedrefinow.com website is the same as the telephone number that Plaintiff alleges in his FAC belongs to him and upon which he alleges he received the challenged calls and texts.  FAC ¶¶ 18-19.

### A. The September 13, 2021 Agreement to LMB's Consent Language and Terms of Use.

On September 13, 2021, to complete his online request for refinance information at refinance.enhancedrefinow.com, Plaintiff filled out information on fifteen distinct pages using his iPad.  Viner Decl. ¶¶ 11-13.  LMB's disclosures, Terms of Use, and Privacy Policy were clearly presented to Plaintiff during this process.  *Id.* ¶¶ 14-15.  On the fifteenth page, after typing in personal information including his property address 4 Harvard St, Brentwood, NH 03833 and

email address rjdnh1936@gmail.com, Plaintiff clicked a green submission button labeled "See my results!"  *Id.* ¶¶ 8, 14-15, Ex. 1 p. 6.  Displayed immediately below that button was a conspicuous express disclosure providing that "[b]y clicking the button above, you express your understanding and consent, electronically via E-Sign," to the following:

1. To be matched with, and contacted by, up to 5 participants in the **<u>LMB Provider Network</u>** about mortgage and financial services products, and consent (not required as a condition to purchase a good/service) for us and them to contact you for marketing purposes (including through the use of an automatic telephone dialing system, artificial or prerecorded means) via telephone or text at the phone number provided above (including SMS and MMS) and email, even if you are on a corporate, state or national Do Not call Registry.  You may revoke your consent at any time.  You agree that LMB, Core Digital Media, and **<u>Quicken Loans</u>** can share your personal data and contact information with third parties, such as mortgage partners, partner companies, and other affiliates, and that these parties may use your personal data and contact information for marketing and analytics, and to make your experience easier.   As an alternative, you may contact us by email at customercare@coredigital.com.

2. To the LMB Lending **<u>Terms of Use</u>**, **<u>Privacy Policy</u>**, and Consent to Doing Business Electronically.

*Id.* (emphasis in original).   The words "LMB Provider Network" were hyperlinked to a list identifying Quicken Loans (n/k/a Rocket Mortgage) as one of the lenders in the "LMB Provider Network."  *Id.*  The words "Quicken Loans" were blue and underlined and hyperlinked to Quicken Loans n/k/a Rocket Mortgage's website.  *Id.*

The phrase "Terms of Use" was also a hyperlink that was underlined and appeared in blue text.  *Id.* ¶ 18.  Clicking on the words "Terms of Use" took the user to LMB's full-text Terms of Use (including the subject arbitration provision), which the user could again review, before clicking the green "See my results!" button to confirm agreement to them.  *Id.* ¶ 15.  Thus, by clicking the "See my results!" button to use LMB's free service, Plaintiff agreed to LMB's Terms of Use setting forth "the terms and conditions applicable to [his] use of the LMB Website and the

products and services provided through or in connection with the LMB Website." *Id.* ¶¶ 14-15, Ex. 1 p. 6, Ex. 4 p. 1.

After clicking "See my results!," Plaintiff was shown a page showing that he had been matched with Quicken Loans (n/k/a Rocket Mortgage).  Viner Decl. ¶ 16.

**B.  The December 20, 2021 Agreement to LMB's Consent Language and Terms of Use.**

On December 20, 2021, to complete his second online request for refinance information at refinance.enhancedrefinow.com, Plaintiff again filled out information on fifteen distinct pages using his iPad. *Id.* ¶ 17.  LMB's disclosures, Terms of Use, and Privacy Policy were presented to Plaintiff in the same manner on December 20, 2021 as they were on September 13, 2021. *Id.* ¶¶ 17-21.  On the fifteenth page, after typing in personal information including his property address 4 Harvard St, Exeter, NH 03833 and email address rjdnh1936@gmail.com, Plaintiff clicked a green submission button labeled "See my results!" *Id.* ¶¶ 8, 20-21, Ex. 2 pp. 2 and 6.  Displayed immediately below that button was the same conspicuous and express disclosure and terms as Plaintiff agreed to on September 13, 2021 (see above), with one difference. *Id.*  In the first paragraph, the disclosure was updated so that the hyperlinked words "Quicken Loans" were changed to "Rocket Mortgage," so that the disclosure read: "You agree that LMB, Core Digital Media, and **Rocket Mortgage** can share your personal data and contact information with third parties . . ." *Id.* ¶ 21, Ex. 2 p. 6.

