# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

RICHARD DASCHBACH, individually and
on behalf of all others similarly situated,

        *Plaintiff*,

*v.*

ROCKET MORTGAGE, LLC, a Michigan
limited liability company,

        *Defendant*.

Case No. 1:22-cv-00346-JL

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND..........................................................................................2

III.    ARGUMENT ...............................................................................................................3

        A.      Plaintiff Pleads Sufficient Details to Infer that the Calls Were Made Using an
                ATDS ..............................................................................................................4

        B.      Plaintiff Adequately Alleges That the Calls Were Solicitations, and Rocket
                Mortgage's Consent Defense Does Not Warrant Dismissal.............................8

        C.      Plaintiff Adequately Alleges That Rocket Mortgage's Do Not Call Procedures
                were Deficient ...............................................................................................10

        D.      Plaintiff Alleges That Defendant is a Telemarketer .........................................13

IV.     CONCLUSION ..........................................................................................................15

# TABLE OF AUTHORITIES

*A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77 (1st Cir. 2013)..............................................4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................................................3

*Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195 (D. Mass. 2021)....................................5

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................3, 4

*Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193 (1st Cir. 2001)..................................................9

*Breda v. Cellco P'ship*, 934 F.3d 1 (1st Cir. 2019) ........................................................................9

*Clough v. Revenue Frontier, LLC*, No. 17-CV-411-PB,

        2019 WL 2527300 (D.N.H. June 19, 2019)........................................................8, 15

*Eggleston v. Reward Zone USA LLC*, No. 2:20-cv-01027-SVW-KS,

        2022 WL 886094 (C.D. Cal. Jan. 28, 2022) ............................................................6

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021) ........................................................................4

*Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59 (D.N.H. 2014) ....................................................9

*In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*,

        18 F.C.C. Rcd. 14014, 14115 (2003) ....................................................................15

*InterGen N.V. v. Grina*, 344 F.3d 134 (1st Cir. 2003)....................................................................7

*Jara v. Redbox Automated Retail, LLC*, No. 19 C 4532,

        2020 WL 433869 (N.D. Ill. Jan. 28, 2020) ............................................................6

*Mina v. Red Robin Int'l, Inc.*, No. CV 18-9472 PSG (GJSx),

        2019 WL 8108718 (C.D. Cal. Oct. 15, 2019)........................................................6

*Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605,

        2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ....................................................12

*Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1 (1st Cir. 2011)................................................4

*Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49 (1st Cir. 2013)............................................4

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946 (9th Cir. 2009) ....................................14-15

*Scanlon v. Manscaped, LLC*, No. CV 20-10795-IT,

        2020 WL 13454130 (D. Mass. Dec. 14, 2020) ........................................................5

**STATUTES, RULES, SECONDARY SOURCES**

Code of Federal Regulations, 47 C.F.R. § 64.1200, *et seq.* .......................................................8, 11

N.H. Rev. Stat. Ann. § 359-E ................................................................................................ 13-14

Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*..................................1, 8

## I.    INTRODUCTION

Rocket Mortgage, LLC ("Defendant" or "Rocket Mortgage") serially violates the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA" or the "Act") and New Hampshire's state telemarketing laws. Plaintiff Richard Daschbach ("Plaintiff" or "Daschbach") alleges he received multiple autodialed telemarketing calls and text messages from Defendant—despite the fact Dashbach never consented and his number was listed on the National do-not-call list. (*See* First Amended Complaint ["FAC"], Dkt. 10 at ¶ 6–8.) Plaintiff brings his claims on behalf of himself and classes of consumers who similarly received unsolicited, autodialed calls.

In search of a quick exit from the case—prior to any discovery—Rocket Mortgage asks the Court to dismiss Plaintiff's Complaint in its entirety, arguing that: (1) Daschbach's first two claims should supposedly be dismissed because Plaintiff cannot plausibly allege that the calls were autodialed; (2) Plaintiff's third claim fails because the calls were not "solicitations"; (3) the fourth claim fails in light of Rocket Mortgage's "do not call" ("DNC") procedures (which were found to be adequate ten years ago); and (4) counts five and six cannot be maintained because Rocket Mortgage is not a "telemarketer." Each of these arguments falls apart.

