# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

RICHARD DASCHBACH, individually and on behalf of all others similarly situated,

               *Plaintiff,*

    v.

ROCKET MORTGAGE, LLC, a Michigan limited liability company,

               *Defendant.*

Case No. 1:22-cv-00346-JL

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION**

# CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ..................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND ...........................................1

III.    ARGUMENT ..........................................................................................................5

        A.      The LMB Website Does Not Create an Enforceable Contract.........................6

                1.      The LMB Website terms are not conspicuously disclosed. ...................7

                2.      Neither Plaintiff nor any other user manifested unambiguous assent
                        to the LMB Website's Terms, including the clause mandating
                        arbitration ..............................................................................................13

IV.     CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

*Arguss Commc'ns Grp., Inc. v. Teletron, Inc.*, No. CIV. 99-257-JD, 2000 WL 36936 (D.N.H. Nov. 19, 1999) ...........................................................................................................6

*Bel Air Assocs. v. New Hampshire Dep't of Health & Hum. Servs.*, 158 N.H. 104, 960 A.2d 707 (2008) ...........................................................................................................................6

*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849 (9th Cir. 2022) ................................. *passim*

*Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018).................................................. *passim*

*Fleet Bank-NH v. Christy's Table, Inc.*, 141 N.H. 285, 681 A.2d 646 (1996) ...............................6

*Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733 (9th Cir. 2014)...........................................6

*Hill v. ActiveProspect, Inc.*, No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021)..................12

*Hodosh, Lyon & Hammer, Ltd. V. Barracuda Networks, Inc.*, No. CV 15-316S, 2016 WL 705272, at *5 (D.R.I. Jan. 4, 2016), *report and recommendation adopted*, No. CV 15-316 S, 2016 WL 727166 (D.R.I. Feb. 23, 2016) ................................................6

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir. 2014) ....................................................7

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236 (2d Cir. 2016)..................................................14

*Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200 (1st Cir. 2019) .........................5

*Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015) .......12

*Shirley v. Rocket Mortg.*, No. 2:21-CV-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022).............. 11-12

*Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995 (N.D. Cal. Sept. 2, 2021) ....................................................................................................................7

*Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) .............................................5

## I.    INTRODUCTION

Defendant Rocket Mortgage, LLC ("Rocket Mortgage" or "Defendant") serially violates the Telephone Consumer Protection Act ("TCPA") and New Hampshire state telemarketing laws. Specifically, Rocket Mortgage—on its own or through its agents—bombards consumers' cell phones with unsolicited, autodialed phone calls and text messages without securing prior express consent—including to numbers that appear on the National Do Not Call Registry. Rather than correct its system to guard against such errors, Rocket Mortgage attempts to duck the instant lawsuit via a motion to compel arbitration. Fortunately for Plaintiff Richard Daschbach ("Daschbach" or "Plaintiff") and the alleged class, no enforceable arbitration agreement exists.

Indeed, Rocket Mortgage's Motion fails because the supposed arbitration clause was contained within an unenforceable browsewrap (or hybridwrap) agreement. The Terms are "disclosed" in small font buried near the bottom of the refinance.enhancedrefinow.com website ("LMB website") out of view for the typical user. The text is gray on a gray background.[1] It is practically illegible and bears none of the hallmarks of a conspicuous notice. Put simply, the LMB website is insufficient to show an agreement to arbitrate with *any* user, Daschbach included.

For these reasons, and as explained further below, the Court should deny Defendant's motion to compel arbitration.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

***Daschbach receives unsolicited, autodialed telemarketing calls pitching Rocket Mortgage's products despite registering on the DNC List.***

Rocket Mortgage is a nationwide mortgage loan provider. (Dkt. 10 at ¶ 5.) In or around September 2021, Plaintiff began receiving unsolicited telemarketing calls from Defendant,

---

[1] Plaintiff does not recall visiting the subject website. That is immaterial, however, as the webpage is inconspicuous and fails to obtain assent in any case.

including at least four calls and one text message between September 13 and September 15, 2021, and two additional text messages in March 2022. (*Id.* ¶¶ 20–26.) Each of these calls and texts sought to solicit Plaintiff to obtain a mortgage or related product from Defendant. (*Id.* ¶ 28.) Plaintiff never consented to receive telephone calls from Rocket Mortgage and has no prior relationship with Defendant. (*Id.* ¶ 29.) On September 2, 2022, Plaintiff filed his complaint on behalf of himself and classes of similarly situated individuals for violations of the TCPA and New Hampshire's state telemarketing laws. (Dkt. 1 at ¶¶ 6–12, 17.)

