**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

RICHARD DASCHBACH
*individually and on behalf of all others similarly situated,*

Plaintiff,

v.

ROCKET MORTGAGE, LLC,

Defendant.

**CASE NO. 1:22-cv-00346-JL**

January 10, 2023

**REPLY IN SUPPORT OF ROCKET MORTGAGE, LLC'S MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT**

**By Its Attorneys,**

/s/ *W. Kyle Tayman*
W. Kyle Tayman (*PHV)*
Brooks R. Brown (*PHV)*
Christina L. Hennecken (*PHV)*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

Steven J. Dutton (NH 17101)
McLane Middleton
900 Elm Street | Manchester, NH 03101
(603) 628-1379 |steven.dutton@mclane.com

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .......... 1

I. Plaintiff Does Not Dispute That He Agreed To Arbitrate His Claims. .......... 2

II. The LMB Terms of Use Were Clear and Conspicuous. .......... 3

III. Rocket Mortgage Established that Plaintiff Unambiguously Manifested Assent To the LMB Terms of Use. .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ....................1, 3, 4, 5, 6, 7, 9

*Cullinane v. Uber Technologies, Inc.*,
893 F.3d 53 (1st Cir. 2018) ....................1, 3, 5, 7

*Emmanuel v. Handy Techs., Inc.*,
992 F.3d 1 (1st Cir. 2021) ....................7, 10

*Landry v. Time Warner Cable, Inc.*,
2018 WL 4697578 (D.N.H. Sept. 27, 2018) ....................2

*Nicosia v. Amazon.com, Inc.*,
834 F.3d 220 (2d Cir. 2016) ....................9

*Patrick v. Running Warehouse, LLC*,
2022 WL 10584136 (C.D. Cal. Oct. 18, 2022) ....................10

*Shirley v. Rocket Mortg.*,
2022 WL 2541123 (E.D. Mich. July 7, 2022) ....................1, 5, 6, 9, 10

*Shultz v. TTAC Publ'g, LLC*,
2020 WL 6937818 (N.D. Cal. Oct. 26, 2020) ....................6

*Wilson v. Huuuge, Inc.*,
944 F.3d 1212 (9th Cir. 2019) ....................6

**INTRODUCTION**

Plaintiff's Opposition (ECF No. 19, "Opp.") does not dispute the core facts and legal authorities demonstrating that there exist multiple agreements to arbitrate the claims in this lawsuit. As such, the Motion should granted and the agreements enforced.

First, Plaintiff does not dispute that he visited the refinance.enhancedrefinow.com website and requested mortgage refinance information from Rocket Mortgage and other lenders. Instead, his counsel (not him) offers only the assertion, unsupported by declaration or any evidence, that Plaintiff "does not recall" if he visited the website. Opp. at 1 n.1. That unsupported assertion is insufficient to overcome the substantial (and undisputed) evidence of Plaintiff's multiple agreements to arbitrate submitted by Rocket Mortgage.

Second, Plaintiff's argument that the website did not put him on inquiry notice of his agreements to arbitrate because the LMB Terms of Use were purportedly not conspicuous lacks factual and legal support. As the district court concluded in *Shirley*, the disclosures are clear and conspicuous. And Plaintiff's assertions that the pages before and after the sign-up page containing the disclosures are "confusing," "illegible," or "mislead[ing]" (*e.g.*, Opp. at 4, 11) are not relevant. Nor does Plaintiff's reliance on *Berman* and *Cullinane* help him, because each case dealt with websites and disclosures readily distinguishable from the website at issue here. This is fatal because Plaintiff otherwise fails to meaningfully address—let alone credibly distinguish—Rocket Mortgage's ample authorities, including *Shirley*, demonstrating the valid existence of an agreement to arbitrate here. Memo (ECF No. 15-1) at 10-13.

Finally, the website here comports squarely with the assent requirements Plaintiff asserts *Berman* requires, foreclosing his specious challenge that he did not manifest assent.

