# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| RICHARD DASCHBACH individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : : |
| v. | : CASE NO. 1:22-cv-00346-JL : |
| ROCKET MORTGAGE, LLC, | : : |
| Defendant. | : : January 10, 2023 : |

## REPLY IN SUPPORT OF ROCKET MORTGAGE, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

By Its Attorneys,

*/s/ W. Kyle Tayman*
W. Kyle Tayman (PHV)
Brooks R. Brown (PHV)
Christina L. Hennecken (PHV)
**GOODWIN PROCTER LLP**
1900 N Street, NW
Washington, DC  20036
Tel.: +1 202 346 4000
Fax: +1 202 346 4444
BBrown@goodwinlaw.com
KTayman@goodwinlaw.com
Chennecken@goodwinlaw.com

Steven J. Dutton (NH 17101)
McLane Middleton
900 Elm Street | Manchester, NH 03101
(603) 628-1379 |steven.dutton@mclane.com

**TABLE OF CONTENTS**

Page
INTRODUCTION ............................................................................................................................. 1
ARGUMENT ................................................................................................................................... 1
    I.    Plaintiff Does Not Plead Any Facts That Support An ATDS Was Used. ................ 1
    II.   Plaintiff Does Not Plead That He Received Telephone Solicitations Within the Meaning of the TCPA. ........................................................................................ 5
    III.  Plaintiff Does Not Adequately Plead That Rocket Mortgage Lacked the Requisite Do Not Call Procedures. ........................................................................ 7
    IV.  Plaintiff Has Not Pled Violations of N.H. Rev. Stat. Ann. § 359-E:8. ..................... 8
CONCLUSION ............................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................3

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...................................................................................................................3

*Breda v. Cellco P'ship*,
   934 F.3d 1 (1st Cir. 2019)..........................................................................................................6

*Brickman v. United States*,
   2022 WL 17826875 (9th Cir. Dec. 21, 2022)........................................................................2, 3

*Camunas v. Nat'l Republican Senatorial Comm.*,
   570 F. Supp. 3d 288 (E.D. Pa. 2021).........................................................................................3

*Clough v. Revenue Frontier*, *LLC*,
   2019 WL 2527300 (D.N.H. June 19, 2019)..............................................................................6

*Decotiis v. Whittemore*,
   635 F.3d 22 (1st Cir. 2011)........................................................................................................1

*Facebook, Inc. v. Duguid*,
   141 S. Ct. 1163 (2021).....................................................................................................1, 2, 4

*Guglielmo v. CVS Pharmacy, Inc.*,
   2021 WL 3291532 (D. Conn. Aug. 2, 2021) ............................................................................4

*Hernandez-Miranda v. Empresas Diaz Masso, Inc.*,
   651 F.3d 167 (1st Cir. 2011)....................................................................................................10

*Himes v. Client Servs. Inc.*,
   990 F. Supp. 2d 59 (D.N.H. 2014).............................................................................................6

*McEwen v. Nat'l Rifle Ass'n of Am.*,
   2022 WL 2073354 (D. Me. June 9, 2022) ................................................................................1

*Mehl v. Green*,
   2022 WL 4056269 (E.D. Cal. Sept. 2, 2022), *report and recommendation
   adopted*, 2022 WL 4473243 (E.D. Cal. Sept. 26, 2022)...........................................................3

*Morris v. Unitedhealthcare Ins. Co.*,
   2016 WL 7115973 (E.D. Tex. Nov. 9, 2016), *report and recommendation
   adopted*, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) ............................................................ 6

*Nece v. Quicken Loans, Inc.*,
   2018 WL 1326885 (M.D. Fla. Mar. 15, 2018) ................................................................. 8

*Norman v. N. Ill. Gas Co.*,
   2014 WL 184774 (N.D. Ill. Jan. 16, 2014) ..................................................................... 6

*Risher v. Adecco Inc.*,
   2022 WL 17082667 (N.D. Cal. Nov. 18, 2022) .............................................................. 2

*Simmons v. Charter Commc'ns, Inc.*,
   222 F. Supp. 3d 121 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017) .......................... 7

*Stauffer v. IRS*,
   939 F.3d 1 (1st Cir. 2019) ..................................................................................... 9

*Suttles v. Facebook, Inc.*,
   461 F. Supp. 3d 479 (W.D. Tex. 2020) ........................................................................ 4

