UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Richard Daschbach, et al.</u>

      v.

Civil No. 22-cv-346-JL
Opinion No. 2023 DNH 028

<u>Rocket Mortgage, LLC</u>

## **<u>MEMORANDUM ORDER</u>**

Defendant Rocket Mortgage, LLC's effort to compel this case to arbitration hinges on whether its hyperlinked, online "Terms of Use" placed the plaintiff on inquiry notice of the arbitration clause within those terms, thus rendering them enforceable. Plaintiff Richard Daschbach filed this putative class action after Rocket Mortgage, allegedly without his consent or solicitation, called him and sent him text messages on several occasions, in violation of the Federal Telephone Consumer Protection Act (TCPA) and New Hampshire's statutory counterpart.

Rocket Mortgage moves to compel arbitration, arguing that Daschbach accessed the website in question two separate times in 2021, "clicked" through it, submitted his personal information, and received the requested mortgage refinance information. By taking these actions, Rocket Mortgage contends that Daschbach unambiguously assented to the company's Terms of Use (including their mandatory arbitration clause), which were presented to him in a reasonably conspicuous manner. Thus, as Rocket Mortgage sees it, Daschbach's claims must be submitted to arbitration. Daschbach focuses his objection on the website itself, arguing that the text directing users to the Terms of Use was not reasonably conspicuous, and that a user cannot unambiguously assent to the

terms based on the website's overall design and layout.  As a fallback, Rocket Mortgage moves to dismiss Daschbach's First Amended Complaint for failure to state a claim upon which relief can be granted.

The court has subject-matter jurisdiction under 28 U.S.C. § 1331 (federal question) and 9 U.S.C. § 4 (Federal Arbitration Act).  After reviewing the parties' submissions and hearing oral argument, the court denies both motions.  Based on certain design elements, the website at issue does not place a reasonably prudent internet user on notice of the Terms of Use and arbitration clause.  Daschbach therefore did not form an enforceable arbitration agreement with Rocket Mortgage.  As for Rocket Mortgage's motion to dismiss, the court properly focuses its analysis on allegations in the First Amended Complaint and finds that Daschbach has alleged minimally sufficient facts from which the court can reasonably infer Rocket Mortgage's liability for each asserted claim.

## I.    **Applicable legal standards**

**Motion to compel arbitration.**  The court applies "the summary judgment standard to evaluate motions to compel arbitration under the FAA." Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).  Under that standard, Rocket Mortgage must "assert the absence of a genuine issue of material fact" as to the formation of the arbitration agreement, "and then support that assertion by affidavits, admissions, or other materials of evidentiary quality." Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003).  "A genuine issue is one that could be resolved in favor

of either party, and a material fact is one that has the potential of affecting the outcome of the case." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotation omitted). As it is obligated to do in the summary judgment context, the court "rehearse[s] the facts in the light most favorable to the nonmoving party (here, the plaintiff), consistent with record support," and gives him "the benefit of all reasonable inferences that those facts will bear." Noviello v. City of Boston, 398 F.3d 76, 82 (1st Cir. 2005) (internal citation omitted).

**Motion to dismiss.** To defeat a Rule 12(b)(6) motion, Daschbach must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Martinez v. Petrenko, 792 F.3d 173, 179 (1st Cir. 2015). This standard "demands that a party do more than suggest in conclusory terms the existence of questions of fact about the elements of a claim." A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 81 (1st Cir. 2013). In ruling on such a motion, the court accepts as true all well-pleaded facts set forth in the complaint and draws all reasonable inferences in Daschbach's favor. See Martino v. Forward Air, Inc., 609 F.3d 1, 2 (1st Cir. 2010). The court may also consider judicially noticed documents, matters of public record, and documents introduced by Daschbach in his objection to the motion to dismiss or concessions in that objection, without converting the 12(b)(6) motion into a motion for summary judgment. See Breiding v. Eversource Energy, 939 F.3d 47, 49 (1st Cir. 2019); Greene v. Rhode Island, 398 F.3d 45, 49 (1st Cir. 2005).

II.     **Background**

   **Superseded original complaint.**  Before recounting the relevant facts, the court addresses the parties' dispute over the impact, if any, of allegations Daschbach made in his original complaint but omitted from his amended complaint.  Rocket Mortgage contends that these allegations constitute "judicial admissions" that the court can consider in deciding the pending motions.[1]  Daschbach responds that because an amended complaint normally supersedes an original complaint, the court must only consider the factual allegations in the amended complaint.  Neither party is entirely correct.

   "An amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."  InterGen N.V., 344 F.3d at 145.  "[S]tatements made in a superseded complaint," however, are <u>not</u> "null and void for all purposes."  Id.  "Under certain circumstances, such statements may be party admissions, usable as such despite subsequent amendment of the complaint."  Id. at 144-45; <u>see also</u> Wiseman v. Reposa, 463 F.2d 226, 227 (1st Cir. 1972) ("As a matter of pleading, the [subsequently amended] original complaint had disappeared.  <u>As an admission against interest, it had not</u>.") (emphasis added); 2 McCormick on Evidence § 257 (8th ed.) ("Amended, withdrawn, or superseded pleadings are no longer judicial admissions but may be used as evidentiary admissions.").

---

[1] Rocket Mortgage does not argue that Daschbach is bound by the allegations in his original complaint as a matter of judicial estoppel.  Even if it had, the doctrine would not apply because Daschbach amended his complaint before "the issuance of <u>any</u> substantive ruling addressed to the original complaint," and thus, "gained . . . no advantage from [his] original pleading." InterGen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003) (emphasis in original).

Thus, a court "may consider a statement or allegation in a superseded complaint as rebuttable evidence when determining whether summary judgment is proper." W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank, 712 F.3d 165, 173 (3d Cir. 2013); see also Pona v. Weeden, No. CV 16-612 WES, 2018 WL 1417725, at *4 (D.R.I. Mar. 21, 2018) (noting that "the facts in the original complaint remain as potential party admissions, usable, for example, at summary judgment, despite the subsequent amendment" but "must [be] disregard[ed]" at the motion to dismiss stage); Glob. ePoint, Inc. v. GTECH Corp., 58 F. Supp. 3d 178, 190 (D.R.I. 2014) (As a result of amendment, "the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though controvertible, like any other extrajudicial admission made by a party or his agent." (quoting Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc., 32 F.2d 195, 198 (2d Cir. 1929))).