Again, clicking on the words "Terms of Use," which were a hyperlink that was underlined and appeared in blue text, took the consumer to LMB's full-text Terms of Use (including the subject arbitration provision), which the consumer could again review, before clicking the green "See my results!" button to confirm agreement to them. *Id.* ¶ 21.  Thus, by clicking the "See my results!" button to use LMB's free service, Plaintiff agreed for a second time to LMB's Terms of

Use.  After clicking "See my results!," Plaintiff was shown a page informing him that he had been matched with Rocket Mortgage.  *Id.* ¶ 22.

\*        \*        \*

In sum, during each of the two online submissions to refinance.enhancedrefinow.com, Daschbach was presented with clear and conspicuous disclosures and hyperlinks to LMB's Terms of Use and twice agreed to the Terms of Use through his interactions with the refinance.enhancedrefinow.com website.[1]

### C.  LMB's Terms of Use

LMB's Terms of Use have not changed since September 2021 and were the same during each of Daschbach's visits to the website on September 13, 2021 and December 20, 2021.  Viner Decl. ¶ 25.  As relevant to this Motion, one of the express terms and conditions in LMB's Terms of Use to which Plaintiff two times agreed was a mandatory arbitration provision.  That arbitration provision provided as follows:

> 2.  **ARBITRATION.**   YOU UNDERSTAND AND AGREE THAT **ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES**, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, **CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION**, AND THE ISSUE OF ARBITRABILITY, **SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION** AT A LOCATION DETERMINED BY THE ARBITRATOR.  **ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT**. . . .   **NEITHER YOU NOR LMB SHALL BE ENTITLED TO JOIN OR CONSOLIDATE**

---

[1] To assist the Court in its consideration of this Motion, Rocket Mortgage submits herewith a video of the current refinance.enhancedrefinow.com submission forms and flow on an iPad.  Viner Decl. Ex. 3.  Although the refinance.enhancedrefinow.com website has had minor changes since September 2021, the appearance of the text on the current website is representative of its appearance in September 2021 and December 2021 when Plaintiff used the website.  The video demonstrates that the Terms of Use hyperlinks were clearly presented in blue, underlined font and in close proximity to the buttons Plaintiff clicked.  Viner Decl. ¶ 23, Ex. 3.

**CLAIMS IN ARBITRATION BY OR AGAINST OTHER
CONSUMERS OR ARBITRATE ANY CLAIM AS A
REPRESENTATIVE OR MEMBER OF A CLASS** OR IN A PRIVATE
ATTORNEY GENERAL CAPACITY.  THE PARTIES **VOLUNTARILY
AND KNOWINGLY WAIVE ANY RIGHT THEY HAVE TO A JURY
TRIAL**.

*Id.* ¶ 26 & Ex. 4 ¶ 2 (emphases added).  These terms were clearly presented in all capital letters to

highlight their importance.

Through Plaintiff's September 13, 2021 and December 20, 2021 submissions to the

refinance.enhancedrefinow.com website, Plaintiff agreed *two* separate times to LMB's Terms of

Use, including the mandatory arbitration provision.

**III.    THE LAWSUIT**

Following each of Plaintiff's two submissions at refinance.enhancedrefinow.com seeking

mortgage refinance information from Rocket Mortgage (and others), LMB provided Rocket

Mortgage with the information Plaintiff had submitted on LMB's website.  Viner Decl. ¶¶ 3, 16,

22; Courtney Decl. ¶¶ 7-8.  After receiving this information from LMB, Rocket Mortgage

contacted Plaintiff by telephone to respond to his request for mortgage refinance information.

Courtney Decl. ¶ 9.