First, Plaintiff never consented to receive telemarketing calls, and both his allegations and the declarations provided by Defendant support the reasonable inference that an autodialer was used. Second, the calls at issue were solicitations for Defendant's products, and Defendant's consent defense does not warrant dismissal on the pleadings. Third, Daschbach alleges that Defendant's DNC procedures were insufficient, and Rocket Mortgage's single supposed case to the contrary is inapposite. Finally, Rocket Mortgage's attacks on Daschbach's state law claims goes nowhere: Rocket Mortgage offers an overly-narrow interpretation of the statute that is unsubstantiated and unsupported by any authority.

1

As such, and as detailed below, Plaintiff plausibly alleges his claims for relief under the TCPA and New Hampshire state law, and Defendant's motion to dismiss should be denied.

## II.   FACTUAL BACKGROUND

Rocket Mortgage is a nationwide mortgage loan provider. (Dkt. 10 at ¶ 5.) In or around September 2021, Plaintiff began receiving unsolicited telemarketing calls from Defendant, including at least four calls and one text message between September 13 and September 15, 2021, and two additional text messages in March 2022. (*Id.* ¶¶ 20–26.) Each of these calls and texts sought to solicit Plaintiff to purchase Defendant's mortgage products and services. (*Id.* ¶ 28.) Plaintiff never consented to receive telephone calls from Rocket Mortgage, and he has no prior relationship with Defendant. (*Id.* ¶ 29.) On September 2, 2022, Plaintiff filed his complaint on behalf of himself and classes of similarly situated individuals for violations of the TCPA and New Hampshire's state telemarketing law. (Dkt. 1 at ¶¶ 6–12, 17.)

In his initial Complaint, Plaintiff included allegations related to his visit to a website called fedratewatch.org, which offered to check if Daschbach was qualified for a refinance relief program that would save him money on his mortgage. (*Id.* ¶¶ 20–29.) Plaintiff maintained that he did not consent to receive calls from Defendant as a function of visiting the website. (*Id.* ¶¶ 29, 39.) Following the filing of the complaint, Defendant's counsel "informed Plaintiff that his original Complaint misidentified the website," and claimed that Daschbach had visited a different website and had completed a different form that resulted in the calls. (Dkt. 16-1 at 1.) Based on these representations, Plaintiff amended his Complaint to remove references to the fedratewatch.org website—instead, he included the "refinance.enhancedrefinow.com" website in his class definition, as Rocket Mortgage intends to show consent through that site. He does not allege that he visited the site because he does not recall doing so. (*See* Dkt. 10 at ¶¶ 29, 31.)

Defendant has filed a motion to dismiss as well as a motion to compel arbitration. (Dkt. 15, 16.) As an exhibit to its motion to compel arbitration, Rocket Mortgage included the declaration of Mitchell Viner, the General Counsel of LowerMyBills.com's parent company, which includes details of Plaintiff's supposed visit to the "refinance.enhancedrefinow.com" website and screenshots of the website's consent language. (*See* Dkt. 15-2 at ¶¶ 8, 15, 21.) The screenshots include language suggesting that visitors would consent to telemarketing calls "including through the use of an automatic telephone dialing system, artificial or prerecorded means." (*Id.* ¶ 21.)

## III.   ARGUMENT

Defendant's motion to dismiss should be denied. Plaintiff has maintained through both iterations of his complaint that he never consented, and his allegations and the declaratory evidence provided by Defendant support the inference that the calls were made using an automatic telephone dialing system ("ATDS.") Likewise, the calls at issue were "solicitations" for Defendant's products and services. Further, Plaintiff sufficiently alleges that Defendant failed to institute adequate DNC procedures—Rocket Mortgage's citation to a previous case in which its procedures were deemed adequate almost a decade ago does not warrant dismissal of Daschbach's claim today. Finally, Rocket Mortgage's interpretation of New Hampshire state law is legally unsupported and functionally unsustainable. Rather, taken as true, Plaintiff's factual allegations support the reasonable inference that Defendant is liable for making unsolicited autodialed calls.