In his initial Complaint, Plaintiff included allegations related to his visit to a website called fedratewatch.org, which offered to check if he qualified for a refinance relief program that would save him money on his mortgage. (*Id.* ¶¶ 20–29.) Nevertheless, Plaintiff maintained that he did not consent to receive calls from Defendant as a function of visiting the website.[2] (*Id.* ¶¶ 29, 39.) Following the filing of the complaint, Defendant informed Plaintiff that his original Complaint misidentified the website, claiming that Daschbach purportedly visited a different website, LowerMyBills.com, and completed a different form that resulted in the calls. (Declaration of Taylor T. Smith, ("Smith Dec.") ¶ 3, attached hereto as Grp. Ex. A.) Thereafter, Rocket Mortgage's counsel clarified that it mistakenly asserted that Daschbach had visited LowerMyBills.com. (Smith Decl. ¶ 4.) Rather, Rocket Mortgage claimed that Daschbach had actually visited a website called refinance.enhancedrefinow.com, which is operated by LMB

---

[2] Rocket Mortgage asserts that the allegations in Daschbach's original complaint are conceded by "judicial admission." (Mot. at 11 n.5.) Not so. The First Circuit has instructed that while in "certain circumstances" prior allegations can constitute admissions, "[t]hat does not mean, however, that a plaintiff is strictly bound by its initial complaint. An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader." *InterGen N.V. v. Grina*, 344 F.3d 134, 145 (1st Cir. 2003) (citation omitted). "Absent some sign of unfair advantage…the mere retraction of statements made in an original complaint does not justify the invocation of judicial estoppel." *Id.*

Mortgage Services, Inc. d/b/a LowerMyBills.com ("LMB"). (*Id.*)

In response, Plaintiff amended his Complaint to remove references to fedratewatch.org and instead incorporate the "refinance.enhancedrefinow.com" website in his class definition, as Rocket Mortgage indicated it intended to demonstrate consent through that website. At the same time, Plaintiff did not allege a visit to this site because he does not have any knowledge or recollection of doing so and thus disputes this assertion. (*See* Dkt. 10 at ¶¶ 29, 31.)

### *Rocket Mortgage seeks to compel arbitration based on LMB's Website*

In response to the FAC, Defendant filed a motion to dismiss and a motion to compel arbitration. (Dkt. 15, 16.) As an exhibit to its motion to compel arbitration, Rocket Mortgage filed the "Declaration of Mitchell Viner" and exhibits, which include supposed details of Plaintiff's "visit" to the refinance.enhancedrefinow.com website and screenshots of the website's purported disclosures. (*See* Dkt. 15-2 at ¶¶ 8, 12-23; *see also* Dkt. 15-5.)

The refinance.enhancedrefinow.com website is apparently comprised of fifteen (15) separate pages. (*See* Dkt. 15-5.) Each page requests that users enter information related to their home loans, including name, address, credit standing, outstanding mortgage obligation, interest rates, etc. (*Id.*) On each page, users are presented with either large text boxes to enter information and select a large, green "Next" button or large buttons or sliding scales to select or indicate their response (including at times colorful emoticons or check marks)—which allow them to progress to the following page. (*Id.*) As seen below in Fig 1, on Page 15, users are presented with the phrase "Great News! Your results are ready to view. Complete this final step to see your potential savings!" (*Id.*) After users input their name and phone number, they can scroll down and select an oversized green button, which states "See my results!". (*Id.*)

Fig. 1 below is a screenshot of how the LMB website's final page is initially viewed.