## I. PLAINTIFF DOES NOT DISPUTE THAT HE AGREED TO ARBITRATE HIS CLAIMS.

Consistent with Plaintiff's admission (in his original Complaint) that he submitted his personal information online in September 2021 to obtain information about a refinance of his mortgage loan, the record evidence is that Plaintiff (twice) submitted his name, home address, and other information at the refinance.enhancedrefinow.com website and agreed to the LMB Terms of Use and arbitration provision as part of those submissions. Memo at 3-5. That evidence also identifies the type of device Plaintiff used in his submissions (an iPad), the browser type (Safari) and source IP address. *Id.*; Viner Declaration Exs. 1 and 2 (ECF Nos. 15-11, 15-12). Tellingly, this evidence is *undisputed and unaddressed* in Plaintiff's Opposition. Plaintiff, for example, submitted no admissible testimony denying his two submissions at the website, no admissible evidence denying that he used an iPad to make his two submissions, and no evidence denying that he twice went to the website in 2021 and agreed to the LMB Terms of Use and arbitration provision as part of his submissions. Instead, his counsel offers this Court only the bald assertion that Plaintiff "does not recall" or "have any knowledge or recollection" of visiting the website. Opp. at 1 n.1, 3. But this bald assertion—unsupported by declaration or other evidence from Plaintiff—does not (and cannot) create an evidentiary basis for this Court to conclude that there is any legitimate dispute that Plaintiff visited the website and agreed to arbitrate his claims as a matter of law. *See, e.g., Landry v. Time Warner Cable, Inc.*, 2018 WL 4697578, at *3 (D.N.H. Sept. 27, 2018) (finding plaintiff's "lack of recall" with respect to electronically signing an arbitration agreement "insufficient to call into question any properly supported facts presented by" the defendant).[1] The record evidence is undisputed that Plaintiff did both.

---

[1] Plaintiff does not deny that his TCPA claims fall within the scope of the LMB arbitration provision, and that Rocket Mortgage is entitled to enforce it. Memo at 14, 18.

## II. THE LMB TERMS OF USE WERE CLEAR AND CONSPICUOUS.

Unable to dispute his visits to the website and agreement to LMB Terms of Use and arbitration provision, Plaintiff seeks to avoid arbitration by arguing that the website disclosures shown in the Viner Declaration (ECF No. 15-2)—disclosures on an interactive website designed to be viewed on a browser—are not conspicuous. Opp. at 7-13. This argument lacks merit.

As a foundation to his argument, Plaintiff copies and pastes images of the website (Opp. at 4-5) purportedly from the video exhibit to the Viner Declaration (ECF No. 15-5), though Plaintiff offers no confirming declaration or other verification. To the naked eye, however, Plaintiff's purported screenshots are distinct in coloration and appearance from the verified video exhibit, and further distinct from the verified screenshots attached as Exhibits 1 and 2 to the Viner Declaration (ECF Nos. 15-11, 15-12).[2] This raises the specter that Plaintiff's screenshots—the predicate for his conspicuousness argument—are not true and accurate screenshots of the video exhibit. Accordingly, this Court should rely on the video and screenshot evidence submitted as part of the Viner Declaration.

Relying on the purported screenshots of the video exhibit, Plaintiff argues that the appearance and design of the refinance.enhancedrefinow.com website is similar to those at issue in *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) and *Cullinane v. Uber Technologies, Inc.*, 893 F.3d 53 (1st Cir. 2018). But the website defects identified in *Berman* and *Cullinane* are not present here, so neither case advances Plaintiff's argument.

---

[2] Given this difference in appearance, this Court should rely upon the exhibits to the Viner declaration, rather than copies of screenshots that are themselves copies of screenshots.

In *Berman*[3], the website defects that the Ninth Circuit relied upon included: (a) the failure to set the hyperlinks to the terms of use apart from the surrounding text with "a contrasting font color (typically blue)"; (b) the use of disclosure text that was "in a font so small that it is barely legible to the naked eye"; (c) the presence of "other visual elements [that] draw the user's attention away from the barely readable critical text"; and (d) the failure to inform users that by clicking the submission button, they were agreeing to the terms of use. *Berman*, 30 F.4th at 856-57.

The refinance.enhancedrefinow.com submission page has none of these defects. *See* ECF Nos. 15-11 at p. 6 and 15-12 at p. 6. First, as Plaintiff acknowledges, the LMB Terms of Use are hyperlinked in a contrasting font color. Opp. at 10. Second, as shown in the Exhibits accompanying the Viner Declaration, the disclosure text is clearly legible, visible and readable, and the font is significantly larger than the website text at issue in *Berman*. Viner Decl. ¶¶ 15, 21; ECF No. 19-1 at p. 4. Third, by contrast to *Berman*, there are no design elements here that distract the user from the disclosure. The webpage in *Berman*, for example, had bright colors and images surrounding the disclosure, and the disclosure occupied a small portion of the page in the user's view. *See* ECF No. 19-1 at p. 4. Here, by contrast, there are no bright colors on the webpage other than the submission button and hyperlinks, no images at all (let alone images surrounding the disclosure), nothing distracting from the disclosure text, and, as shown by the video exhibit accompanying the Viner declaration, the disclosure is clearly visible and within the user's view as the submission form is completed. *E.g.*, Viner Decl. ¶¶ 15, 21 and ECF No. 15-5. In fact, the user cannot complete the form and reach the submission button without having the disclosure in clear