**Statutes**

47 U.S.C. § 227(c)(5) ................................................................................................ 6

N.H. Rev. Stat. Ann. § 265:105-a ............................................................................... 10

N.H. Rev. Stat. Ann. § 359-E:7(X) ............................................................................... 9

N.H. Rev. Stat. Ann. § 359-E:8 ................................................................................. 8

**Other Authorities**

47 C.F.R. § 64.1200(a) ............................................................................................ 10

47 C.F.R. § 64.1200(d) ............................................................................................ 8

47 C.F.R. § 64.1200(f) ............................................................................................ 5

Merriam-Webster Dictionary, available at https://www.merriam-
   webster.com/dictionary/call ................................................................................... 10

**INTRODUCTION**

Plaintiff's Opposition (ECF No. 18, "Opp.") fails to overcome Rocket Mortgage, LLC's well-founded Rule 12(b)(6) dismissal arguments. Unable to distinguish them, Plaintiff largely ignores the dismissal authorities cited by Rocket Mortgage in its Motion and, instead, invites the Court to suspend its "judicial experience and common sense" and infer from his sparsely pled FAC that he has stated claims under the TCPA and NHTSC. *Decotiis v. Whittemore*, 635 F.3d 22, 29 (1st Cir. 2011). The Court should reject that invitation. As confirmed by the caselaw Plaintiff ignores, Plaintiff has not met his pleadings burden and the FAC should be dismissed.

**ARGUMENT**

**I.   PLAINTIFF DOES NOT PLEAD ANY FACTS THAT SUPPORT AN ATDS WAS USED.**

Plaintiff's Opposition confirms that he offers this Court only conclusory allegations that largely parrot the statutory elements of his ATDS claims. He further offers the Court zero case law that follows the Supreme Court's decision in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021) to support his position that parroting the statutory elements is all a plaintiff must do to get to discovery in a TCPA case. Opp. at 5. Nor could he because that is not the law. Counts I and II thus should be dismissed.

Plaintiff concedes that the Supreme Court's decision in *Duguid* is "central" to the resolution of the Motion. Opp. at 4. He also admits that following *Duguid*, multiple courts have held that allegations like those in the FAC that a system that dials numbers from a pre-produced list fail to plead the alleged use of an ATDS. Opp. at 5. Nonetheless, he contends that these authorities are non-binding and unpersuasive because they are outside of the First Circuit.[1] He is

---

[1] An interlocutory appeal relating to "whether the TCPA is limited to dialing systems that generate phone numbers randomly in the first instance" has been certified to the First Circuit in *McEwen v. Nat'l Rifle Ass'n of Am.*, 2022 WL 2073354, at *3 (D. Me. June 9, 2022); however, the case is

1

wrong on two fronts. First, Plaintiff offers the Court no contrary authority supporting his contention that post-*Duguid*, merely pleading "the capacity to produce telephone numbers using a random or sequential number generator" (Opp. at 6) is enough to withstand a motion to dismiss. It is not. Second, the myriad federal appellate and district court cases cited by Rocket Mortgage rejecting Plaintiff's interpretation of *Duguid* (and there are many more[2]) *are persuasive* and prove that Plaintiff's theory fails as a matter of law, particularly in light of Plaintiff's failure to distinguish any of them. Memo at 10-11, ECF No. 16-1 (collecting cases).

Plaintiff's own allegations also belie his use of the "random or sequential number generator" theory. He does not dispute that his original Complaint included concessions that he provided his name and phone number online as part of a request for mortgage refinance information. Compl. ¶¶ 23-25, 30. While he now tries to backtrack from his judicial admission by claiming the FAC supersedes his prior Complaint (Opp. at 7), the FAC nowhere disavows that he was online in September 2021 and submitted his contact information and telephone number as part of his requests to receive mortgage refinance information. Indeed, in connection with his Opposition to the Motion to Compel Arbitration, Plaintiff had every opportunity to submit admissible testimony (such as a declaration) or evidence (such as his internet browser history) to prove that he never went to the refinance.enhancedrefinow.com website and submitted his phone number when agreeing to arbitrate, but instead he chose to remain silent and have his counsel claim that he lacks recollection one way or the other. That speaks volumes. The Court should use common sense based on Plaintiff's own allegations and conclude what is most plausible—that he