The court may not use such admissions, however, when deciding a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6). See, e.g., W. Run Student Hous. Assocs., LLC, 712 F.3d at 173 ("However, at the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint."); Kelley v. Crosfield Catalysts, 135 F.3d 1202, 1205 (7th Cir. 1998) ("Any facts that Kelley had pleaded in his first two complaints were effectively nullified for 12(b)(6) purposes when he filed his Second Amended Complaint, which did not reference those

facts.").[2]  As a result, the court will consider Daschbach's admissions in his original

complaint in deciding Rocket Mortgage's motion to compel arbitration under the

summary judgment standard, but it will not consider them for purposes of deciding its

motion to dismiss.

     **Factual background.**  Daschbach resides in Exeter, New Hampshire.[3]  He uses a

cellular telephone number ending in "7110," and he registered that number on the

National "Do Not Call" Registry in February 2019.[4]  In September 2021, Daschbach

visited a website.[5]  Rocket Mortgage submitted unrebutted evidence with its motion to

compel that Daschbach in fact visited the website "refinance.enhancedrefinow.com" (for

purposes of this order, the "Website"), which belongs to Rocket Mortgage's affiliate

---

[2] In support of its argument that the court can consider allegations from the now-superseded original complaint in deciding its motion to dismiss for failure to state a claim, Rocket Mortgage cites a line of cases from the District of Massachusetts purporting to do so.  See doc. no. 15-1 at 11 n.5.  Those non-binding cases are distinguishable from the circumstances presented here, and the court declines to follow them.  See, e.g., Golub v. Ne. Univ., No. 19-cv-10478-ADB, 2020 WL 3086050, at *1 (D. Mass. June 10, 2020), aff'd, No. 20-1674, 2021 WL 6425374 (1st Cir. July 20, 2021) (absent objection from pro se plaintiff, the court considered, without discussion, facts from original, superseded complaint in deciding a motion to dismiss); Lifchits v. Integon Nat'l Ins. Co., No. 18-CV-12637-ADB, 2020 WL 4756272, at *1 (D. Mass. Aug. 17, 2020) (where pro se plaintiff did not object to using original complaint, and amended complaint included few facts about jurisdiction or venue, court needed to consider original complaint to fill gaps); Phillips v. Murphy, No. CIV.A. 0140166RWZ, 2003 WL 22595198, at *2 (D. Mass. Nov. 10, 2003) (in a summary judgment setting, court considered allegations from original complaint as party admissions as an evidentiary matter); Tomas v. Buckley, No. 19-CV-12079-ADB, 2020 WL 2616304, at *1 (D. Mass. May 22, 2020) (in a case involving pro se plaintiff, the court referred "to the original complaint only to review additional facts and allegations about jurisdiction and venue, but not to alter Plaintiff's claims").

[3] First Amended Complaint (doc. no. 10) at ¶ 10.

[4] Id. at ¶¶ 18-19.

[5] See Complaint (doc. no. 1) at ¶ 22.  Daschbach originally alleged that the website was "fedratewatch.org."  Id.

LMB Mortgage Services, Inc. d/b/a LowerMyBills.com (LMB), using an iPad device.[6]

LMB and Rocket Mortgage share the same parent company.[7]

Daschbach answered a series of questions on the Website to see if he could qualify
for savings on his mortgage or refinancing programs.[8]  He then reached a webpage that
asked for personal information (such as first and last name, e-mail, phone number, and
alternative phone number) and contained a button to "click" after entering the
information to see the "results" of the inquiry.[9]  Daschbach entered the information and
clicked the button.[10]  Because the Website is central to Rocket Mortgage's motion to
compel arbitration, the court describes its layout and design in more detail below in
Section III. A., infra.

Following his interaction with the Website, Daschbach received three calls from
Rocket Mortgage on September 13 and 14, 2021.  He also received an e-mail from a
representative of Rocket Mortgage and a text message from the company using the
shortcode number 762538 on September 14.  On September 15, Daschbach received
another call from Mollie Warsing, a representative of Rocket Mortgage.  During this call,

---

[6] See Decl. of Mitchell Viner (doc. no. 15-2) at ¶¶ 3, 8; see also doc. no. 10 at ¶ 31 (referencing
the "refinance.enhancedrefinow.com" website in the definition of certain putative classes in
which Daschbach is a member).

[7] See doc. no. 15-2, at ¶ 3, 15-10 at ¶ 3.

[8] Doc. no. 1 at ¶ 22.

[9] Id. at ¶¶ 23-25.  Rocket Mortgage submitted unrebutted evidence that Daschbach also provided
his home address in Exeter as part of his submission to the Website.  See doc. no. 15-2 at ¶ 8.

[10] Id. at ¶ 25.

Daschbach asked that Rocket Mortgage stop placing calls to his cellular telephone.[11]  On two separate dates in March 2022, Daschbach also received text messages from Rocket Mortgage using the same shortcode number.[12]  Each of the text messages from Rocket Mortgage gave the recipient the option to type "STOP" to stop receiving text messages.[13]

Rocket Mortgage is a nationwide mortgage loan provider.[14]  As part of its residential mortgage business, Rocket Mortgage interacts with individuals who access its website directly or call the company's direct line.  It also interacts with individuals who provide their personal and contact information to websites run by its affiliates such as LMB.[15]  These affiliate websites – like the Website at issue – provide what Rocket mortgage calls "referral services."  The websites match consumers with Rocket Mortgage and other mortgage loan providers based on the information the consumer submits.[16]  To utilize the "referral services" of the Website and other LMB sites, the consumer must agree to be bound by LMB's Terms of Use,[17] which require mandatory arbitration of all

---

[11] See doc. no. 10 at ¶¶ 20-24.