On September 2, 2022, despite having agreed to arbitrate any TCPA claims against Rocket

Mortgage arising from or relating to his use of LMB's services (and to arbitrate on an individual,

non-class basis), Plaintiff filed a class action complaint alleging violations of the TCPA and the

NHTSC.  ECF No. 1 ("Compl.").  In the original Complaint, Plaintiff alleged that he visited a

website called fedratewatch.org website "[i]n or around early September 2021" and that by calling

and texting his cellphone in response to his submissions to fedratewatch.org, Rocket Mortgage

somehow violated the TCPA and the NHTSC.   Compl. ¶¶ 20-25, 30-36, 49-112.[2]   Acknowledging that he had pled the incorrect website in the Complaint, Plaintiff filed the FAC on November 4, 2022.  In the FAC, Plaintiff omits facts regarding his multiple online submissions, but references the relevant website he visited in his putative class definitions.  FAC ¶ 31.[3]  He continues to claim that Rocket Mortgage's calls made in response to his request for mortgage refinance information violated the TCPA and NHTSC.  FAC ¶¶ 20-26.

## LEGAL STANDARD

The FAA provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations and internal quotation marks omitted).  In passing the FAA, Congress established a strong federal policy in favor of arbitration, "notwithstanding any state substantive or procedural policies to the contrary."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  In short, federal law mandates that federal courts "rigorously enforce agreements to

---

[2] On November 4, 2022, Plaintiff filed the FAC.  ECF No. 10.  This Court may consider facts and admissions from the original Complaint in deciding this Motion.  *See Golub v. Ne. Univ.,* No. 19-cv-10478-ADB, 2020 WL 3086050, at *1 (D. Mass. June 10, 2020), *aff'd*, No. 20-1674, 2021 WL 6425374 (1st Cir. July 20, 2021) (granting motion to dismiss after considering facts from original and amended complaint).

[3] In an effort to avoid unnecessary motion practice, on October 17, 2022, counsel for Rocket Mortgage sent Plaintiff's counsel a letter explaining the factual basis for this Motion and the Complaint's inaccuracies, and held a conference on October 24, 2022.  Hennecken Decl. ¶ 5. Rocket Mortgage, therefore, reserves its right to pursue recovery of its attorneys' fees for needlessly having to enforce Plaintiff's agreement to arbitrate and for having to respond to allegations in the FAC that lack the requisite good faith basis and factual investigation required by Fed. R. Civ. P. 11.

arbitrate," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985), and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

When considering a motion to compel arbitration, the party seeking to compel arbitration must show "'that a valid agreement to arbitrate exists, that the movant is entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" *Landry v. Time Warner Cable, Inc.*, No. 16-cv-507-SM, 2018 WL 4697578, at *2 (D.N.H. Sept. 27, 2018) (quoting *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011)). The burden is on the party opposing arbitration to show that the agreement is not enforceable. *Landry*, 2018 WL 4697578, at *4 (*citing Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17 (1st Cir. 1999) (noting the "heavy burden" imposed on those who challenge the enforceability of arbitration agreements)); *see also Okereke v. Uber Techs., Inc*., No. 16-12487-PBS, 2017 WL 6336080, at *5 (D. Mass. June 13, 2017) ("The party opposing arbitration on grounds that the arbitration agreement is invalid under a defense of contract formation bears the burden of proving such defense").

## **ARGUMENT**[4]

The LMB Terms of Use constitute a valid arbitration agreement that requires Plaintiff to arbitrate (not litigate) his TCPA and NHTSC claims. "LMB's notice of terms was conspicuous such that a reasonably prudent Internet user would have seen it," and Daschbach "unambiguously

---

[4] While this Motion is directed to Daschbach's individual claim, Rocket Mortgage expressly reserves its rights (i) to compel arbitration of the claims of some or all of the members of any class that may be certified in this action, and (ii) to demonstrate that arbitration agreements and class action waivers operate to preclude putative class members from participating in this lawsuit. *See Macklin v. Biscayne Holding Corp.,* No. 19-561 WES, 2021 WL 1904523, at *1 (D.R.I. May 12, 2021).

manifested his assent to LMB's Terms of Use" by clicking the "See my results!" button on two separate occasions. *Shirley,* 2022 WL 2541123, at \*7, \*8.