To survive dismissal, a complaint must contain sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 664 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). On a motion to dismiss, a court must accept all factual allegations as true and "draw all reasonable inferences therefrom" in favor

3

of the non-moving party. *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 52–53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico,* 655 F.3d 61, 72 (1st Cir. 2011)). This plausibility standard asks for more than the "sheer possibility" that a defendant has acted unlawfully, but it is "not akin to a probability requirement." *Rodriguez-Reyes*, 711 F.3d at 53 (citing *Iqbal*, 556 U.S. at 679). The analysis consists of two parts: the court must first separate legal conclusions from factual allegations (which must be accepted as true), and then it determines whether those factual allegations allow a "reasonable inference" that the defendant is liable. *A.G. ex rel. Maddox v. v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013). A well-pleaded complaint may proceed "even if it strikes a savvy judge that actual proof of those facts is improbable," and that "recovery is very remote and unlikely." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011) (quoting *Twombly*, 550 U.S. at 556).

### A.    Plaintiff Pleads Sufficient Details to Infer that the Calls Were Made Using an ATDS.

In attacking Plaintiff's first two causes of action, Defendant asserts that Daschbach "has not plausibly alleged that Rocket Mortgage used an ATDS" to make the calls at issue. (Dkt. 16-1 at 8.) This is untrue. As set forth below, Plaintiff pleads specific facts to support the reasonable inference that an ATDS was used and Defendant's own website and testimony suggest an ATDS was used. Plaintiff's allegations related to a "misidentified" website in his initial Complaint do not change the analysis.

The central case is *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), where the Supreme Court held that, to qualify as an ATDS, the dialer at issue "must have the capacity either to *store* a telephone number using a random or sequential generator or to *produce* a telephone number using a random or sequential number generator." *Duguid*, 141 S. Ct. at 1167 (emphasis added). Given that the dialing system is solely in possession of the party making the calls, "courts must

balance how difficult it may be for unsophisticated consumers to allege facts about the technical specifications of a calling company's dialing system without the benefit of discovery" with the requirement to plead "above the speculative level." *Barton v. Temescal Wellness, LLC*, 525 F. Supp. 3d 195, 200 (D. Mass. 2021). As a result, courts generally permit plaintiffs to rely on indirect allegations to raise the inference that an ATDS was used, such as the content and context of the calls or messages, the existence of similar messages, the frequency of calls, and the use of an SMS short code phone number to send text messages. *Id.*; *see also Scanlon v. Manscaped, LLC*, No. CV 20-10795-IT, 2020 WL 13454130, at *3 (D. Mass. Dec. 14, 2020). There is no "specific checklist" for alleging the use of an ATDS; rather, it is a fact-specific inquiry with no one fact controlling. *Scanlon*, 2020 WL 13454130 at *3.

Here, as in most other TCPA cases, Plaintiff is not privy to the exact specifications of the dialer(s) that Defendant used to place the voice and text message calls at issue. Absent discovery, he can only be expected to support his ATDS claims with indirect allegations related to the nature and content of the calls. And though Defendant would have the Court believe that Plaintiff "does not allege any facts sufficient" to support the ATDS inference, the Amended Complaint actually includes specific details about the use of an ATDS, including that: (1) Plaintiff received seven phone calls and text messages, including five in a span of two days, all from Rocket Mortgage—a company with which he has never done business (Dkt. 10 at ¶¶ 20–26, 28–29); (2) the three text messages that he received were all sent using an SMS short code phone number (*id.* ¶¶ 23, 25–26); (3) the text messages were impersonal in nature, including a generic marketing message suitable for any consumer (*id.*); and (4) the messages contained automated response options ("Reply HELP for help, STOP to end texts"). (*Id.*) Together, these allegations are sufficient to support a reasonable inference of the use of an ATDS above the speculative level. *Scanlon* 2020