(Fig. 1 - refinance.enhancedrefinow.com website screenshots, dkt. 15-5.)

As seen below in Fig. 2, buried well below the "See my results!" button is a series of "disclosures" purporting to bind consumers to various agreements, including the Terms containing the arbitration provision, consent to place calls relating to mortgage products, consent to obtain information contained in your credit report, and consent to place calls relating to solar services and other companies. (*Id.*) Despite prior pages including black font on either a gray background or a white text box, the disclosures to which Rocket Mortgage seeks to bind Daschbach are displayed in gray font on a gray background. (*Id.*) Moreover, the font size is significantly smaller than the font utilized throughout the page-by-page process and is barely legible to the naked eye. (*Id.*) The result is a confusing, illegible website.

Fig. 2 below is a screenshot of the bottom portion of LMB website's final page.



(Fig. 2 - refinance.enhancedrefinow.com website screenshots, dkt. 15-5.)

Based on these facts and as set forth below, the Court should deny Rocket Mortgage's Motion to Compel in its entirety.

## III.    ARGUMENT

"[A]rbitration 'is a matter of consent, not coercion.'" *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010). As such, "in deciding a motion to compel arbitration, a court must first determine 'whether '... there exists a written agreement to arbitrate.'" *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 60 (1st Cir. 2018) (citation omitted). The party seeking to compel arbitration "bears the burden of clearing that hurdle and "demonstrat[ing] that a valid agreement to arbitrate exists." *Rivera-Colon v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (citing *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474

(1st Cir. 2011)). "If the parties contest the existence of an arbitration agreement, the presumption in favor of arbitrability does not apply." *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 742 (9th Cir. 2014) (emphasis in original).

As an initial matter, Rocket Mortgage inappropriately assumes that California law applies based on the choice of law provision found in the supposed contract. (Mot. at 10.) But because Plaintiff disputes the very existence of an agreement, there is no basis to apply the contract's choice of law provision without further analysis. *See Arguss Commc'ns Grp., Inc. v. Teletron, Inc.*, No. CIV. 99-257-JD, 2000 WL 36936, at *5 n.6 (D.N.H. Nov. 19, 1999); *Hodosh, Lyon & Hammer, Ltd. V. Barracuda Networks, Inc.*, No. CV 15-316S, 2016 WL 705272, at *5 (D.R.I. Jan. 4, 2016), *report and recommendation adopted*, No. CV 15-316 S, 2016 WL 727166 (D.R.I. Feb. 23, 2016) (citing *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir.2014); *Defontes v. Dell Computs. Corp.*, No. C.A. PC 03–2636, 2004 WL 253560, at *3 (R.I.Super.Ct. Jan. 29, 2004))).

Nevertheless, whether California or New Hampshire law is ultimately applied makes no difference: as with California, New Hampshire requires that a contract can only be formed when the parties have the same understanding (or notice) of the terms of the agreement and manifest assent to the terms. *See Bel Air Assocs. v. New Hampshire Dep't of Health & Hum. Servs.*, 158 N.H. 104, 107–08, 960 A.2d 707, 710 (2008); *Fleet Bank-NH v. Christy's Table, Inc.*, 141 N.H. 285, 287–88, 681 A.2d 646, 648 (1996).

As explained next, no matter which law applies, the website terms were not displayed in a manner sufficient method to put any user on notice or obtain a manifestation of assent.

A.      **The LMB Website Does Not Create an Enforceable Contract.**

Broadly speaking, internet contracts typically fall into one of two categories: clickwrap agreements, where users are required to click on an "I Agree" box after being presented with terms and conditions; and browsewrap agreements, where terms and conditions are posted via hyperlink

at the bottom of a webpage. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76. (9th Cir. 2014). Some websites present a hybrid of these two categories (often referred to as "hybridwrap" or "sign-in wrap" agreements) by notifying the user of the existence of terms and conditions and, "instead of providing an 'I agree' button, advis[ing] the user that he or she is agreeing to the terms of service when registering or signing up." *Snow v. Eventbrite, Inc.*, No. 3:20-CV-03698-WHO, 2021 WL 3931995, at *3 (N.D. Cal. Sept. 2, 2021).