---

[3] Plaintiff seems to assert that in *Berman* the Ninth Circuit set forth a new "framework" or "test" for enforceability of website agreements. Opp. at 8, 13. He is wrong. In *Berman*, the Ninth Circuit applied existing precedent and nowhere said it was creating new law. For that reason, it is irrelevant that the *Rodriguez* and *Hill* decision predated *Berman*. Opp. at 12, n.3.

view. *Id.* Finally, unlike in *Berman*, there is a disclosure informing the user that "By clicking the button above," the user is agreeing to the LMB Terms of Use. *Id.* As the Court in *Shirley* already concluded in considering another, substantially similar LMB website, the text and disclosure here are conspicuous and materially different from that in *Berman*. *Compare* Viner Decl., Exs. 1 and 2 at p. 6, ECF Nos. 15-11 and 15-12 *with Shirley v. Rocket Mortg.*, 2022 WL 2541123, at *6 (E.D. Mich. July 7, 2022).

*Cullinane* is also inapposite. In *Cullinane*, the First Circuit (applying Massachusetts law) held that Uber's hyperlinked Terms of Service were not reasonably conspicuous in part because they "did not have the common appearance of a hyperlink [which] are 'commonly blue and underlined,'" but instead the "hyperlink was presented in a gray rectangular box in white bold text [which] raise concerns as to whether a reasonable user would have been aware that the gray rectangular box was actually a hyperlink." *Cullinane*, 893 F.3d at 63. By contrast, there is no factual dispute here that the hyperlink was underlined and blue (not white text on a gray background), and the *only* underlined blue text on the submission page were hyperlinks, including hyperlinks to the LMB Terms of Use, distinguishing the links from the other text on the page. Viner Decl. ¶¶ 15, 21. *Cullinane*, thus, supports Rocket Mortgage's arguments—not Plaintiff's.

Plaintiff's attempt to distinguish *Shirley* also falls flat. Although *Shirley* analyzed a different website, the differences between this case and that one with respect to the arbitration issue are virtually non-existent. *Shirley* addressed the same arbitration agreement, nearly the same disclosure language, and a substantially similar webpage design and setup. Indeed, the disclosure on the LMB website at issue in *Shirley* had an almost identical website layout to the one here, with a green "Calculate your FREE results" submission button followed by nearly the same language that the user consented to LMB's Terms of Use, which were also hyperlinked in blue. *Shirley v.*

*Rocket Mortg*., No. 2:21-cv-13007-SFC-KGA, (E.D. Mich. Apr. 19, 2022), ECF No. 25-5. Faced with this reality, Plaintiff emphasizes that the plaintiff in *Shirley* visited "[t]he lowermybills.com website [that] contained two separate disclosures that sought to bind the plaintiff" and that "[t]he fact that the plaintiff manifested assent to multiple, separate disclosures, influenced the court's decision." Opp. at 12 (emphasis in original). But these are not real distinctions.[4] Like in *Shirley*, Daschbach also twice agreed to the LMB terms of use—once in September 2021 and once in December 2021. And the Court's opinion does not rely on the fact that there were two disclosures rather than one, let alone give any indication that such fact "influenced" its decision in any respect.

Plaintiff next asserts that "*Shirley* misapplied *Berman*" because the district court acknowledged that "website users did not have to parse through loud videos" or "scroll through multiple screen-lengths of similar-looking paragraphs" (Opp. at 12) and claims that those factors were not at issue in *Berman*. *Id.* Plaintiff grossly misreads the *Shirley* decision, which specifically stated that it was distinguishing different cases (not *Berman*) that Shirley had relied upon in his opposition arguments—*Shultz v. TTAC Publ'g, LLC*, 2020 WL 6937818, at *4 (N.D. Cal. Oct. 26, 2020) and *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). *See Shirley*, 2022 WL 2541123, at *6 (addressing *Schultz* and *Wilson*). The part of the *Shirley* opinion that Daschbach attacks had absolutely nothing to do with *Berman*. Opp. at 12.