---

stayed pending an anticipated settlement. Order, No. 22-1563 (1st Cir. Dec. 16, 2022).
[2] *See e.g., Brickman v. United States*, 2022 WL 17826875, at *2 (9th Cir. Dec. 21, 2022); *Risher v. Adecco Inc.*, 2022 WL 17082667, at *3 (N.D. Cal. Nov. 18, 2022).

went to that site and entered his information and telephone number. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's repeated assertion and unsupported claims that he never consented to the challenged calls is irrelevant and also cannot save his defective ATDS allegations. Instead, the relevant question is whether the technology actually used to call him randomly or sequentially generated his telephone number. Plaintiff's admission in the original Complaint that he was submitting his information online, and that Rocket Mortgage's communications were targeted to him (FAC ¶ 22), demonstrates that his number was not randomly or sequentially generated and that no ATDS was used to make the challenged calls. *Brickman*, 2022 WL 17826875, at *2 ("[A]n [autodialer] must generate and dial random or sequential telephone numbers under the TCPA's plain text. . . . We therefore hold that Meta did not violate the TCPA because it did not use a TCPA-defined autodialer that randomly or sequentially generated the telephone numbers in question.") (citation and quotations omitted); *Mehl v. Green*, 2022 WL 4056269, at *5 (E.D. Cal. Sept. 2, 2022), *report and recommendation adopted*, 2022 WL 4473243 (E.D. Cal. Sept. 26, 2022) (dismissing ATDS claim where calls and text messages were tied to information submitted by plaintiff); *Camunas v. Nat'l Republican Senatorial Comm.*, 570 F. Supp. 3d 288, 295 (E.D. Pa. 2021) (dismissing ATDS claim where plaintiff pled that his number was previously stored in defendant's system and could not plausibly allege "that a random or sequential number generator produced or stored numbers"); Memo at 12-13.[3]

---

[3] Plaintiff also argues that his inclusion of the refinance.enhancedrefinow.com website in his class definition is because "*Defendant* claims he (and every other alleged class member) visited" that site. Opp. at 8. That is irrational and illogical. Plaintiff defined the purported class, not Rocket Mortgage, and Rocket Mortgage has said nothing about other putative class members.

Unable to escape the patent defects in his ATDS allegations, Plaintiff first asserts that his ATDS claims should proceed to discovery because he has made indirect and general allegations regarding the use of an ATDS, namely that: (1) he received seven phone calls and text messages from Rocket Mortgage, FAC ¶¶ 20-26, 28-29; (2) the three text messages were sent using a SMS short code, FAC ¶¶ 23, 25-26; (3) the text messages were impersonal, *id*.; and (4) the messages contained automated response options, *id*. None of these allegations support an inference post-*Duguid* that Rocket Mortgage used an ATDS to call him. That is why Plaintiff cites only pre-*Duguid* district court cases from the Ninth and Seventh Circuits whose interpretation of the definition of an ATDS was expressly overruled by *Duguid*. Opp. at 5-6 (citing, *Scanlon*, *Jara,* and *Mina*). Following *Duguid*, an ATDS must randomly or sequentially generate a telephone number. Plaintiff's allegations that he received a small number of calls and three texts from a short code are in fact entirely irrelevant to how his telephone number was generated, and regardless, do not constitute use of an ATDS. *Duguid*, 141 S. Ct. at 1171. Likewise, Plaintiff's allegation that two text messages in March 2022 were not personally addressed to him cannot overcome his admission that he received targeted phone calls and other communications from Rocket Mortgage that "solicited Plaintiff" (and were not impersonal). FAC ¶¶ 22, 24; *see Suttles v. Facebook, Inc*., 461 F. Supp. 3d 479, 487 (W.D. Tex. 2020) (finding Plaintiff did not sufficiently state ATDS claim where communications sent were targeted to him). Finally, the inclusion of opt-out language in the text messages is consistent with the TCPA's goals and good business practice, and is not indicative that Plaintiff's telephone number was randomly or sequentially generated. *Guglielmo v. CVS Pharmacy, Inc.*, 2021 WL 3291532, at *1 (D. Conn. Aug. 2, 2021) (dismissing ATDS claim despite plaintiff's allegations that "there was no way to respond to anyone directly to communicate

4

concerning the message … despite his attempt[s] to opt out using the instructions, [ ] he continued to receive messages") (internal quotations omitted).