[12] Id. at ¶¶ 25-26.  Rocket Mortgage also submitted unrebutted evidence that Daschbach again visited the Website in December 2021, completed the same questionnaire as his September visit, provided his personal information, and clicked the submission button to see his "results."  See Viner Decl. (doc. no. 15-2) at ¶¶ 8, 10, 17-22.

[13] Doc. no. 10 at ¶¶ 23, 25-26.

[14] Id. at ¶ 5.

[15] See Decl. of Amy Courtney (doc. no. 15-10) at ¶ 3.

[16] Viner Decl. (doc. no. 15-2) at ¶ 4.

[17] Id. at ¶¶ 11, 17.

claims, disputes, and controversies with LMB and its affiliates like Rocket Mortgage.[18]

The arbitration provision reads, in full, as follows:

> 2. **ARBITRATION.** YOU UNDERSTAND AND AGREE THAT ALL
> CLAIMS, DISPUTES OR CONTROVERSIES BETWEEN YOU AND
> LMB, AND ITS PARENTS, AFFILIATES, SUBSIDIARIES OR
> RELATED COMPANIES, INCLUDING BUT NOT LIMITED TO TORT
> AND CONTRACT CLAIMS, CLAIMS BASED UPON ANY FEDERAL,
> STATE OR LOCAL STATUTE, LAW, ORDER, ORDINANCE OR
> REGULATION, AND THE ISSUE OF ARBITRABILITY, SHALL BE
> RESOLVED BY FINAL AND BINDING ARBITRATION AT A
> LOCATION DETERMINED BY THE ARBITRATOR. ANY
> CONTROVERSY CONCERNING WHETHER A DISPUTE IS
> ARBITRABLE SHALL BE DETERMINED BY THE ARBITRATOR
> AND NOT BY THE COURT. JUDGMENT UPON ANY AWARD
> RENDERED BY THE ARBITRATOR MAY BE ENTERED BY ANY
> STATE OR FEDERAL COURT HAVING JURISDICTION THEREOF.
> THIS ARBITRATION CONTRACT IS MADE PURSUANT TO A
> TRANSACTION IN INTERSTATE COMMERCE AND ITS
> INTERPRETATION, APPLICATION, ENFORCEMENT AND
> PROCEEDINGS HEREUNDER SHALL BE GOVERNED BY THE
> FEDERAL ARBITRATION ACT ("FAA"). NEITHER YOU NOR LMB
> SHALL BE ENTITLED TO JOIN OR CONSOLIDATE CLAIMS IN
> ARBITRATION BY OR AGAINST OTHER CONSUMERS OR
> ARBITRATE ANY CLAIM AS A REPRESENTATIVE OR MEMBER
> OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY.
> THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY
> RIGHT THEY HAVE TO A JURY TRIAL.
>
> THE PARTIES AGREE THAT THIS AGREEMENT HAS BEEN
> ENTERED INTO AT LMB'S PLACE OF BUSINESS IN THE COUNTY
> OF LOS ANGELES, STATE OF CALIFORNIA, AND ANY
> ARBITRATION, LEGAL ACTION OR PROCEEDING ARISING OUT
> OF OR RELATING TO THIS AGREEMENT MUST BE COMMENCED
> AND TAKE PLACE IN THE COUNTY OF LOS ANGELES, STATE OF
> CALIFORNIA.[19]

---

[18] See Terms of Use (doc. no. 15-6).  The Terms of Use were the same in September and December 2021.  See doc. no. 15-2 at ¶ 4.

[19] Doc. no. 15-6 at 2-3.

Rocket Mortgage asserts that by clicking through the Website, submitting his personal information, and pressing the button to see his results, Daschbach agreed to be bound by these Terms of Use, including the mandatory arbitration provision, and also agreed to be contacted by Rocket Mortgage.  In his opposition to Rocket Mortgage's motion to compel arbitration, Daschbach contends (through his attorney, as opposed to sworn affidavit) that he never visited the Website and alleges in the First Amended Complaint that he never consented to receiving telephone calls from Rocket Mortgage.[20]

In September 2022, Daschbach filed this action against Rocket Mortgage on behalf of himself and classes of other similarly situated consumers who allegedly received unsolicited and unwanted phone calls or text messages from Rocket Mortgage. Daschbach asserts six causes of action against Rocket Mortgage: four under the TCPA, 47 U.S.C. § 227, et seq. and its regulations, and two under New Hampshire's statutory telemarketing rules, N.H. RSA § 359-E:8.

## III.   <u>Analysis</u>

Rocket Mortgage moves under the FAA for an order compelling arbitration of all of Daschbach's claims, arguing that Daschbach agreed to arbitrate any disputes with Rocket Mortgage through his interactions with the Website.  In the alternative, Rocket Mortgage moves to dismiss Daschbach's complaint for failure to state a claim upon which relief can be granted.  Daschbach avers that he did not form an enforceable arbitration agreement with Rocket Mortgage and opposes the motion to dismiss, arguing

---

[20] Doc. no. 10 at ¶ 29.

that he pled sufficient facts to state each asserted claim.  The court first addresses the

motion to compel arbitration.  As shown below, Rocket Mortgage has not sustained its

burden to establish that the Website provided reasonably conspicuous notice of the terms

to which Daschbach would be bound.

### A.      Motion to compel arbitration

Section 4 of the FAA allows "a party aggrieved by the alleged failure, neglect, or

refusal of another to arbitrate under a written agreement for arbitration," to petition a

court for an order compelling arbitration.  9 U.S.C. § 4.  To prevail on its motion to

compel, Rocket Mortgage must show "that a valid agreement to arbitrate exists, that [it]

is entitled to invoke the arbitration clause, that the other party is bound by that clause, and

that the claim[s] [at issue] come[] within the clause's scope." Nat'l Fed'n of the Blind v.

The Container Store, Inc., 904 F.3d 70, 79–80 (1st Cir. 2018) (quoting Soto-Fonalledas v.

Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011)).  The

parties' sole dispute is whether they formed an enforceable agreement to arbitrate.  See

Rivera-Colon v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200, 207 (1st Cir. 2019)

("[T]he existence of an enforceable agreement to arbitrate is the first needed step to

trigger the FAA's protective reach.").[21]

To put a finer point on it, Daschbach does not meaningfully dispute that he

accessed the website in question and clicked through it.  He provides no sworn testimony

or other evidence disputing that point and, using the body of evidence submitted by the

---

[21] Daschbach does not challenge Rocket Mortgage's arguments that (1) it is entitled to enforce
LMB's Terms of Use and arbitration provision and (2) the arbitration provision covers the claims
in this case.

parties with their briefing, he instead challenges the enforceability of the arbitration

agreement on other grounds.[22]  The court focuses its analysis accordingly.  See Oberstein

v. Live Nation Ent., Inc., No. 21-56200, 2023 WL 1954688, at *9 (9th Cir. Feb. 13,

2023) ("[W]here the authenticity of screenshots is not subject to factual dispute, courts

may decide the [contract formation] issue as a pure question of law." (quotations

omitted)).

 "Because arbitration is a creature of contract, 'principles of state contract law

control the determination of whether a valid agreement to arbitrate exists.'"  Rivera-

Colon, 913 F.3d at 207 (quoting Soto-Fonalledas, 640 F.3d at 475).  Thus, "if an

enforceable contract exists under [applicable] law," the court "must enforce that

agreement 'save upon such grounds as exist at law or in equity for the revocation of any

contract,' 9 U.S.C. § 2,[23] and send the parties off to arbitrate."  Id. at 208.  Rocket

Mortgage contends that California law applies, while Daschbach contends that New

Hampshire law applies.  The parties agree and confirmed at oral argument, however, that

---

[22] By claiming (through his attorney, as opposed to sworn affidavit) a lack of recall and deeming the issue "immaterial," doc. no. 20, n.1, Daschbach concedes that, for purposes of the motion to compel arbitration, he cannot create a "genuine issue of fact" about whether he accessed the Website.  Air-Con, Inc., 21 F.4th at 175; see also id. at n. 8 ("The non-moving party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." (quotation omitted)); Haag v. United States, 485 F.3d 1, 3 (1st Cir. 2007) (a purported lack of memory about a fact is not affirmative evidence that the event did not occur and, therefore, is insufficient to render that fact "genuinely disputed").  Such a genuine dispute would require an "expeditious and summary § 4 trial" and, potentially, limited discovery on the question of whether the parties "agreed to arbitrate," Air-Con, Inc., 21 F.4th at 175, but Daschbach makes no request for a summary trial, evidentiary hearing, or targeted discovery on the issue here.

[23] Daschbach does not assert any grounds for revoking the contract at issue.

the law on formation and enforceability of contracts is substantially the same in each state, so the express choice of one state law over another ultimately does not matter. Indeed, the parties both apply the standard from Berman v. Freedom Financial Network, LLC to their arguments.  30 F.4th 849, 855 (9th Cir. 2022) (applying California law to arbitration agreement formation question).  The court will therefore use the standard advanced by the parties and draw from cases applying both New Hampshire and California law.

 To form an enforceable contract under New Hampshire or California law, "[t]here must be a meeting of the minds on all essential terms."  Behrens v. S.P. Const. Co., 153 N.H. 498, 501 (2006).  "That is, the parties must have the same understanding of the terms of the contract and must manifest an intention . . . to be bound by the contract." Bel Air Assocs. v. New Hampshire Dep't of Health & Human Servs., 158 N.H. 104, 108 (2008) (quoting Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006)); accord Berman, 30 F.4th at 855 (noting that to form a contract under California law, "the parties must manifest their mutual assent to the terms of the agreement.").  "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." Berman, 30 F.4th at 855.  But "[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents."  Restatement (Second) of Contracts § 19(2) (1981).

 "These elemental principles of contract formation apply with equal force to contracts formed online."  Berman, 30 F.4th at 855-56.  It is thus well-established that "if

a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." Id. at 856.  Out of the considerable volume of case law on the formation of online agreements, some general guideposts have emerged.  "The most straightforward application of these principles in the online world involves so-called 'clickwrap' agreements, in which a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed." Id. (citing Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014)).  Courts routinely find clickwrap agreements enforceable. Id.  "At the other end of the spectrum are so-called 'browsewrap' agreements, in which a website offers terms that are disclosed only through a hyperlink and the user supposedly manifests assent to those terms simply by continuing to use the website." Id.  Courts "are more reluctant to enforce browsewrap agreements." Id.; see also Nguyen, 763 F.3d at 1178 (noting "courts' traditional reluctance to enforce browsewrap agreements against individual consumers").

The parties agree that the arbitration agreement in question here is a hybrid agreement, falling somewhere in between a clickwrap and browsewrap.[24]  Such hybrid agreements "prompt the user to manifest their assent to particular terms by engaging in some dual-purpose action," such as "creating an account" or "executing a purchase order," Nicosia v. Amazon.com, Inc., 384 F. Supp. 3d 254, 266 (E.D.N.Y. 2019) (internal citations omitted), and are enforceable if "the website operator can show that a consumer has actual knowledge of the agreement." Berman, 30 F.4th at 856.  Rocket Mortgage

---

[24] See doc. no. 15-1 at 10; doc. no. 20 at 7.

does not seriously argue, or attempt to show, that Daschbach had actual knowledge of the agreement.  Instead, it relies on an "inquiry notice theory," under which an enforceable contract will be found only if: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  Id.  This analysis "depends on the design and content of the website and the agreement's webpage."  Nguyen, 763 F.3d at 1177.  The court addresses each element in turn, finding that Rocket Mortgage has not made a showing of inquiry notice.

**Reasonably conspicuous notice.**  "[T]o be conspicuous in this context, a notice must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  Berman, 30 F.4th at 856; see also Dana Com. Credit Corp. v. Hanscom's Truck Stop, Inc., 141 N.H. 131, 133 (1996) (Under New Hampshire law, a term is conspicuous if "'attention can reasonably be expected to be called to it.'" (quoting RSA 382-A:1-201)).  Rocket Mortgage relies mainly on a decision from the Eastern District of Michigan, involving purportedly "nearly identical facts and circumstances," to contend that the Website's notice of the terms of use was sufficiently conspicuous.[25]  Daschbach responds that the Website is more analogous to the online agreement in Berman and other cases where courts have found no enforceable arbitration contract.  The court agrees with Daschbach.