## I.    PLAINTIFF AFFIRMATIVELY AGREED TO LMB'S TERMS OF USE AFTER BEING ON INQUIRY NOTICE OF THEM.

As demonstrated above on pp. 3-13, *supra*, the record evidence here reveals that Daschbach twice agreed to LMB's Terms of Use, including the mandatory arbitration provision, twice during his two separate visits to refinance.enhancedrefinow.com.   Because arbitration is a creature of contract, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists." *See Rivera-Colon v. AT&T Mobility P.R., Inc*., 913 F.3d 200, 207 (1st Cir. 2019).  And "[w]hile new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) (quoting *Register.com, Inc. v. Verio, Inc*., 356 F.3d 393, 403 (2d Cir. 2004)).

Under California law (LMB's place of business and the place of business where the parties agree the agreement was entered into, Viner Decl. Ex. 4 ¶ 2), clickwrap or hybrid clickwrap agreements like LMB's Terms of Use are enforceable where:  "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Shirley*, 2022 WL 2541123, at \*4; *see also Lee v. Ticketmaster L.L.C.,* 817 F. App'x 393, 394 (9th Cir. 2020) (inquiry notice satisfied when the terms and conditions are posted through a hyperlink that is located underneath the button that the user clicked); *see also Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 8 (1st Cir. 2021) (affirming dismissal and compelling to arbitration; "[Plaintiff] had reasonable notice of the mandatory arbitration provision . . . when she selected [blue button labeled] 'Accept' on that app"); *Meyer v. Uber Techs., Inc.,* 868 F.3d 66,

10

79 (2d Cir. 2017) (vacating denial of motion to compel arbitration where assent to arbitration by clicking the button was "unambiguous in light of the objectively reasonable notice of the terms"); *accord e.g.*, *Anderson v. Amazon.com, Inc.*, 490 F. Supp. 3d 1265, 1275 (M.D. Tenn. 2020) ("Federal courts have consistently upheld clickwrap agreements."). The record evidence here again demonstrates that both of these requirements for enforceability are met.

As the Complaint alleged and Daschbach thus concedes by judicial admission,[5] in September 2021, Daschbach was online in search of mortgage refinance information and submitted his personal information, including his phone number, as part of a request for mortgage refinance information. Compl. ¶¶ 22-25. Although the Complaint identified the incorrect website, the facts are that on September 13, 2021 and again December 20, 2021, Daschbach visited refinance.enhancedrefinow.com. Viner Decl. ¶¶ 8, 11-16, 17-21, Exs. 1-2. At that site, and consistent with the Complaint's concessions, Daschbach voluntarily filled out informational forms containing, among other things, his phone number and property address. Viner Decl. ¶¶ 8, 13-14, 19-20; Hennecken Decl. Ex 1. During both these visits, Daschbach also voluntarily clicked the "See my results!" button to confirm his agreement to LMB's Terms of Use. Viner Decl. ¶¶ 14-15, 20-21. Those Terms of Use set out "the terms and conditions applicable to [his] use of the LMB Website." *Id.* Ex. 4 p. 1. And as the record evidence demonstrates, the website expressly stated in clear and conspicuous disclosures that clicking on the "See my results!" button confirmed Plaintiff's agreement to LMB's Terms of Use. Viner Decl. ¶¶ 14-15, 20-21, Ex. 1 p. 6, Ex. 2 p. 6.

---

[5] *Golub*, 2020 WL 3086050, at *1; *Lifchits v. Integon Nat'l Ins. Co.*, No. 18-cv-12637-ADB, 2020 WL 4756272, at *1 (D. Mass. Aug. 17, 2020) (considering original complaint to "discern the factual allegations that support Plaintiff's claims" where "the amended complaint contains limited details about the accident at issue");*see H.E. Contracting v. Franklin Pierce Coll.,* 360 F. Supp. 2d 289, 293 (D.N.H. 2005) ("allegations in Plaintiff's complaint constitute a binding judicial admission") (citing *Schott Motorcycle Supply, Inc. v. Am. Honda Motor Co*., 976 F.2d 58, 61 (1st Cir. 1992)).