WL 13454130 at *3; *see also Jara v. Redbox Automated Retail, LLC*, No. 19 C 4532, 2020 WL 433869, at *2 (N.D. Ill. Jan. 28, 2020) (finding that text messages sent via SMS short code, containing a generic message and automated response option, were sufficient to allege use of an ATDS); *Mina v. Red Robin Int'l, Inc.*, No. CV 18-9472 PSG (GJSx), 2019 WL 8108718, at *4 (C.D. Cal. Oct. 15, 2019) (same).

Defendant ignores these factual allegations and instead focuses on the Complaint's mention of a pre-produced list—asserting that such allegations are categorically insufficient to demonstrate an ATDS. (Dkt. 16-1 at 9.) This is not so. While such allegations, standing alone, may not be sufficient to meet the TCPA's definition, Plaintiff additionally alleges that the dialer "has the capacity to *use a random or sequential number generator* in the process of *storing numbers* from a pre-produced list." (Dkt. 10 at ¶ 9) (emphasis added). The capacity to store numbers using a random or sequential number generator is precisely one of the categories that *Duguid* identified as within the ATDS definition. *Duguid*, 141 S. Ct. at 1167. Defendant admittedly cites to several cases that have effectively nullified the "store" category set forth in *Duguid*.[1] These authorities are non-binding in addition to being unpersuasive insofar as they read such technology out of the TCPA. In any case, Plaintiff also alleges that Rocket Mortgage's dialer had the capacity to *produce* telephone numbers using a random or sequential number generator, and his factual allegations support the reasonable inference that an ATDS was employed. (*See* Dkt. 10 at ¶¶ 8, 10.)

---

[1] *See* Dkt. 16-1 at 10-11 (citing, *e.g.*, *Borden v. eFinancial, LLC*, No. 21-35746, 2022 WL 16955661, *4 (9th Cir. Nov. 16, 2022); *Eggleston v. Reward Zone USA LLC*, No. 2:20-cv-01027-SVW-KS, 2022 WL 886094, at *4 (C.D. Cal. Jan. 28, 2022). These cases do not control this Court, and they overlook the two-pronged ATDS definition identified in *Duguid*, which requires the capacity either to *store* or *produce* numbers using a random or sequential number generator. *Duguid*, 141 S. Ct. at 1167.

Further, the Declaration of Mitchell Viner submitted with Defendant's Motion to Compel includes two screenshots of language that purports to obtain consent for calls "for marketing purposes (***including through the use of an automatic telephone dialing system***, artificial or prerecorded means)." (Dkt. 15-2 at ¶ 15, 21) (emphasis added). Defendant's supposed use of such language to obtain consent further suggests the calls would be made using an ATDS.

Defendant also argues that Daschbach's allegations in his original complaint relating to an online submission suggest that the calls were not autodialed because, supposedly, they were made in response to a request for information. (Dkt. 16-1 at 12–13.) First, "[a]n amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003). Hence, contrary to Defendant's assertion, allegations in the original complaint are not "admissions against interest." And in any case, even the original Complaint alleged that Plaintiff never consents or request to be called—that fedratewatch.org was a "bait and switch" that offered to show him mortgage rates, but surreptitiously sought to obtain his information as a call lead. (Dkt. 1 at ¶¶ 24–26.) Noting that he had visited a particular website was not an "admission" of consent, especially when he claimed the website was deceptive and tricked people into submitting their information. (*Id.*)

Plaintiff's removal of those allegations was not a "convenient[]" change of course, but a response to Defendant's representations that Dashbach had "misidentified" the actual website Rocket Mortgage had purportedly used to obtain his consent. (Dkt. 16-1 at 1–2.) Indeed, Rocket Mortgage asserts that it obtained his consent through a website with the URL "refinance.enhancedrefinow.com", which Daschbach has no recollection of visiting. Though Defendant claims "[t]here is no reason for Plaintiff to include that website in his class definition

unless he visited it," he has done so to account for Defendant's effort to demonstrate consent through the new website—which *Defendant* claims he (and every other alleged class member) visited. (Dkt. 16-1 at 11.) Plaintiff has no intention to allege facts he cannot support with personal knowledge or information and belief—previously alleging that he visited one website is not an admission that he visited any and every website Defendant may suggest.