> The Ninth Circuit has applied browsewrap principles to these hybridwrap agreements:
>
> Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website. . . .
>
> But where, as here, there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap agreement turns on whether the website puts a reasonably prudent user on inquiry notice of the terms of the contract. Whether a user has inquiry notice of a browsewrap agreement, in turn, depends on the design and content of the website and the agreement's webpage.

*Nguyen*, 763 F.3d at 1176–77 (citations omitted); *see also Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022). Inquiry notice is found where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Berman*, 30 F.4th at 856 (citation omitted); *see also Cullinane v. Uber Techs., Inc.*, 893 F.3d 53, 61 (1st Cir. 2018).

There is no inquiry notice here. LMB website's Terms are not conspicuous and users do not manifest unambiguous assent.

### 1.    The LMB Website terms are not conspicuously disclosed.

Rocket Mortgage claims that the Terms at issue were displayed in "clear and conspicuous disclosures" because, supposedly, "LMB's Terms of Use was a hyperlink presented in blue,

underlined font, in close to proximity." (Mot. at 11-13.) Aside from the fact there is a blue hyperlink, the record belies Rocket Mortgage's claim. Indeed, the Terms were the opposite of conspicuous.

*Berman* is on point. There, the Ninth Circuit, applying California law, declined to enforce a hybrid agreement far more attention-grabbing than the illegible website here. *Berman*, 30 F.4th at 856. In setting forth a framework for "reasonably conspicuous notice", the *Berman* court explained that first the notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Id.* ("Website users are entitled to assume that important provisions—such as those that disclose the existence of proposed contractual terms—will be prominently displayed, not buried in fine print.") In *Berman*, the font was printed in "tiny gray font considerably smaller than the font used in the surrounding website elements." *Id.* The "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id.* at 857. The text was "further deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text." *Id.* Second, while terms may be disclosed through a hyperlink, "the fact that a hyperlink is present must be readily apparent." *Id.* And website developers should utilize "contrasting font color (typically blue) and the use of all capital letters" to alert a user that the text provides a pathway to another webpage. *Id.*

The First Circuit applied a similar standard to invalidate a hybridwrap agreement in *Cullinane v. Uber Techs., Inc.*, 893 F.3d 53 (1st Cir. 2018). In that case, the court addressed whether Uber's registration process, specifically the "Link Card" and "Link Payment" screens, bound consumers to its terms and conditions. *Id.* at 62-63. In holding that users were "not reasonably notified of the terms of the Agreement" *id.* at 63, the *Cullinane* court focused on

"design and content" of the website and the way in which the Terms "were displayed." *Id.* 62-63.

Uber had argued that the Terms were conspicuous because they were presented in "larger font, in

bold, contrasting in color, and highlighted by the box around it." *Id.* at 63. The First Circuit

disagreed, explaining that:

> While the language and the number of words found on the "Link Card" and "Link
> Payment" screens could be seen to favor Uber's position, the reading of Uber's
> "Terms of Service & Privacy Policy" hyperlink must be contextualized. That is, it
> may not be read in a vacuum. Other similarly displayed terms presented
> simultaneously to the user in both versions of the third screen diminished the
> conspicuousness of the "Terms of Service & Privacy Policy" hyperlink.

*Id.* Hence, while *Cullinane* noted that "the hyperlink did possess some of the characteristics that

make a term conspicuous," the inquiry didn't end there. *Id.* at 63-64. Rather, "the presence of other

terms on the same screen with a *similar or larger size, typeface*, and with more noticeable attributes

diminished the hyperlink's capability *to grab the user's attention*." *Id.* at 63-64 (emphasis added).

The court explained that "the placement of a large blue PayPal button in the middle of the screen

w[as] more attention-grabbing and displaced the hyperlink to the bottom of the screen." *Id.* at 63.