Plaintiff's remaining challenges that the LMB Terms of Use were not conspicuous are without merit or irrelevant. First, Plaintiff posits that "once a user finally gets to page 15 of the process . . . the instant Terms aren't even visible on the initial screen presented to the user. That

[4] In cases involving other websites with only one LMB Terms of Use disclosure, like here, those terms have been enforced. *See* Order, *Rodriguez v. Experian Servs. Corp.,* No. 2:15-cv-03553-R-MRW (C.D. Cal. Oct. 5, 2015), ECF No. 43; Order, *Hill v. ActiveProspect, Inc.,* No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021), ECF No. 90.

is, by Rocket Mortgage's own admission, the disclosure is not visible by a user unless they scroll down. . ." Opp. at 10. Rocket Mortgage made no such admission, and Plaintiff's claim is factually wrong. As clear from reviewing the video playback (ECF No. 15-5), once the user enters his telephone number into the "Phone" field on the submission page of the website, the user can see the submission button and the relevant disclosure *without* further scrolling. That is, for a user entering his phone number like Daschbach did here, the disclosure was necessarily visible (and unavoidable) to the user. That a user like Daschbach submitted other data first before getting to the "phone" submission field has no bearing on whether, when entering the phone number (as Daschbach did) and then clicking the submission button (as Daschbach did), the disclosure was conspicuous. The disclosure is clearly visible on the screen at those points in the process and prior to the submission button being clicked. ECF No. 15-5 at 02:13-16.[5]

Second, Plaintiff argues (speculatively) that the LMB Terms are not reasonably conspicuous because the *other pages* of the refinance.enhancedrefinow.com website, and not the submission page at issue, are "designed to draw user attention away" from the LMB Terms on the submission page. Opp. at 10-12. Although Plaintiff claims that *Berman* and *Cullinane* instruct that a court should consider other pages of a website rather than the specific webpage at issue (Opp. at 10), neither of those cases stands for that proposition. Rather, those cases focus on the design and content of the submission pages, and do not consider any pages before or after the submission page. Regardless, even if the Court considered the other pages of the refinance.enhancedrefinow.com user flow, as Plaintiff calls out, a link to the LMB Terms of Use appears on those preliminary pages underneath the "IMPORTANT DISCLOSURES" heading.

[5] Notably, this Circuit has rejected the argument that needing to scroll to see complete terms of use undermines inquiry notice. *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1, 9 (1st Cir. 2021). Regardless, those are not the facts here.

ECF Nos. 15-11 and 15-12. As Plaintiff admits, those disclosures are "legible" and displayed in "gray text on a contrasting white background." Opp. at 11.

Finally, Plaintiff asserts that the refinance.enhancedrefinow.com website "misleads users" because after making the submission, the website matches users with third parties that can provide mortgage refinance information and provides links to those third parties' websites, instead of providing "proposed rates to refinance their loans." Opp. at 10-11. This argument is a red herring and has nothing to do with whether Daschbach was on inquiry notice of the LMB Terms of Use. Plaintiff cites no authority (and Rocket Mortgage is aware of none) that stands for the proposition that the Court should assess inquiry notice of a submission page by looking at webpages that come *after* the submission page and *after* the user has entered into an agreement. Furthermore, Plaintiff's contention that the pages before the submission page "mislead users" to believe that they will receive "proposed rates to refinance their loans" after the submission page is baseless—the first page of the user flow plainly discloses to the user that the purpose of completing the flow is "To Connect with A Lender"—not to immediately receive a rate quote. ECF No. 15-5. Finally, the fact that Daschbach completed the submission process once in September 2021 and then chose to complete the same process at the same website again in December 2021 belies the suggestion that Daschbach was "misled" or that he did not gain value from being matched with service providers for mortgage refinance information. By clicking the "See my results!" button on two separate occasions, Plaintiff twice assented to the LMB Terms of Use regardless of any webpage viewed following his submission.

## III. ROCKET MORTGAGE ESTABLISHED THAT PLAINTIFF UNAMBIGUOUSLY MANIFESTED ASSENT TO THE LMB TERMS OF USE.

Plaintiff's arguments that Daschbach did not manifest his assent to the LMB Terms of Use—much like his other arguments—lack both factual and legal support. Opp. at 13-15. Relying

on *Berman* and on *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 236, 241 (2d Cir. 2016), Plaintiff argues that the Court should deny the Motion because the refinance.enhancedrefinow.com website failed to "secure unambiguous manifestation of assent." Opp. at 13. Again, these cases are not helpful to Plaintiff. In *Berman*, the relevant disclosures stated "'I understand and agree to the Terms & Conditions,' but they did not indicate to the user what action would constitute assent to those terms and conditions." *Berman*, 30 F.4th at 858. The Ninth Circuit specifically noted that this defect "could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'" *Id.* The defect identified in *Berman* is not present here; the remedy, however, is exactly how the site here was constructed. Just like the disclosure upheld in *Shirley* (2022 WL 2541123, at *7), the disclosure presented to Daschbach on two separate occasions included explicit assent language, just as *Berman* instructs: "By clicking the button above, you express your understanding and consent, electronically via E-sign, to the following: . . . To the LMB Lending Terms of Use." Viner Decl. ¶¶ 15, 21.