Next, in a last ditch attempt to save his defectively-pled ATDS claims, Plaintiff argues that the use of the term "automatic telephone dialing system" in the TCPA consent language on the refinance.enhancedrefinow.com website somehow "suggests [that] calls would be made using an ATDS." Opp. at 7. This argument is fanciful. That Plaintiff generally agreed to receive calls made using an ATDS does not mean that Rocket Mortgage randomly or sequentially generated his number and called or texted it. Consistent with this, the TCPA consent language is not on a website that Rocket Mortgage owns or controls. Nor does that language apply only to Rocket Mortgage—it extends to other lenders as well. The language thus speaks nothing as to the technology Rocket Mortgage used to call Plaintiff. And, Plaintiff does not provide any authority for the proposition that simply because a webpage contains a disclaimer that calls may be made by an ATDS, there is a plausible inference that an ATDS was used. That is not surprising because the FCC's regulations require that same ATDS language to capture prior express written consent. 47 C.F.R. § 64.1200(f)(9). Plaintiff's view that the presence of that language suggests the use of an ATDS would perversely punish companies that seek to comply (or over-comply) with the TCPA by including that language. That makes no sense.

II. **PLAINTIFF DOES NOT PLEAD THAT HE RECEIVED TELEPHONE SOLICITATIONS WITHIN THE MEANING OF THE TCPA.**

Plaintiff does not dispute that as an element of his DNC claim in Count III, he bears the burden to plead (and later prove) that he received two or more "telephone solicitation" calls in a 12-month period. As defined in the applicable federal regulations, a "telephone solicitation" is a call or message "for the purpose of encouraging the purchase or rental of . . . goods, or services" that is not made with the recipient's "prior express invitation or permission." Opp. at 8; 47 C.F.R.

§ 64.1200(f)(15). Ignoring the precise language of the definition, however, Plaintiff argues that dismissal is not warranted because "consent" is an affirmative defense to TCPA claims and not part of his affirmative pleading obligation. But "consent" is neither an element of nor defense to Plaintiff's Section 227(c) claim. That claim, by the express terms of the regulation Plaintiff conveniently ignores, requires that Plaintiff plead the calls to him were not made with his "permission or invitation." He has failed to do so. Memo at 13-14. That is the end of the inquiry.[4]

The cases Plaintiff cites stating that "consent" is an affirmative defense, including *Breda v. Cellco P'ship*, compel no different conclusion because they concern TCPA claims brought under Section 227(b), which is not at issue in Count III. 934 F.3d 1, 4 n.4 (1st Cir. 2019) ("addressing the elements of a TCPA claim under § 227(b)(1)(A)(iii) for the first time, we understand consent to be an affirmative defense, which the caller has the burden to prove"); *Clough v. Revenue Frontier, LLC*, 2019 WL 2527300, at *6-7 (D.N.H. June 19, 2019) (addressing Section 227(b)(1)(A)(iii) claim); *Himes v. Client Servs. Inc.*, 990 F. Supp. 2d 59, 62 (D.N.H. 2014) (same). Plaintiff's DNC claim arises under Section 227(c), so those cases are of no help to him.

As Rocket Mortgage demonstrated in its Motion (Memo at 13-15), numerous courts have held that claims under the DNC provision cannot stand where, like here, the complaint supports that the calls were placed with the recipient's prior invitation or permission. Plaintiff does not

---

[4] The applicable regulatory language also does not support any conclusion that the lack of prior invitation or permission is a defense (as opposed to an element). To the contrary, where the statute requires proof of two or more "telephone solicitation" calls in a 12-month period (47 U.S.C. § 227(c)(5)) and the applicable regulations define such calls as unsolicited calls made without "that person's prior express invitation or permission" (64.1200(f)(15)), the inescapable conclusion is that the receipt of "telephone solicitation" calls is an element of Plaintiff's claim. Consistent with this, numerous courts have granted motions to dismiss federal do not call list provision claims where, as here, the plaintiff did not plead factual allegations of receipt of a "telephone solicitation" call from defendant. *See, e.g., Morris v. Unitedhealthcare Ins. Co.*, 2016 WL 7115973, at *10-11 (E.D. Tex. Nov. 9, 2016), *report and recommendation adopted*, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016); *Norman v. N. Ill. Gas Co.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014).

meaningfully engage with those authorities, nor cite any relevant authority under Section 227(c) for this Court to hold Rocket Mortgage to the heightened standard that he urges (Opp. at 9) on a motion to dismiss.  And Plaintiff's blanket denial that he did not consent to the calls cannot square with his pleadings and the record before the Court, nor with his concession that he has "no recollection" (Opp. at 7) of whether he submitted his phone number at the subject website and therefore invited and gave his permission the challenged calls (*supra* Section I).