---

[25] See doc. no. 15-1, at 1, 9-10 (citing and quoting Shirley v. Rocket Mortg., No. 2:21-CV-13007, 2022 WL 2541123, at *7-8 (E.D. Mich. July 7, 2022)).

The court's analysis turns on the appearance and functionality of the Website, and particularly how users click through the Website to reach the page where they accept the Terms of Use and arbitration clause.  A user begins by navigating a series of 15 webpages, each with a separate question that the user must answer to access the next page.  When the user reaches the sixth question, the page contains a set of "Important Disclosures" at the bottom, in small gray font, set against a white background.  The specific question, in the upper part of the page, is set against a gray background.  The "Important Disclosures" are displayed on the pages for questions 6 through 14.    As pictured below, the disclosures include a block of text and hyperlinks (which are underlined, but also in gray font) to the "Terms of Use," "Our Privacy Notice," "State Privacy Notices," and "Licenses & Disclosures."

When the user reaches the 15th and final question, the format of the webpage changes.  The site directs the user to enter his first and last name, phone number, optional second phone number, and preferred method of communication.[26]  Below the series of data fields – which are set against a gray background – there is a large green button that reads "See my results! >"  Under the green button is the word "Back" in smaller black font (presumably a link to go back to the prior page), and directly below that is the key text for purposes of deciding this motion.  The text is in small gray font (and in a smaller font size than the text above), set against a gray background, in contrast to the white background in the prior pages.  It reads, in pertinent part:

> By clicking the button above, you express your understanding and consent, electronically via E-sign, to the following:
>
> 1. To be matched with and contacted by, up to 5 participants in the <u>LMB Provider Network</u> about mortgage and financial services products, and consent . . . for us and them to contact you for marketing purposes . . . .
>
> 2. To the LMB Lending <u>Terms of Use</u>, <u>Privacy Policy</u>, and Consent to Doing Business Electronically.
> . . . .

A screen shot of the page at issue from Rocket Mortgage's demonstration video[27] is shown below.  The link to the "Terms of Use" appears in underlined, blue font.  It is

---

[26] By this point in the process, the user has already provided his physical address and e-mail address.

[27] This screen shot that the court created from the video demonstration, as well as the video demonstration itself, appear different than the screen shots submitted by Rocket Mortgage (doc. nos. 15-11 and 15-12).  Document numbers 15-11 and 15-12 more clearly show the block of text with the hyperlinks; namely, the gray font is darker and easier to distinguish from its gray background.  Rocket Mortgage urges the court to consider both the screen shots and the video demonstration.  Daschbach argues that the court should only consider the video.  At oral argument, Rocket Mortgage's counsel confirmed the video as showing a user's "experience," but

obvious to the naked eye that the data fields and text above the "see my results!" button are more conspicuous than the text below the button; they are in larger, black font.



Some aspects of this webpage favor a finding of inquiry notice, and others do not. Specifically, the appearance of the hyperlinks and the overall simplicity of the Website favor Rocket Mortgage, while the size and color of the key text favors Daschbach. On balance, after construing the evidence – and drawing all reasonable inferences therefrom

---

asserted that the screen shots more accurately depict what the Website looks like because some of the quality of the display is lost in the video. The court cannot simply take counsel's word that the video's creation resulted in a "slight degradation" in quality, as compared to the screen shots. Particularly where, as here, the court is applying the summary judgment standard and must construe the facts in the light most favorable to Daschbach and give him "the benefit of all reasonable inferences that those facts will bear." Noviello, 398 F.3d at 82.

– in Daschbach's favor (as it must for purposes of this motion), the court cannot find that the Website provided reasonably conspicuous notice.

To begin, the key text and hyperlinks (what the court will refer to as the "fine print") are located close to the "see my results" button.  As the user reaches the button, it appears that some of the fine print comes into view, without additional scrolling.  This supports a finding of conspicuous notice.  To read the remainder of the fine print, however, the user must scroll down further.  It is therefore possible for a user to reach the button and click it without fully seeing or reading the fine print, which weighs against notice.  See Hines v. Overstock.com, Inc., 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009) (concluding that the plaintiff had no actual or constructive notice of the terms of the website, in part because the plaintiff "could not even see the link to them without scrolling down to the bottom of the screen – an action that was not required to effectuate her purchase."); Gaker v. Citizens Disability, LLC, No. 20-CV-11031-AK, 2023 WL 1777460, at *6 (D. Mass. Feb. 6, 2023) (according "significant weight to the fact that the terms appeared below the "CONFIRM YOUR ENTRY" button, such that a user could – and in all likelihood, would – click on the button without ever reaching the portion of the page disclosing the terms" (citation omitted)).

Moreover, "close proximity of the hyperlink to relevant buttons users must click on – without more – is insufficient to give rise to constructive notice."  Nguyen, 763 F.3d at 1179.  And some courts have found that "a consumer is less likely to be bound to terms agreed to on the internet where [as here] the terms were located below the 'accept' or 'submit' button[.]"  Gaker, 2023 WL 1777460, at *6 (citing Sullivan v. All Web Leads,

Inc., No. 17-C-1307, 2017 WL 2378079, at *7 (N.D. Ill. June 1, 2017)).  Thus, the

proximity of the fine print to the "see my results" button is more of a neutral factor.

Another factor supporting notice is the appearance of the hyperlink that leads users

to the "Terms of Use."  The link is displayed in blue font and underlined, in contrast to

the remainder of the fine print and the background.  This both calls attention to it and

makes it more readable, thus "alert[ing] a reasonably prudent user that a clickable link

exists."  Berman, 30 F.4th at 857; see also Meyer v. Uber Techs., Inc., 868 F.3d 66, 78-

79 (2d Cir. 2017) (finding hyperlinks reasonably conspicuous under California law

because they were both in blue and underlined, but also in all caps, unlike here); Dana

Com. Credit Corp. v. Hanscom's Truck Stop, Inc., 141 N.H. 131, 134 (1996) (concluding

that a disclaimer was conspicuous given that it "appears on the front of the contract in

bold-faced capitalized type," rendering it "eas[y] [to] locate[] and read," even "[t]hough

similar attention-calling language appear[ed] in other sections of the contract . . . .").