Plaintiff thus affirmatively acknowledged his agreement to LMB's Terms of Use multiple times as part of his use of LMB's website and services.[6]

Under similar circumstances, this and other federal courts consistently hold that such affirmative acknowledgement in the face of conspicuous disclosures results in a valid contract. Indeed, the same LMB Terms of Use were recently enforced when a court granted Rocket Mortgage's Motion to Compel Arbitration in a suit involving substantially similar facts. *Shirley*, 2022 WL 2541123, at *7-8. In *Shirley,* Judge Cox held that "LMB's notice of terms was conspicuous such that a reasonably prudent Internet user would have seen it." *Id.* at *7. He came to this conclusion "because the hyperlink to the Terms of Use was underlined and in a blue contrasting color to the rest of the grey text. . . . A user of the website (such as Shirley) would clearly see the hyperlinks directly below the second and third buttons before he clicked on them." *Id.* Judge Cox further concluded that by clicking the "Calculate" and "Calculate your FREE results" buttons, the plaintiff "unambiguously manifested his assent to LMB's Terms of Use." *Id.* at *6, *8. Thus, the *Shirley* court held that the plaintiff had inquiry notice of LMB's Terms of Use and, accordingly, the mandatory arbitration provision contained in those Terms of Use was enforceable. *Id.* at *8.[7]

The same exact reasoning and conclusion applies here. Daschbach visited the refinance.enhancedrefinow.com website and clicked a button to manifest his assent to the LMB

---

[6] Because Plaintiff visited the website two different times, there is little doubt that he also had *actual* notice of LMB's Terms of Use. Rocket Mortgage reserves its right, to the extent this Motion is denied (and it should not be), to renew the motion after discovery concerning Plaintiff's actual notice of the LMB Terms of Use.

[7] The LMB Terms of Use were also upheld and enforced by the Central District of California in Orders from two different judges granting defendants' motions to compel arbitration. *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), ECF No. 43; *Hill v. ActiveProspect, Inc.*, No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021), ECF No. 90.

Terms of Use, which were set forth under the button in the same manner as in *Shirley*.  Viner Decl. ¶¶ 14-15, 20-21.  Specifically, in both *Shirley* and here, the LMB Terms of Use was a hyperlink presented in blue, underlined font, in close proximity to the submission button that Daschbach voluntarily clicked.  *Id.*, Ex. 1 p. 6 and Ex. 2 p. 6.  Moreover, Daschbach's assent to LMB's Terms of Use is even more pronounced because he submitted his information to the website ***two separate times***, on September 13, 2021 and December 20, 2021, and expressly confirmed his agreement to LMB's Terms of Use on each occasion.

This Court should follow the *Shirley* decision by again enforcing LMB's Terms of Use and granting this Motion. This conclusion is reinforced by the numerous federal court decisions enforcing arbitration provisions under factual circumstances similar to those present here.  *See*, *e.g., Ticketmaster*, 817 F. App'x at 394 (affirming enforcement of an arbitration agreement when customers clicked a "Sign In" button and, "three lines below the button, the website displayed the phrase, 'By continuing past this page, you agree to our Terms of Use.'"); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (enforcing arbitration agreement when text below "Sign In" button read "By clicking Sign In, you agree to the Turbo Terms of Use"); *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (compelling arbitration when consumer clicked "See My Rates" button above disclosure stating that clicking the button constituted assent to terms).