Ultimately, Plaintiff alleges sufficient facts that, if proven true, would show that the calls and text messages he received were made using an ATDS. Whether he visited a particular website has little to no bearing on the technology used to place the calls, which were frequent, impersonal, and made using SMS short code. On a motion to dismiss, the Court must draw all reasonable inferences in favor of the non-moving party, and Daschbach provides an adequate factual basis to draw the reasonable inference that Rocket Mortgage made calls using an ATDS. Defendant's motion to dismiss should therefore be denied.

### B.   Plaintiff Adequately Alleges That the Calls Were Solicitations, and Rocket Mortgage's Consent Defense Does Not Warrant Dismissal.

Defendant next seeks dismissal of Plaintiff's third cause of action on the basis that the texts and calls were not "solicitations." (Dkt. 16-1 at 13–15.) Defendant's argument is based on its belief that Plaintiff invited or requested the calls—if the calls were requested, they were apparently not solicited. This is a consent defense—not a basis for dismissal.

Rocket Mortgage correctly states that a "telephone solicitation," is a call or message "for the purpose of encouraging the purchase or rental of . . . goods, or services." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Given that consent is a defense to TCPA claims, this definition unsurprisingly excludes calls made with the recipient's "prior express invitation or permission." *Id.* Consent, however, "is not an element of a [TCPA] plaintiff's prima facie case but is an affirmative defense for which the defendant bears the burden of proof." *Clough v. Revenue*

*Frontier, LLC*, No. 17-CV-411-PB, 2019 WL 2527300, at *7 (D.N.H. June 19, 2019); *see also Breda v. Cellco P'ship*, 934 F.3d 1, 5 n. 4 (1st Cir. 2019) ("[L]ack of consent is not an element of the called party's claim."); *Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 69 (D.N.H. 2014) ("As Plaintiff has pled that he did not give consent…he has adequately stated a TCPA claim, and Defendant's motion is due to be denied on that ground. It will be Defendant's task to prove consent at the summary-judgment stage.") (quoting *Conklin v. Wells Fargo Bank, N.A.*, No. 6:13-CV-1246-ORL-37, 2013 WL 6409731 (M.D. Fla. Dec. 9, 2013)).

Here, Plaintiff expressly alleges that the calls and messages he received all sought to solicit the purchase of Rocket Mortgage's products or services. (Dkt. 10 at ¶ 22–26, 28.) Taken as true, these facts show that the calls were telephone solicitations. Additionally, Plaintiff squarely alleges that he did not consent to the calls. (*Id.* ¶ 29.) While defendants are permitted to move for dismissal on the basis of an affirmative defense, in order to succeed "the facts establishing the defense must be clear 'on the face of the plaintiff's pleadings.'" *Blackstone Realty LLC v. F.D.I.C.*, 244 F.3d 193, 197 (1st Cir. 2001). Because allegations are construed in favor of the non-moving party on a motion to dismiss, defendants face a heightened challenge to demonstrate that the allegations "leave no doubt" that the action is barred by the defense. *Id.* Rocket Mortgage has not met that burden here, as Plaintiff has maintained through both iterations of his complaint that neither he nor the alleged Class Members consented to the receipt of such calls and, as explained in detail in Plaintiff's concurrently-filed response to Defendant's motion to compel arbitration, the supposed consent language present on the website (which Plaintiff disputes visiting) is inadequate to create a manifestation of assent in any case. Plaintiff does not bear the burden to demonstrate a lack of consent, but he has consistently alleged that he did not consent. It is not "clear on the face of the

pleadings," nor is there "no doubt" that Plaintiff consented to the calls. Dismissal on the basis of consent would be inappropriate.