Further, the court considered the "text used to notify potential users that the creation of an Uber

account would bind them to the linked terms" and explained that such language was even less

conspicuous because the notice "was displayed in a dark gray small-sized non-bolded font against

a black background." *Id* at 64. As the court concluded, "[i]f everything on the screen is written

with conspicuous features, then nothing is conspicuous." *Id.* (citing *Stevenson v. TRW Inc.*, 987

F.2d 288, 296 (5th Cir. 1993); *Boeing Airplane Co. v. O'Malley*, 329 F.2d 585, 593 (8th Cir.

1964)).

      In this case, the operative notice is substantially less conspicuous than the disclosures

analyzed in *Berman* and *Cullinane*. *See Berman*, 30 F.4th at 859, Appendix A; *Berman*

Disclosures, attached as Exhibit 1 to Smith Decl.; *see also Cullinane*, 893 F.3d at 57-58; *Cullinane*

Disclosures, attached as Exhibit 2 to Smith Decl.) While the LMB Terms are contained within a blue hyperlink, the language used to supposedly notify users that they would be bound by those Terms is displayed in tiny gray font on a gray background, which is barely observable to the naked eye. (*See* Dkt. 15-5.) In both *Berman* and *Cullinane* the font was a contrasting color from the background, and both courts found the language to be insufficient. *See Cullinane*, 893 F.3d at 64; *Berman*, 30 F.4th at 859.

Moreover, as both *Berman* and *Cullinane* instruct, the Terms cannot be read in a vacuum, and the Court must consider the context and the overall design of the webpage. The website includes fifteen separate pages of text submissions, each page with substantially larger font, which requests that users, on some pages, enter their information in large text boxes and click a large, green "Next" button or, on other pages, use sliding scales or select large buttons (some of which indicate a response with a check mark or are adorned with smiling and frowning emoticons) to indicate a response and progress users to each successive page (dkt. 15-5)—all of which naturally draws a user's attention to the submission process. Likewise, once a user finally gets to page 15 of the process, nothing alerts them to the existence of the Terms, let alone draws their attention to them. Rather, and unlike the disclosures in *Berman* and *Cullinane*, the instant Terms aren't even visible on the initial screen presented to the user. That is, by Rocket Mortgage's own admission, the disclosure is not visible by a user unless they scroll down well below the colorful "See my results!" button (an act that few users likely do). (*See* Dkt. 15-5.) In short, the website design, at least with respect to the terms containing any supposed arbitration agreement, fails "to grab the user's attention."

The process also misleads users into believing they are completing a so called "quiz" to "reveal" their potential savings. Indeed, on the final page LMB proclaims "Great News! Your

results *are ready to view*. Complete this final step *to see your potential savings*!" (Dkt. 15-5 (emphasis added).) But once a user clicks the oversized "See my results!" button, there are no results to review. Instead, users are directed to a new page that claims they "have completed the first step to finding the lowest rates" and provides links to external websites for users to "click" to "Get Started" with a personalized quote. (*Id.*) That is, the website is designed to mislead and distract users into thinking that they will receive proposed rates to refinance their loans, but the website actually just captures user information to be sold as leads to various businesses—including to thousands of unrelated "solar service" companies. Yet nothing in the submission process would lead a reasonably prudent user to understand this outcome. Rather, to ascertain the true purpose, users would first be required to locate and then decipher the barely legible gray-on-gray terms, which again most of them probably never see. Only then would users ever learn that LMB seeks to bind them to the Terms, which includes an arbitration agreement.

As an additional point here, it cannot be overlooked that at the bottom of at least pages 4 through 14, the LMB website includes the heading "IMPORTANT DISCLOSURES" in all caps with certain disclosures displayed in gray text on a contrasting white background. These disclosures are at least legible, even if they are not conspicuous or noticeable. Yet, when it comes time to disclose the actual Terms, which contain the arbitration agreement, the "IMPORTANT DISCLOSURES" heading disappears, the font size is reduced, and the gray font is now displayed on a gray background. In sum, the LMB website is designed to draw user attention away from the Terms to which Rocket Mortgage seeks to bind them.