*Nicosia*—which applied Washington state law not relevant here—is also inapplicable and distinguishable. *Nicosia*, 834 F.3d at 231, 236. In that case, the "the presentation of terms [was] not directly adjacent to the 'Place your order' button so as to indicate that a user should construe clicking as acceptance," and there was no assent language near the button that "suggests that additional terms apply." *Id.* at 236-237. Specifically, the disclosure was at the top of the page, whereas the button the plaintiff clicked was on the right side of the page significantly separated from the disclosure language. *Id.* Such proximity issues and the absence of language indicating assent are not present here, where the relevant disclosure is directly beneath the button and explicitly states that clicking the button constitutes assent. Memo at 3-6; Viner Decl. ¶¶ 15, 21.[6]

---

[6] Plaintiff's argument that the disclosure's reference to the "button above" could have referred to

While Plaintiff asserts that this disclosure "is out of view of the typical user," (Opp. at 14) as discussed above and shown in the video exhibit, that assertion is belied by the record evidence. ECF No. 15-5.

This case is more analogous to the recent First Circuit decision in *Emmanuel v. Handy Techs., Inc.*, 992 F.3d 1 (1st Cir. 2021). In *Emmanuel*, the court held that the plaintiff had reasonable notice of the website's terms of use, including arbitration provision, when "she selected 'Accept' on the app … The language that the Handy app displayed on the screen of [plaintiff's] smartphone prior to her selecting 'Accept' at that time stated: 'To continue, please accept the revised Independent Contractor Agreement.'" *Id.* at 8-9. Likewise, here, Daschbach was presented with the "See my results!" button and language stating that by clicking that button, he consented to the LMB Terms. Viner Decl. ¶¶ 8, 14-15, 20-21, ECF Nos. 15-11 at p. 6 and 15-12 at p. 6. This Court should follow *Shirley* and *Emmanuel* and find that Plaintiff manifested assent to the LMB Terms of Use and arbitration agreement at the refinance.enhancedrefinow.com website both in September and December 2021. Memo at 10; *Shirley*, 2022 WL 2541123, at *7; *Patrick v. Running Warehouse, LLC*, 2022 WL 10584136, at *6 (C.D. Cal. Oct. 18, 2022).

## **CONCLUSION**

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court grant the Motion and compel Daschbach's individual claim to arbitration and dismiss the complaint.

---

the "Back" link on the webpage is groundless. Opp. at 14. Plaintiff admits that the "See my results!" button is an "oversized green button." Opp. at 3. The "Back" link is not even a button at all, but rather clickable black text that is not surrounded by any box denoting that it is a button. ECF Nos. 15-11 at p. 6 and 15-12 at p. 6. His argument is also illogical—by pressing "Back" there would be no agreement to arbitrate (and no phone calls and thus no lawsuit) because the user would proceed *backward* in the webpage flow, and that is not what Daschbach did here.

January 10, 2023

Respectfully submitted,
*/s/ W. Kyle Tayman*

W. Kyle Tayman (*PHV)*
Brooks R. Brown (*PHV)*
Christina L. Hennecken (*PHV)*
GOODWIN PROCTER LLP
1900 N Street, NW
Washington, DC 20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
CHennecken@goodwinlaw.com

Steven J. Dutton (NH 17101)
McLane Middleton
900 Elm Street | Manchester, NH 03101
(603) 628-1379 |steven.dutton@mclane.com

*Counsel for Rocket Mortgage, LLC*

**CERTIFICATE OF SERVICE**

I, W. Kyle Tayman, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 10, 2023.

V. Richard Ward, Jr. (NH Bar #14262)
rick@vrwardlaw.com
Law Offices of V. Richard Ward, Jr., PLLC
98 Center Street
PO Box 1117
Wolfeboro, NH 03894
Tel: (603) 569-9222
Fax: (603) 569-9022

Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 907-7628

*/s/ W. Kyle Tayman*
W. Kyle Tayman