### III. PLAINTIFF DOES NOT ADEQUATELY PLEAD THAT ROCKET MORTGAGE LACKED THE REQUISITE DO NOT CALL PROCEDURES.

Plaintiff asserts that the Court should not dismiss Count IV because Plaintiff's receipt of two "text messages more than thirty days after requesting that Defendant stop calling him" supports an inference that Rocket Mortgage lacked the requisite internal do-not-call procedures. Opp. at 11.  Rocket Mortgage already addressed this argument in its opening brief, and Plaintiff tellingly offers no response.  As already shown, Subsection 64.1200(d) does not allow a claim simply on the basis of an alleged failure to honor an opt-out request within a reasonable time. Memo at 16-17.  And Plaintiff neither addresses this argument nor distinguishes any of the cases cited by Rocket Mortgage or presents any authority to support that the Court should infer that Rocket Mortgage lacked the necessary procedures based on Plaintiff's receipt of two text messages months after his alleged do-not-call request.  Opp. at 11-12.  The law is clear that a violation of Section 64.1200(d) requires a plaintiff to plead plausible factual allegations that the entity placing the calls failed to institute proper procedures prior to the initiation of the communication. *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), *aff'd*, 686 F. App'x 48 (2d Cir. 2017).  Plaintiff failed to do so.

That is why his Opposition cannot point to any allegation in the FAC to plausibly support that Rocket Mortgage had not instituted a procedure for maintaining an internal do-not-call list—

there are none. Rather, his allegations more plausibly support that such a policy was in place. Specifically, Plaintiff alleges that on September 15, 2021, he asked for the calls to him to stop. FAC ¶ 24. He does not deny that he received no calls (none) after that date. He alleges only that he received two text message months later, in March 2022. *Id.* ¶¶ 25-26. That the communications to him immediately stopped after his request supports that Rocket Mortgage had the requisite policy in place and followed it. And that he received two text messages in March is more plausibly explained by his second visit to the refinance.enhancedrefinow.com website after September 15 where he again requested calls and text messages (as shown in Rocket Mortgage's Motion to Compel Arbitration, ECF No. 15-1 at 5-6).

Plaintiff's attempts to distance the Court's holding in *Nece v. Quicken Loans, Inc.* also fail. The *Nece* court decided that Rocket Mortgage has had the requisite internal do-not-call list procedure in place since as early as 2012. 2018 WL 1326885, at *7-8 (M.D. Fla. Mar. 15, 2018). If Rocket Mortgage had the requisite procedures in place in 2012, it makes no sense that it would abandon its TCPA policy, rather than continue to have those same procedures in place in 2021 and 2022. As to his contention that "Plaintiff does not have access to information regarding the nature of [Rocket Mortgage's] internal DNC procedures" (Opp. at 11-12), his assertion is groundless because the TCPA requires that the policy be available on demand and Plaintiff alleges no effort that he made to request that policy. 47 C.F.R. § 64.1200(d)(1).

## IV.  PLAINTIFF HAS NOT PLED VIOLATIONS OF N.H. REV. STAT. ANN. § 359-E:8.

In an attempt to save Counts V and VI, which allege violations of the NHTSC, Plaintiff urges the Court to read out the requirement that Section 359-E:8 only applies to "telemarketers," and read into the statute that the definition of "telephone calls" also covers "text messages" when no such words appear in the statute. Opp. at 13-14. Both efforts fail. At the outset, Rocket Mortgage demonstrated that Plaintiff's NHTSC claims fail because they do not apply to calls made

8

"[i]n response to an express written or verbal request of the customer." Memo at 19. Plaintiff does not respond to this argument at all, and so concedes the point, warranting dismissal.