 Finally, the Website does not contain other design elements (e.g. other links,

images, videos, sounds, etc.) that could distract the user from the language directing him

to the Terms and Conditions.  Instead, the page has a simple design and layout, which

weighs in favor of conspicuous notice under the case law.  See, e.g., Berman, 30 F.4th at

857 (noting that the "comparatively larger font used in all of the surrounding text" and

the "overall design of the webpage, in which other visual elements draw the user's

attention away from the barely readable critical text," directed the user's attention

everywhere else); Nicosia v. Amazon.com, 834 F.3d 220, 236-37 (2d Cir. 2015) (holding

that Amazon's checkout page was not sufficient as a matter of law to place a user on

inquiry notice in part because the page was spatially cluttered with unrelated options and promotions which rendered the notice not "conspicuous in light of the whole webpage").

Despite these aspects of the Website's design and the appearance of the hyperlink, the size and color of the fine print ultimately render the key text insufficiently conspicuous to provide notice. As reproduced above, the text is almost indecipherable to the naked eye. For a user accessing the Website on an iPad, it is likely that the font of the fine print is smaller and even more difficult to read than the screen shots and video offered by Rocket Mortgage. The small size and gray font of the text set against a lighter gray background make it particularly challenging to read. The text is also objectively much smaller than the font and data fields above it, some of which are shown in black font. See Cullinane v. Uber Techs., Inc., 893 F.3d 53, 64 (1st Cir. 2018) (concluding that a hyperlink (which possessed "some of the characteristics that make a term conspicuous") was not conspicuous because "the presence of other terms on the same screen with a similar or larger size, typeface, and with more noticeable attributes diminished the hyperlink's capability to grab the user's attention"). The court thus disagrees with Rocket Mortgage that the key text is "clearly legible, visible and readable."[28] The font size and color are more similar to the text in Berman, which the court found "so small that it [was] barely legible to the naked eye." 30 F.4th at 856-57; see Gaker, 2023 WL 1777460, at *7 (finding no conspicuous notice in part because "the terms were printed in smaller font than other language on the page, and appeared in blue font against a blue

---

[28] Reply Memorandum (doc. no. 22) at 7.

background, with only slight variation in color between the language and the background").[29]

The layout of the fine print here is also different than the websites in Shirley, Rodriguez v. Experian Servs. Corp., No. 2:15-cv-03553-RMRW (C.D. Cal. Oct. 5, 2015), and Hill v. ActiveProspect, Inc., No. 5:20-cv-01351-JGB-KK (C.D. Cal. July 16, 2021), where the courts found reasonably conspicuous notice. For example, while the disclaimer's language in Shirley is identical and similarly sized as the language here, it is set in gray font against a white background, making it much easier to read.[30] The disclosures in Hill and Rodriguez are likewise set against a white background, significantly improving their readability.[31] This material distinction prevents the court from wholly adopting the reasoning from Shirley, as Rocket Mortgage requests.

Additionally, as noted above, in several pages leading up to the final submission page, the site is designed to distinguish and highlight the "important disclosure" language with gray text set against a white background. Yet when the user reaches the crucial

---

[29] See also Pizarro v. QuinStreet, Inc., No. 22-CV-02803-MMC, 2022 WL 3357838, at *1 (N.D. Cal. Aug. 15, 2022) (text found sufficiently conspicuous in part because it was set against a white background, as opposed to gray on gray); Kravets v. Anthropologie, Inc., No. 22-CV-60443, 2022 WL 1978712, at *4 (S.D. Fla. June 6, 2022) (finding white text set against blue background sufficiently conspicuous under Florida law); Helly v. Shutterfly Lifetouch, Inc., No. 22-61270-CIV, 2022 WL 18281745, at *3 (S.D. Fla. Dec. 29, 2022), report and recommendation adopted, No. 0:22-CV-61270-WPD, 2023 WL 185117 (S.D. Fla. Jan. 13, 2023) (finding conspicuous notice where text was contrasted from white background, surrounded by less text, and key phrasing was one sentence, not a longer paragraph of disclaimers); Patrick v. Running Warehouse, LLC, No. 221CV09978ODWJEMX, 2022 WL 10584136, at *5 (C.D. Cal. Oct. 18, 2022) (conspicuous notice where darker text set against white background and single sentence disclaimer, rather than a longer paragraph).

[30] See doc. no. 20-4.

[31] See doc. nos. 20-5; 20-6.

disclosures page, the design changes and the text at the bottom becomes less legible. That is a major design flaw that arguably draws the user's attention away from the key language at the time when it should be calling the most attention to it. Because "online providers have complete control over the design of their websites," Sellers v. JustAnswer LLC, 73 Cal.App.5th 444, 289 Cal. Rptr. 3d 1, 16 (2021), "the onus must be on website owners to put users on notice of the terms to which they wish to bind consumers," Nguyen, 763 F.3d at 1179. Rocket Mortgage (or more accurately, its affiliate LMB), has not met that obligation here.

The factors are therefore split on conspicuousness but tilt decidedly in Daschbach's favor. In the end, it is not indisputable to the court that a reasonably prudent internet user would have seen the fine print and hyperlinks. As the Second Circuit Court of Appeals observed in Meyer and other cases, if "reasonable minds could disagree" about the conspicuousness of the notice, that may be sufficient to defeat a motion to compel arbitration. Meyer, 868 F.3d at 76 (citing Nicosia, 834 F.3d at 237). Said differently, "only if the undisputed facts establish that there is reasonably conspicuous notice of the existence of contract terms" can a court find that a valid agreement to arbitrate has been formed. Id. at 75. The court is unable to reach that conclusion here.