## II.    ROCKET MORTGAGE IS ENTITLED TO ENFORCE THE LMB TERMS OF USE.

Rocket Mortgage is entitled to enforce the mandatory arbitration provision in LMB's Terms of Use.  *Shirley,* 2022 WL 2541123, at *8.  "[T]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021) (quoting *Kramer v. Toyota Motor Corp.*, 705

F.3d 1122, 1128 (9th Cir. 2013) (citation omitted)); *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643-1644 (2020) ("arbitration agreements may be enforced by nonsignatories through 'assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel") (internal quotations and citations omitted).  California and, to the extent that it applies, New Hampshire law, allow non-signatories to enforce an arbitration agreement against a signatory as a third-party beneficiary, or pursuant to equitable estoppel principles.  See *Franklin*, 998 F.3d at 876; *Gilbert v. Bank of Am.*, No. C 13-01171 JSW, 2015 WL 12953229, at *4 (N.D. Cal. Jan. 12, 2015); *Garcia v. Pexco, LLC*, 217 Cal. Rptr. 3d 793, 797 (Cal. Ct. App. 2017); *see also Rizzo v. Allstate Ins. Co.*, 185 A.3d 836, 842 (N.H. 2018).  Both circumstances are present here.

## A. Rocket Mortgage Is a Third-Party Beneficiary.

First, Rocket Mortgage is entitled to enforce the arbitration agreement against Daschbach because it is a third-party beneficiary of the agreement between Daschbach and LMB.  A non-signatory may assert rights as a third-party beneficiary "if the parties to the agreement intended the contract to benefit the third party."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1234 (9th Cir. 2013); *see also Simpson v. Calivas*, 650 A.2d 318, 322-323 (N.H. 1994) (intended beneficiary has third-party beneficiary status to enforce contract).

"When an arbitration clause provides that it covers claims involving particular parties, the agreement has been made expressly for the benefit of those parties."  *Hajibekyan v. BMW of N. Am., LLC*, 839 F. App'x 187, 188 (9th Cir. 2021); *Rizzo*, 185 A.3d at 842 (intended third-party beneficiary of contract are bound by arbitration agreements that are part of contract).  Here, the Terms of Use were expressly intended to benefit Rocket Mortgage.  The arbitration agreement in the LMB Terms of Use requires arbitration of "ALL CLAIMS, DISPUTES OR CONTROVERSIES     BETWEEN     YOU     AND     LMB,     AND     ITS . . . <u>AFFILIATES,</u>

14

SUBSIDIARIES OR <u>RELATED COMPANIES</u>."  Viner Decl. Ex. 4 ¶ 2 (emphases added).  This language is unambiguous—the parties clearly intended that the arbitration agreement would benefit not only LMB, but all of its affiliates and related companies.  Rocket Mortgage is such a company because it is an LMB affiliate and shares the same parent company as LMB, RKT Holdings, LLC.  Viner Decl. ¶ 3; Courtney Decl. ¶ 3; *Shirley*, 2022 WL 2541123, at *8 (allowing Rocket Mortgage to enforce LMB's Terms of Use as third-party beneficiary); *Hajibekyan, LLC*, 839 F. App'x at 188 (non-signatory affiliate was third-party beneficiary because arbitration agreement encompassed "any claim" "between me and you or your employees, officers, directors, *affiliates* . . .") (emphasis in original); *Lei v. Amway Corp.*, No. 14-04022-RGK (AGRx), 2014 WL 12596787, at *11 (C.D. Cal. July 23, 2014); *see also Hargen-Rodriguez v. UBS Tr. Co. of P.R.*, No. 16-2340 (FAB), 2017 WL 2937592, at *4 (D.P.R. July 7, 2017) (granting motion to compel arbitration in favor of affiliates of party to arbitration agreement); Affiliate Definition, *Black's Law Dictionary* (11th ed. 2019).

That Rocket Mortgage is an intended third-party beneficiary of the arbitration agreement is reinforced by the facts that (i) Daschbach agreed that Rocket Mortgage could share his personal data with third parties; (ii) Daschbach was informed that he was matched to Rocket Mortgage f/k/a Quicken Loans; and (iii) Rocket Mortgage f/k/a Quicken Loans is expressly identified as part of the LMB Provider Network and in the Terms of Use as an entity which may contact Plaintiff with mortgage refinance information in response to his request.  Viner Decl. ¶¶ 16, 22, Exs. 4 and 5.  Because Plaintiff's claims arise from his use of LMB's services, and LMB's refinance.enhancedrefinow.com website and Terms of Use expressly disclosed that it may provide information to Rocket Mortgage, there can be no genuine dispute that the arbitration provision was intended to (and expressly does) benefit Rocket Mortgage.  *See, e.g., Ege v. Express Messenger*