Rocket Mortgage again leans on the fact that Plaintiff removed allegations about visiting the fedratewatch.org website in the First Amended Complaint and revised the class definitions to refer to the new website suggested by Rocket Mortgage as the source of his supposed consent. (Dkt. 16-1 at 14.) Again, this does not amount to an admission that Plaintiff visited the site, let alone that he consented to the calls: the revised class definitions restrict membership to consumers "for whom Defendant *claims* it obtained prior express consent via the website refinance.enhancedrefinow.com." (Dkt. 10 at ¶ 31) (emphasis added). Defendant asserts that it obtained Plaintiff's lead from the "refinance.enhancedrefinow.com" website, and while Plaintiff disputes visiting said website, he is included in the class definition, which reflects Defendant's consent defense as represented by defense counsel.

In short, Rocket Mortgage's attack on Daschbach's third cause of action is based on its affirmative defense of consent. Defendant bears the burden to prove such a defense, and it is not "clear from the face of the pleadings" that Plaintiff consented to the calls. To the contrary, he has consistently denied providing prior express consent. As such, and because the calls were unquestionably regarding Rocket Mortgage's loan products, Plaintiff has met his burden to plead above the speculative level that the calls and texts he received were solicitations, and the Court should reject Defendant's bid to dismiss the claim.

### C.    Plaintiff Adequately Alleges That Rocket Mortgage's Do Not Call Procedures Were Deficient.

Defendant's next basis for dismissal, applicable to Plaintiff's fourth cause of action, is that Daschbach supposedly fails to plead that Rocket Mortgage lacked proper "do not call" procedures as part of his DNC Stop Class claim. (Dkt. 16-1 at 15–18.) Plaintiff's fourth claim is based on

Rocket Mortgage's failure to honor Plaintiff's stop request—Defendant's internal procedures are inadequate (or, at the very least, not instituted properly) because Plaintiff continued to receive text messages more than thirty days after requesting that Defendant stop calling him.

While Plaintiff's third claim is rooted in Defendant's failure to honor the National DNC Registry, his fourth cause of action relates to Defendant's failure to honor a direct stop request from the recipient of the calls. Section 64.1200(d) of the Code of Federal Regulations requires all telemarketers to institute procedures for maintaining a list of persons who request not to receive telemarketing calls. Callers must maintain an internal DNC list. 47 C.F.R. § 64.1200(d). One of the minimum standards specified in this section states as follows:

> If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request.

*Id.* § 64.1200(d)(3). Hence, if a call recipient makes a do-not-call or "stop" request, the telemarketer making such calls must honor that request within thirty days. Further, a do-not-call request "must be honored for 5 years from the time the request is made." *Id.* § 64.1200(d)(6).

Here, Plaintiff specifically pleads that Defendant failed to honor his stop request in accordance with the above requirements. Daschbach alleges that during the call he received on September 15, 2021, he requested that Rocket Mortgage stop calling his cellular phone. (Dkt. 10 at ¶ 24.) Though this request seemed to work for a time, Plaintiff receive two additional text messages in March 2022, nearly six months after his stop request. (*Id.* ¶ 25–26.) As is the case with his ATDS allegations, Plaintiff does not have access to information regarding the nature of

Defendant's internal DNC procedures. Taken as true, however, the fact that Plaintiff continued to receive telemarketing communications from Rocket Mortgage more than thirty days after his stop request supports the reasonable inference that Defendant failed to institute adequate internal procedures. (*See* Dkt. 10 at ¶¶ 76–78.) Stated differently, if Defendant's procedures were adequate, Plaintiff would not have received additional messages months after he requested that Rocket Mortgage stop calling him. He has pleaded his right to relief above the speculative level.