Mortgage seeks to sidestep *Berman* and *Cullinane* by relying extensively on *Shirley v. Rocket Mortg.*, No. 2:21-CV-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022)—claiming that *Shirley* analyzed the "same LMB Terms of Use", which were presented "in the same manner."

(Mot. at 12-13.)[3] The Court should refuse to adopt *Shirley*, as it is distinguishable and was incorrectly decided in any case. Indeed, *Shirley* analyzed a ***separate*** LMB website, lowermybills.com[4], which contained disclosures different from those at issue here. The lowermybills.com website contained <u>two separate</u> disclosures that sought to bind the plaintiff to its Terms. (*See Shirley* Disclosures, attached as Ex. 3 to Smith Decl.) The fact that the plaintiff manifested assent to multiple, separate disclosures, influenced the court's decision. *See Shirley*, 2022 WL 2541123, at *7-8. Also, unlike the instant website, both disclosures were presented in gray font on a contrasting white background. (*See Shirley* Disclosures, Ex. 3 to the Smith Decl.) The same cannot be said here. Together, the additional disclosure and the manner in which they were presented renders *Shirley* inapposite.

Second, *Shirley* misapplied *Berman*. With respect to whether the notice was conspicuous, the court acknowledged that the font size was comparatively "smaller" than the surrounding text but went on to find that the disclosures were sufficient because "website users did not have to parse through loud videos" nor did "they have to scroll through multiple screen-lengths of similar-looking paragraphs." *Shirley*, 2022 WL 2541123, at *6. This is not the standard articulated in *Berman*. The *Berman* websites also did not feature "loud videos" or "multiple screen-lengths of similar-looking paragraphs". (*See Berman* Disclosures, Ex. 1 to Smith Decl.) Rather, as both

---

[3] Rocket Mortgage also asserts that "LMB Terms of Use were upheld and enforced" in two separate cases: *Rodriguez v. Experian Servs. Corp.*, No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), and *Hill v. ActiveProspect, Inc.*, No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021). (Mot. at 12 n.6.) Both cases were decided **prior** to *Berman* decision, and both analyzed materially different disclosures. *See Rodriguez*, No. 2:15-cv-03553-R-MRW, ECF No. 24-7, pg. 4; *Hill*, No. 5:20-cv-01351-JGB-KK, ECF No. 43-7, pg. 16.) For ease of refence, the *Rodriguez* and *Hill* disclosures can be found as Ex. 4 and 5 to the Smith Decl., respectively.

[4] Again, Rocket Mortgage served a letter which falsely accused Daschbach of visiting LowerMyBills.com, the same website analyzed in *Shirley*. (Smith Decl. ¶¶ 3-4.) Subsequently, and despite being in possession of the lead data, Rocket Mortgage backtracked and clarified that it did not assert that he visited lowermybills.com. (*Id.*)

*Berman* and *Cullinane* instruct, the focus should be on "the overall design of the webpage" and whether it "draw[s] the user's attention away" from the "critical text." *Berman*, 30 F.4th at 857; *Cullinane*, 893 F.3d at 63. Put succinctly, *Shirley* analyzed a separate website and misstated the *Berman* test. As such, the Court should decline to follow its (deeply flawed) reasoning.

In short, the LMB Website failed to provide its consumers adequate notice of its Terms, including the mandatory arbitration clause. Without adequate notice, there is no enforceable agreement to arbitrate. Accordingly, Defendant's Motion should be denied.

> **2.    Neither Plaintiff nor any other user manifested unambiguous assent to the LMB Website's Terms, including the clause mandating arbitration.**

In addition to failing to afford users conspicuous notice of the terms, the LMB Website also fails secure unambiguous manifestation of assent—the second requirement before a contract can be enforced. *Berman*, 30 F.4th at 856 (citation omitted); *Cullinane*, 893 F.3d at 61. Instead, the method of assent was ambiguous at best.