Even if that were not somehow enough to merit dismissal, however, under the NHTSC "Telemarketing" is defined as "any plan, program, or campaign … which involves more than *5 telephone calls per month* by a telemarketer in which *the customer is* located within the state at the time of the call." N.H. Rev. Stat. Ann. § 359-E:7(X) (emphases added). Plaintiff argues that because this is a putative class action, he has adequately alleged that Rocket Mortgage has made, in aggregate, more than 5 telephone calls per month and, thus, has engaged in "telemarketing." That argument, however, ignores the plain language of the statute, which applies when there are a minimum of 5 telephone calls per month where "the customer is" (singular, not plural) in the state. N.H. Rev. Stat. Ann. § 359-E:7(X). Had the New Hampshire legislature intended to define "telemarketing" to include calls made in aggregate then it could have instead made the statute applicable when there are "more than 5 telephone calls per month by a telemarketer in which the customers are" located in the state, or even simply said "more than 5 telephone calls per month by a telemarketer directed to customers in the state." But the legislature chose instead to limit its application to "more than 5 telephone calls per month" where "the customer is." The Court should enforce the plain meaning of the statute. *See Stauffer v. IRS*, 939 F.3d 1, 7 (1st Cir. 2019) ("[t]he words of the statute are the first guide to any interpretation of the meaning of the statute ... if the meaning is plain.").

Plaintiff's next argument that text messages should be included in the definition of "telephone call" equally flies in the face of the statutory text and should be rejected. Unlike the TCPA, which has a rich body of regulatory and case law guidance, the NHTSC does not. In each of the cases cited by Plaintiff where the TCPA was applied to text messages, the court relied upon

9

the FCC's guidance that the TCPA was intended to encompass both voice calls and text calls. Opp. at 14-15. The FCC has explicitly said as much in its regulations. *E.g.*, 47 C.F.R. § 64.1200(a)(9) ("the term 'call' includes a text message, including a short message service (SMS) call"). Plaintiff, however, does not point to any equivalent regulations or guidance in New Hampshire or any case law to show that under the NHTSC, "telephone call" should also mean "text messages." And the New Hampshire legislature knows well how to indicate when it means "text message" versus a "telephone call." *E.g.*, N.H. Rev. Stat. Ann. § 265:105-a "Prohibited Text Messages." Given the absence of any guidance, the dictionary definition of "call" should be used, which in this context is "the act of speaking to or attempting to reach someone by telephone" and includes a verbal element of communication and does not include communications by text message.[5] *Hernandez-Miranda v. Empresas Diaz Masso, Inc.*, 651 F.3d 167, 171 (1st Cir. 2011) ("To determine ordinary meaning, we may consult dictionary definitions"). Accordingly, Counts V and VI should be dismissed because Plaintiff's allegations do not state a claim for violation of the NHTSC.

## CONCLUSION

For the foregoing reasons, Rocket Mortgage respectfully requests that this Court dismiss Daschbach's FAC in its entirety.

---

[5] *See* Merriam-Webster Dictionary, available at https://www.merriam-webster.com/dictionary/call, noun definition 8.

10

January 10, 2023

                                        Respectfully submitted,

                                        */s/ W. Kyle Tayman*
                                        W. Kyle Tayman (PHV)
                                        Brooks R. Brown (PHV)
                                        Christina L. Hennecken (PHV)
                                        GOODWIN PROCTER LLP
                                        1900 N Street, NW
                                        Washington, DC  20036
                                        Tel.: +1 202 346 4000
                                        Fax: +1 202 346 4444
                                        BBrown@goodwinlaw.com
                                        KTayman@goodwinlaw.com
                                        CHennecken@goodwinlaw.com

                                        Steven J. Dutton (NH 17101)
                                        McLane Middleton
                                        900 Elm Street | Manchester, NH 03101
                                        (603) 628-1379 |steven.dutton@mclane.com

                                        Counsel for Rocket Mortgage, LLC

## **CERTIFICATE OF SERVICE**

I, W. Kyle Tayman, certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 10, 2023.

V. Richard Ward, Jr. (NH Bar #14262)
rick@vrwardlaw.com
Law Offices of V. Richard Ward, Jr., PLLC
98 Center Street
PO Box 1117
Wolfeboro, NH 03894
Tel: (603) 569-9222
Fax: (603) 569-9022

Taylor T. Smith
tsmith@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 E. Mexico Avenue, Suite 300
Denver, CO 80210
Tel: (720) 907-7628

/s/ W. Kyle Tayman
W. Kyle Tayman