**Unambiguous manifestation of assent.** Because Rocket Mortgage fails to establish inquiry notice under the first element of the Berman test, the court need not decide whether it satisfies the second element. Had it reached this element, however, the court would have found that Rocket Mortgage satisfied it. A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly

advised that the act of clicking will constitute assent to the terms and conditions of an agreement.  <u>See</u> Specht v. Netscape Communications Corp., 306 F.3d 17, 29-30 (2d Cir. 2002).  The presence of "an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound" is critical to the enforceability of any browsewrap-type agreement.  Nguyen, 763 F.3d at 1177.  In Berman, the court found that language such as "By clicking the Continue >> button, you agree to the Terms & Conditions" would have provided unambiguous manifestation of assent.  Berman, 30 F.4th at 857-58; <u>see also</u> Meyer, 868 F.3d at 78-80 (concluding that an enforceable agreement was formed where the mobile app explicitly warned, "By creating an Uber account, you agree to the TERMS OF SERVICE & PRIVACY POLICY").  The Website here contains similar language in reference to the large green button above.

Nevertheless, because Rocket Mortgage cannot show that its Website provided reasonably conspicuous notice of the Terms of Use and accompanying arbitration agreement, it has not met is burden of establishing inquiry notice.  The motion to compel arbitration is accordingly denied.

**B. Motion to dismiss for failure to state a claim**

As an alternative to compelling arbitration, Rocket Mortgage moves to dismiss Daschbach's First Amended Complaint for failure to state a claim.  The motion, which raises several colorable arguments for dismissal, nevertheless falls short for at least the following overarching reasons: (1) it depends on allegations from Daschbach's now-superseded original complaint, which, as noted above, the court cannot rely on when deciding a Rule 12(b)(6) motion to dismiss, <u>see</u> InterGen N.V., 344 F.3d at 145 ("An

amended complaint supersedes the original complaint, and facts that are neither repeated nor otherwise incorporated into the amended complaint no longer bind the pleader."); Wiseman, 463 F.2d at 227 ("As a matter of pleading, the [subsequently amended] original complaint had disappeared."); (2) it injects too many unpled facts into the analysis; (3) it relies on novel interpretations of statutes or insufficiently supported legal arguments; (4) it asks the court to construe, and draw inferences from, the facts as pled in Rocket Mortgage's favor; and (5) it asks the court to resolve purported disputes of fact in Rocket Mortgage's favor.  The court therefore denies the motion without prejudice to Rocket Mortgage raising these and any similar arguments at a later procedural stage.  The court briefly addresses Rocket Mortgage's dismissal arguments for each claim.

**Counts 1 and 2 (TCPA claims arising out of use of Automated Telephone Dialing System (ATDS)).**  Rocket Mortgage contends that Daschbach has pled only conclusory allegations that the company called or texted him using an ATDS.  It further argues that based on admissions from the original complaint and the remaining, non-conclusory allegations in the operative complaint, the court cannot infer that Rocket Mortgage used an ATDS.[32]

---

[32] As previously discussed, the court cannot rely on allegations from Daschbach's original complaint in deciding the motion to dismiss.  But the court also does not view Daschbach's inclusion of the "refinance.enhancedrefinow.com" website in certain class definitions in the First Amended Complaint as "fatal" to his TCPA claims, as Rocket Mortgage contends.  Daschbach did not allege in the operative complaint (or proposed class definitions) that he visited this website.  Instead, he reasonably explained that he included the website in his class definitions in anticipation of Rocket Mortgage arguing that Daschbach and other putative class members consented to being contacted through that website.  See doc. no. 10 at ¶ 31 (defining the "Autodialed Call Class" as including all persons "for whom Defendant claims it obtained prior express consent via the website refinance.enhancedrefinow.com.").  Discovery and a more complete factual record may establish that Daschbach indeed visited the website and provided

"When determining whether a plaintiff has adequately pled the use of an ATDS, courts must" consider "how difficult it may be for unsophisticated consumers to allege facts about the technical specifications of a calling company's dialing system without the benefit of discovery." Barton, 525 F. Supp. 3d at 200. With Daschbach's disadvantaged starting position in mind, the court finds that he has "provided [just] enough non-conclusory facts" to support the reasonable inference that Rocket Mortgage used an ATDS to contact him. Id.

In particular, while Daschbach parrots the statutory definition of an ATDS is paragraphs 8, 43, and 55, he also alleges additional facts about the dialing system in paragraphs 9 and 10, and buttresses those allegations with facts about the calls and texts themselves that plausibly suggest that an ATDS was used.[33] See Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 200 (D. Mass. 2021) (noting that courts may "rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages," as well as the "number or frequency of messages, the ability to respond or interact with the messages, and whether a SMS short code or long code was used to send the message," in determining whether an ATDS was used (quoting Jones v. FMA All. Ltd., 978 F. Supp. 2d 84, 84 (D. Mass. 2013))). Indeed, Rocket Mortgage completely ignores the allegation in paragraph 10, which satisfies the

---

information to Rocket Mortgage (including his phone number), triggering the calls and texts at issue. But it would be premature at the motion to dismiss stage to reach these factual conclusions based on the allegations that appear in the First Amended Complaint alone, and do not appear in the operative complaint.

[33] See ¶¶ 20-26, 28-29 (describing the frequency and content of the calls and text messages, the numbers (including SMS shortcode) used, and the ability to respond or interact with the messages).

definition of ATDS recently stated in Facebook, Inc. v. Duguid, 141 S.Ct. 1163, 1173 (2021).[34]  Rocket Mortgage's motion to dismiss counts 1 and 2 is accordingly denied.

**Count 3 (TCPA claim for telephone solicitations to numbers on the do-not-call registry).**  A "telephone solicitation," as defined in the applicable regulations, "does not include a call or message: (i) [t]o any person with that person's prior express invitation or permission."  47 C.F.R. § 64.1200(f)(15).  Rocket Mortgage argues that because Daschbach alleged in his original complaint that he provided his contact information and requested mortgage refinance information online (albeit to a different website), he invited or permitted the calls and messages at issue, and they are not "telephone solicitations" as a matter of law.  This argument fails primarily because the allegations from Daschbach's original complaint play no role in the court's ruling on this motion (although, as noted supra at § II, they may very well be admissible and relevant at summary judgment).