*Sys. Inc.*, 745 F. App'x 19, 20 (9th Cir. 2018) (defendant was third-party beneficiary where "[plaintiffs'] performance under the agreements necessarily and directly benefitted [defendant]"); *Labajo v First Int'l Bank & Tr.*, No. EDCV 14-00627-VAP (DTBx), 2014 WL 4090527, at *7 (C.D. Cal. July 9, 2014); *see also Barbosa v. Midland Credit Mgmt., Inc,* 981 F.3d 82, 92 (1st Cir. 2020) (plain language of arbitration clause to include "employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns" allowed nonsignatory defendant to elect arbitration).

As it is an actual and intended third-party beneficiary of the arbitration agreement between LMB and Daschbach, Rocket Mortgage is entitled to enforce that agreement.  *See Shirley*, 2022 WL 2541123, at *8; *Ege*, 745 F. App'x at 20.

**B. Daschbach Is Estopped from Denying Application of The Agreement.**

Rocket Mortgage is also entitled to enforce the arbitration agreement under the principles of equitable estoppel. A nonsignatory may enforce an arbitration agreement "when the claims are intimately founded in and intertwined with the underlying contract obligations."  *Franklin*, 998 F.3d at 873 (citation and internal quotation marks omitted); *see also Concord Int'l HK Ltd. v. Instabill Corp.*, No. 218-2015-CV-00058, 2015 WL 12967715, at *2-3 (N.H. Super. May 13, 2015) (compelling arbitration where "Concord's claims are predicated on the terms of the contract … [t]herefore, Concord is estopped from refusing to arbitrate the claim").

Here, Daschbach's TCPA and NHTSC claims against Rocket Mortgage are "intimately founded in and intertwined with" his use of LMB's services, request for and consent to calls from Rocket Mortgage, and agreement to LMB's Terms of Use.  Daschbach requested and gave his consent to be contacted by Rocket Mortgage by phone or email during his September 2021 and December 2021 visits to refinance.enhancedrefinow.com. *See supra* pp. 3-13.  He now claims that Rocket Mortgage's calls and texts in response to that request and consent in September 2021 and March 2022 somehow violate the TCPA and NHTSC.  FAC ¶¶ 20-26.  Resolution of Daschbach's

claim thus necessarily requires this Court to consider questions that are "intimately . . . intertwined" with Daschbach's use of LMB's services, agreements to LMB's Terms of Use  for refinance.enhancedrefinow.com, and agreements to LMB's TCPA consent disclosures on that same website.

Daschbach's claims, therefore, cannot be separated from the Terms of Use, and the arbitration provision in the Terms of Use must be enforced.  *See Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1070 (9th Cir. 2020) (allowing nonsignatories to compel arbitration; "allegations about Defendants' misconduct [] presume and 'intimately rel[y]' on the existence of the Agreements") (citation omitted), *cert denied*, 141 S. Ct. 2856 (2021); *Concord*, 2015 WL 12967715, at *2-3; *see also Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (collecting cases; "a signatory was bound to arbitrate with a nonsignatory … because of 'the close relationship between the entities involved [and] the relationship of the alleged wrongs to the nonsignatory's obligations and duties"); *Steel-Rogers v. Glob. Life Sci. Sols. USA, LLC*, No. 21-40108-TSH, 2022 WL 3916362, at *6 (D. Mass. Aug. 30, 2022) (finding that plaintiff was equitably estopped from avoiding arbitration where claims sought to be adjudicated were intertwined with agreement that plaintiff signed); *Main Course FoodSolutions, Inc. v. Kraft Heinz Co.*, 523 F. Supp. 3d 198, 204 (D.P.R. 2021) (nonsignatory permitted to invoke arbitration clause under equitable estoppel doctrine where the agreement at issue was central to plaintiff's claims).