Defendant cites to a Middle District of Florida[2] case in which Quicken Loans (Rocket Mortgage's predecessor) was found to have adequate internal do-not-call procedures. (Dkt. 16-1 at 18) (citing *Nece v. Quicken Loans, Inc.*, No. 8:16-cv-2605, 2018 WL 1326885, at *7-8 (M.D. Fla. Mar. 15, 2018). *Nece*, which looked at Quicken's procedures in 2012, is off point. Rocket Mortgage uses *Nece* to suggest that "[n]either the allegations in the FAC nor common sense provide any plausible basis for this Court to conclude that Rocket Mortgage somehow had the requisite procedure in 2012 but not in 2021." (Dkt. 16-1 at 18.) To be clear, Plaintiff's claims are not concerned with whatever DNC procedures Rocket Mortgage (or, to be precise, Quicken Loans) may have had in place in 2012. The calls at issue began in 2021, and after making a stop request in September 2021, Plaintiff received additional messages in March 2022. Telemarketers are required to "*institute* procedures" for maintaining an internal DNC list—the fact that Plaintiff continued to receive text messages after making a do-not-call request supports the reasonable inference that Rocket Mortgage had not instituted adequate procedures for maintaining a DNC list, regardless of what procedures may have been in place a decade prior. Even if Rocket Mortgage had internal procedures that it sought to institute, that Plaintiff's stop request was not honored suggests a failure to properly institute such procedures.

---

[2] Defendant incorrectly refers to the *Nece* case as a "Southern District of Florida" decision.

Notwithstanding the Middle District of Florida's findings about procedures in place ten years ago, Plaintiff has adequately alleged a failure by Defendant to institute lawful internal DNC processes. Despite making a request that Defendant stop contacting him, he continued to receive text messages more than thirty days later. Accordingly, Plaintiff has stated his fourth claim for relief above the speculative level, and Defendant's motion to dismiss should be denied.

### D.  Plaintiff Alleges That Defendant is a Telemarketer.

As its final basis for striking at Plaintiff's claims, Defendant asserts that Daschbach's fifth and sixth claims—those arising from New Hampshire's state telemarketing laws—must be dismissed because Defendant and the calls at issue supposedly fall outside the scope of the statute. (Dkt. 16-1 at 19–20.) According to Rocket Mortgage, its actions do not qualify as "telemarketing" as the term is defined under the Act, and thus it cannot be considered a "telemarketer." (*Id.*) Defendant's approach to statutory interpretation is without legal support.

New Hampshire statute prohibits "telemarketers" from "conducting telemarketing sales calls to any customer who has registered his or her name or telephone number with the do-not-call registry maintained by the list administrator or Federal Trade Commission." N.H. REV. STAT. ANN. § 359-E:8(I). The term "telemarketer" is defined as "any person who, for financial profit or commercial purposes in connection with telemarketing, makes telemarketing sales calls to a customer when the customer is in this state." *Id.* § 359-E:7(IX). The terms "telemarketing" is likewise defined as "any plan, program, or campaign" to induce payment for goods or services by use of one or more telephones "which involves more than 5 telephone calls per month by a telemarketer." *Id.* § 359-E:7(X). While the statute expressly excludes solicitation of sales "through media other than by telephone calls" from the definition of telemarketing, the term "telephone call" is undefined. *See id.*