*Berman* also addressed what constitutes an "unambiguous manifestation of assent". There, the defendant had claimed that clicking a large "continue" button was sufficient to manifest assent where the terms were "directly above the button". 30 F.4th at 857-858. But "even close proximity of the hyperlink to relevant buttons users must click on—without more—is insufficient to give rise to constructive notice." *Id.* at 858 (quoting *Nguyen*, 763 F.3d at 1179). Rather, the text notice "must explicitly notify a user of the legal significance of the action she must take to enter into a contractual agreement." *Id.* The defect could have easily been cured "by including language such as, "By clicking the Continue >> button, you agree to the Terms & Conditions." *Id.*

Applied here, the LMB website similarly lacks unambiguous assent. While Rocket Mortgage asserts that Plaintiff manifested assent the Terms because "the website <u>expressly stated</u> in clear and conspicuous disclosures that clicking on the 'See my results!' button confirmed

Plaintiff's agreement to LMB's Terms of Use" (Mot. at 11 (emphasis added)), its proffered evidence contains no such statement. Rather, the LMB disclosure illegibly states "By clicking the button above" the user agrees to various statements, including the Terms of Use. (Dkt. 15-5.) Just as in *Berman*, the language does not "explicitly notify a user of the legal significance of the action she must take" to be bound. At best, the statement is vague and ambiguous as to what "button" must be clicked to bind a consumer. There are two buttons: a "See my results!" and a "Back" button. While Rocket Mortgage will argue that it referred to the "See my results!" button, that is not clear, and the onus should not be placed on the consumer to decipher the website. Just as in *Berman*, the defect could have been remedied by including the phrase "by clicking the 'See my results!' button above".

Additionally, the "By clicking the button above" phrase is not in close proximity to the "See my results!" button; rather, it is out of view of the typical user. Moreover, the phrase "See my results!", on its own, does not suggest to a reasonable user that they are manifesting assent to any agreement. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236, 241 (2d Cir. 2016) ("clicking 'Place your order' does not specifically manifest assent to the additional terms" . . . where the message "'By placing your order, you agree to Amazon.com's ... conditions of use'—is not bold, capitalized, or conspicuous in light of the whole webpage.") (citations omitted). A reasonable user would expect to receive their supposed results that are "ready to view". (Dkt. 15-5.) Put simply, the "[c]larity" of the words matters, *Nicosia*, 834 F.3d at 233, and here they are anything but.

As a final point, because online providers have "complete control" over their website's design, "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers". *Id.* (quoting *Nguyen*, 763 F.3d at 1179). As explained above, LMB (and Rocket Mortgage) did not take that obligation to heart. While the website could have included a

14

check box to manifest the assent to the Terms, a larger font size, text that didn't blend into the background color, and disclosures in view of the user that did not require scrolling down—it did none of this with respect to the Terms and arbitration agreement. And it's unsurprising that lead generators, such as LMB, would prefer stretch and test the limits of what's necessary to constitute an online contract. But to enforce the LMB Terms as displayed in this case would invite a race to the bottom. The Court should decline to do so.

In short, LMB failed to provide users with adequate notice regarding its disclosures and failed to obtain manifested assent. The Motion to Compel Arbitration should therefore be denied.

## IV.   CONCLUSION

Rocket Mortgage's Motion to Compel Arbitration should be denied in its entirety. The LMB website Terms, including the arbitration provision, are not displayed in a conspicuous manner and there is no clear method for users to manifest their assent. Accordingly, the Court should deny Rocket Mortgage's motion and award any such relief as it deems necessary and just.

Respectfully Submitted,

**RICHARD DASCHBACH**, individually and on behalf of all others similarly situated,

Dated: December 20, 2022

By: _/s/ Taylor T. Smith_
One of Plaintiff's Attorneys

V. Richards Ward, Jr. (NH Bar #14262)
rick@vrwardlaw.com
Law Offices of V. Richards Ward, Jr., PLLC
39 N. Main St., Unit D-3
PO Box 1117
Wolfeboro, NH 03894
Tel: (603) 569-9022
Fax: (603) 569-9022

Taylor T. Smith (admitted *pro hac vice*)

tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 907-7628

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of the above titled document was served upon counsel of record by filing such papers via the Court's ECF system on December 20, 2022.

*/s/ Taylor T. Smith*