Daschbach alleges in the operative complaint that he did not consent to the calls or texts.[35]  And he does not allege that he even visited the website in question.  Thus, the court cannot resolve the apparent factual question about whether Daschbach accessed the website, clicked through it, and provided his consent or invitation for Rocket Mortgage to

---

[34] The court also does not view Daschbach's allegation in paragraph 9 that the autodialing system at issue had "the capacity to use a random or sequential number generator in the process of storing numbers from a pre-produced list for texting and calling at a later date" as inconsistent with the Supreme Court's holding in Duguid that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called."  Id.; see also id. at 1172 n.7 ("For instance, an [ATDS] might use a random number generator to determine the order in which to pick phone numbers from a preproduced list.  It would then store those numbers to be dialed at a later time.").

[35] Doc. no. 10, at ¶¶ 29, 42.

contact him at this stage, let alone resolve it in Rocket Mortgage's favor.  The court therefore denies Rocket Mortgage's motion to dismiss Count 3.

**Count 4 (TCPA claim for failure to honor request to stop receiving calls).**  In Count 4, Daschbach asserts that Rocket Mortgage did not institute the proper procedures for maintaining a do-not-call policy, and as a result of these failures, the company sent him two text messages after he had requested no further contact.  Rocket Mortgage argues that Daschbach supports this claim with only bald legal conclusions.  It also contends that because a different court found its procedures adequate as of 2018, it would be implausible to conclude that those same procedures were inadequate in 2021.  In uninvited supplemental briefing, Rocket Mortgage further argues that based on a notice of proposed rulemaking from the Federal Communications Commission, the court should conclude as a matter of law that a plaintiff cannot state an inadequate procedure claim based only on his receipt of text messages.[36]

Rocket Mortgage's arguments improperly require the court to construe the alleged facts and resolve factual disputes in the moving party's favor, and to accept an apparently novel legal argument about the scope of 47 C.F.R. § 64.1200(d).  Daschbach alleges that Rocket Mortgage did not honor his request to stop communicating when it sent him two text messages following the request.  The court can reasonably infer from this allegation that Rocket Mortgage failed to institute procedures to prevent such errors.  Whether a different court found these procedures adequate on a different factual record has no

---

[36] See doc. no. 27, at 1.

bearing on the sufficiency of Daschbach's allegations here, nor does it make the inferences the court can draw from those allegations any more or less reasonable.

The court also cannot simply accept Rocket Mortgage's argument, based on out-of-circuit authority, that the two text messages were an "isolated failure" to honor a do-not-call request.  That may very well be true, but it is not a conclusion or inference the court can permissibly draw in a Rule 12(b) analysis, as opposed to summary judgment (see Fed. R. Civ. P. 56) or trial (see Fed. R. Civ. P. 50).

Lastly, the effect, if any, of the FCC's notice of proposed rulemaking, is at best unclear to the court on this record.  Prior to the February 2023 rulemaking notice, the FCC and numerous courts had taken the position that the regulatory requirements relating to internal do-not-call list procedures applied to text messages as well as telephone calls. See In the Matter of Emanuel Manny Hernandez; Click Cash Mktg., LLC; & Rock Solid Traffic, No. DA18-1291, 2018 WL 6830220, at *1 (F.C.C. Dec. 21, 2018); Sagar v. Kelly Auto. Grp., Inc., No. 21-CV-10540-PBS, 2021 WL 5567408, at *5 (D. Mass. Nov. 29, 2021).  The court thus declines to resolve this newly created split of authority on a limited record, and with the benefit of only one side's briefing, at the pleadings stage.

**Counts 5 and 6 (violations of New Hampshire telemarketing statutes).**

Finally, Rocket Mortgage seeks dismissal of Daschbach's state statutory claims on several grounds.  First, it argues, based on allegations that solely appear in the original complaint, that Daschbach consented to the calls.  Second, it argues that "telemarketing sales calls" as defined in the statute do not include text messages.  And third, Rocket Mortgage contends that because the statute defines "telemarketing" to include "5 or more

telephone calls per month," and Daschbach has only alleged that he received four calls, it did not engage in unlawful telemarketing sales calls or cannot be considered a "telemarketer" as a matter of law.

The court is not persuaded by Rocket Mortgage's arguments. The first is based on allegations in the original complaint, which do not factor into the court's motion to dismiss analysis. See supra § II. As for the others, the parties have advanced reasonable competing constructions of the statute. It would be ill-advised to accept Rocket Mortgage's construction at the motion-to-dismiss stage.[37] Indeed, no court or other New Hampshire authority has construed the statute in the way Rocket Mortgage proposes. By contrast, courts and the FCC have construed the federal analog to the New Hampshire statute as applying to text messages in addition to telephone calls.

In declining to accept Rocket Mortgage's construction of the statute, the court is not agreeing with Daschbach's theory that because he has asserted a putative class action, the court can aggregate the number of telephone calls across the entire class. Rather, the court relies on Daschbach's allegations in the operative complaint that he received at least four telephone calls and two text messages (all unsolicited) from Rocket Mortgage. He has further alleged that "[o]n information and belief, Rocket Mortgage has placed additional telemarketing calls to Plaintiff's cellular telephone number" in addition to the

---

[37] The court is skeptical that an entity that makes four or fewer monthly calls to thousands of customers in New Hampshire would not be considered a "telemarketer." Rocket Mortgage's construction of the statute would compel that result.

four alleged.[38]  The court reasonably infers from these allegations that Rocket Mortgage called Daschbach more than five times in one month, which exceeds the statutory threshold even under Rocket Mortgage's interpretation of the statute.  The motion to dismiss is denied.

## IV.    Conclusion

For the foregoing reasons, Rocket Mortgage's motion to compel arbitration[39] and motion to dismiss[40] are DENIED.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  March 22, 2023

cc:    Taylor True Smith, Esq.
       V. Richards Ward, Jr., Esq.
       Steven J. Dutton, Esq.
       Brooks R. Brown, Esq.
       Christina Hennecken, Esq.
       Kyle Tayman, Esq.

---

[38] Doc. no. 10, at ¶ 27.

[39] Doc. no. 15.

[40] Doc. no. 16.

31