Further, the arbitration agreement should be enforced as a matter of equity. After voluntarily submitting his information, and consistent with LMB's disclosure about its services, Daschbach was matched with providers of mortgage services and received mortgage loan refinance information.  Viner Decl. ¶¶ 16, 22; Courtney Decl. ¶¶ 7-8.  Daschbach cannot take advantage of the benefits of contracting with LMB, but then seek to avoid the arbitration

17

agreement.  *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) ("Equitable estoppel precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.") (citation and internal quotation marks omitted); *Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 275 (E.D.N.Y. 2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) (because plaintiff "knowingly accepted the benefit of [the] contractual relationship with Amazon, he must also be held to the arbitration clause that governs that relationship").

### III.  WHILE THE ISSUE IS EXPRESSLY RESERVED TO THE ARBITRATOR, THIS DISPUTE DOES NOT FALL OUTSIDE THE ARBITRATION AGREEMENT.

Because there is a valid arbitration agreement, enforceable by Rocket Mortgage, the only remaining question is whether Plaintiff's claims here fall within the substantive scope of the arbitration provision.  Under the express terms of the agreement, however, that question is reserved for the arbitrator.   Specifically, the Terms of Use require that "ANY CONTROVERSY CONCERNING WHETHER A DISPUTE IS ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR AND NOT BY THE COURT."  Viner Decl. Ex. 4 ¶ 2.  When the parties have contracted to delegate the arbitrability determination to an arbitrator, courts are not permitted to "short-circuit the process and decide the arbitrability question themselves." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527–28 (2019).  Therefore, because there is a valid arbitration agreement that Rocket Mortgage is entitled to enforce, this Court should compel arbitration and permit the arbitrator to resolve any disputes about arbitrability.  *See id.* at 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator").

Even assuming this Court may properly consider the arbitrability question, however, the LMB Terms of Use confirms that it unquestionably "encompasses the dispute at issue." *See*

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). That provision broadly covers:

> ALL CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL, STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR REGULATION.

Viner Decl. Ex. 4 ¶ 2.  Agreements to arbitrate "[a]ny dispute, controversy or claim" are "broad and far reaching." *Chiron*, 207 F.3d at 1131; *Dialysis Access Ctr.*, 638 F.3d at 381 (construing arbitration clause that covered "any dispute" as encompassing the parties' claims).

Daschbach's TCPA and NHTSC claims against an LMB affiliate and related entity fall squarely within this broad agreement to arbitrate "ALL CLAIMS," including federal statutory and New Hampshire state law claims against LMB and its affiliates.  *See Mohamed v. Uber Techs., Inc.*, 109 F. Supp. 3d 1185, 1204 (N.D. Cal. 2015) ("[T]he party opposing arbitration . . . bears the burden of proving any defense.") (citation and internal quotation marks omitted), *aff'd in part, rev'd in part, remanded*, 848 F.3d 1201 (9th Cir. 2016); *Okereke,* 2017 WL 6336080, at *5. Moreover, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25; *Dialysis Access Ctr.,* 638 F.3d at 381 ("strong federal pro-arbitration policy ... establishes a presumption in favor of arbitrability").

## <u>CONCLUSION</u>

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court compel Daschbach's individual claim to arbitration and dismiss the FAC.

November 29, 2022

Respectfully submitted,
*/s/ W. Kyle Tayman*
W. Kyle Tayman (*PHV*)
Brooks R. Brown (*PHV*)
Christina L. Hennecken (*PHV*)
GOODWIN PROCTER LLP
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

Steven J. Dutton (NH 17101)
McLane Middleton
900 Elm Street | Manchester, NH 03101
(603) 628-1379 |steven.dutton@mclane.com

*Counsel for Rocket Mortgage, LLC*

## CERTIFICATE OF SERVICE

I, W. Kyle Tayman, certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on November 29,

2022.

V. Richard Ward, Jr. (NH Bar #14262)
rick@vrwardlaw.com
Law Offices of V. Richard Ward, Jr., PLLC
98 Center Street
PO Box 1117
Wolfeboro, NH 03894
Tel: (603) 569-9222
Fax: (603) 569-9022

Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 907-7628


/s/ W. Kyle Tayman
W. Kyle Tayman