13

Rocket Mortgage's attempt to evade liability involves two steps. First, Rocket Mortgage asserts that a telemarketer must make five calls in one month *to any one consumer* to be considered a telemarketer. (Dkt. 16-1 at 20.) To hear Defendant tell it, it cannot be held liable under New Hampshire law if it made only four calls to Plaintiff in one month. (*Id.*) But the statute prohibits "telemarketing sales calls," not "telemarketing" generally. N.H. REV. STAT. ANN. § 359-E:8(I). The general definition of telemarketing refers to a "plan, program, or campaign" that involves at least five calls in one month. *Id.* § 359-E:7(X). This is an alleged class action, and Plaintiff has alleged on information and belief that Defendant's telemarketing campaign made similar calls to "thousands of consumers," not just himself. (Dkt. 10 at ¶ 33.) To read the statutory definition as requiring telemarketers to make at least five calls in one month *to each individual consumer* called during the campaign before they can be held liable is untenable, contrary to the language of the statute, and borders on the absurd. Under the standard proposed by Rocket Mortgage, a company could make four calls per month to every New Hampshire resident—more than 5,000,000 calls— without qualifying as a "telemarketer". Not surprisingly, Defendant cites no authority in support of its reading of the statute, and the Court should reject the attempt to dismiss Plaintiff's claims on the basis of such a novel interpretation.

Second, Rocket Mortgage posits that "telephone call" should be interpreted to exclude text messages. (Dkt. 16-1 at 20.) Defendant again fails to cite any authority in support of its interpretation. The only support for its reading is that the statute excludes "solicitation of sales through media other than by telephone calls," but the term "telephone call" is not defined. N.H. REV. STAT. ANN. § 359-E:7(X). The same is true in the TCPA, the Federal analog to New Hampshire's law: the term "call" is not defined. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009). Nevertheless, the Federal Trade Commission and courts have

determined with near uniformity that the TCPA applies with equal force to "both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003); *see also Satterfield*, 569 F.3d at 953–54 (explaining that "Webster's defines 'call' in this context as 'to communicate with or try to get into communication with a person by a telephone,'" and thus a text message is considered a call for TCPA purposes); *Clough*, 2019 WL 2527300, at *3, n. 2 ("The TCPA's prohibition against auto dialed calls applies to both voice calls and text messages."). The same reasoning should be applied here.

Defendant's arguments for dismissal of Plaintiff's New Hampshire state law claims fall flat. The statute does not require four or more calls *per* consumer—that language isn't in the Act, and the Court should refuse to rewrite it for Rocket Mortgage's benefit. Likewise, text messages are "calls." As such, Plaintiff has stated claims for relief under the TCPA and New Hampshire's telemarketing laws—he has alleged numerous unsolicited calls to himself and thousands of other similarly-situated consumers. The Court should therefore reject Rocket Mortgage's motion to dismiss Daschbach's state law claims.

## IV.     CONCLUSION

Defendant's motion to dismiss should be denied. Plaintiff alleges specific facts that, if proven true, would show that the calls he received were made using an ATDS. Further, Defendant's consent defense does not warrant dismissal where Daschbach has consistently alleged he never gave consent for Rocket Mortgage to call him. Plaintiff also sufficiently pleads that Defendant failed to institute adequate DNC procedures, resulting in additional messages after his stop request. Finally, Rocket Mortgage's attempt to dismiss Dashbach's state law claims is based on a rewrite of the law and a finding that text messages are not calls. Accordingly, Plaintiff has

sufficiently pleaded his claims and, as such, he respectfully requests that the Court deny Defendant's motion to dismiss in its entirety and grant any additional relief as the Court deems necessary, reasonable, and just.

<div style="margin-left:40%">

Respectfully submitted,

**RICHARD DASCHBACH**, individually and on behalf of all others similarly situated,

</div>

DATED:  December 20, 2022          By:  _/s/ *Taylor T. Smith*_____
                                   One of Plaintiff's Attorneys

<div style="margin-left:40%">

V. Richards Ward, Jr., Esquire
NH Bar #14262
Law Office of V. Richards Ward, Jr., PLLC
39 North Main Street, Unit D-3
P.O. Box 1117
Wolfeboro, NH 03894
Rick@VRWardLaw.com
Tel: (603) 569-9222
Fax: (603) 569-9022

Taylor T. Smith (admitted *pro hac vice*)
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Phone: (720) 213-0676

*Attorneys for Plaintiff*

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above titled document was served upon counsel of record by filing such papers via Court's ECF system on December 20, 2022.

 /s/ Taylor T. Smith
Taylor T. Smith