## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| RICHARD DASCHBACH, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>ROCKET MORTGAGE, LLC, a Michigan limited liability company,<br><br>*Defendant.* | Case No. 1:22-cv-00346-JL |

## MEMORANDUM IN SUPPORT OF MOTION TO SUBSTITUTE VIRGINIA DASCHBACH IN PLACE OF PLAINTIFF RICHARD DASCHBACH

### I.     INTRODUCTION

Plaintiff Richard Daschbach initiated this action against Defendant Rocket Mortgage, LLC ("Defendant" or "Rocket Mortgage"), alleging that Rocket Mortgage repeatedly violated the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq.* ("TCPA" or "Act") and New Hampshire state telemarketing laws. (Dkt. 41) Unfortunately, Mr. Daschbach passed away on December 5, 2023. Virginia Daschbach (the "movant"), the spouse of Richard Daschbach, wishes to continue the prosecution of this case on behalf of her late husband. As such, the movant seeks an Order pursuant to Fed. R. Civ. P. 25 permitting her to be substituted on behalf of the Plaintiff in this case.

All of the requirements of Rule 25 are met for substitution. First, the motion is timely. While Rocket Mortgage filed a "Suggestion of Death" on December 15, 2023 (dkt. 44), the document was not served on Plaintiff's successors under Rule 4. As such, the 90-day period to file a motion to substitute has not commenced. *Marcus v. Am. Cont. Bridge League*, 80 F.4th 33, 44

(1st Cir. 2023). Notwithstanding this fact, the motion would be timely even if the filing were proper, given that this motion is being filed within 90-days of the filing of the suggestion of death.

Second, Plaintiff's claims survive his death. Given the absence of an explicit statement in the TCPA regarding survival, the survival of the claims turns on whether these claims can be characterized as remedial or penal. The factors that courts consider when this determination tip decidedly in favor of finding the TCPA to be remedial. Indeed, the purpose of the action was to redress individual harm, not public harm. Notably, any damages sought in this case will run to the individuals harmed by Rocket Mortgage's conduct. Furthermore, because actual damages under the TCPA are difficult to quantify, the damages sought are not disproportionate to the harm suffered. The Court should, therefore, align with the majority of courts to consider this issue and find that TCPA claims are remedial in nature.

Third, the movant is a proper party. While Rule 25 limits substitution to "representatives" and "successors" of the deceased, the movant would qualify as both. She is the surviving spouse of Mr. Daschbach. Under the terms of Plaintiff's last will and testament, she is named as the executor and is his sole beneficiary. Put simply, Plaintiff is the proper party for substitution, and no alternative party would have a superior right to be substituted.

For these reasons and as explained further below, the Court should grant the instant motion.

## II.    STATEMENT OF FACTS

This case involves Defendant's alleged violations of the TCPA and New Hampshire state telemarketing laws. (Dkt. 41.) In September 2021, Plaintiff began receiving unsolicited telemarketing calls from Rocket Mortgage, including at least five calls and nineteen text messages between September 2021 and March 2022. (*Id.* ¶¶ 20–44.) Each of these calls and texts sought to solicit Plaintiff to purchase Defendant's mortgage products and services. (*Id.* ¶ 46.) Plaintiff never

consented to receive telephone calls from Rocket Mortgage, and he had no prior relationship with Defendant. (*Id.* ¶ 47.) On September 2, 2022, Plaintiff filed his complaint on behalf of himself and classes of similarly situated individuals for violations of the TCPA and New Hampshire's state telemarketing law (dkt. 1), which was later amended (dkts. 10, 41).

Plaintiff unfortunately passed away on December 5, 2023, in Exeter, New Hampshire. (*See* Declaration of Virginia Daschbach ("V.Daschbach Decl."), attached hereto as Ex. A ¶ 3.) He is survived by his wife, Virginia Daschbach, and his three daughters. (*Id.* ¶ 2.) Prior to his death, Plaintiff executed a last will and testament, which designated his wife, the movant, as the executor of his estate and his sole beneficiary. (*Id.* ¶ 4.) Because Plaintiff also established a revocable trust, there are no plans to proceed with the administration of his estate in the State of New Hampshire. (*Id.* ¶¶ 4-5.)

As the representative and successor to Plaintiff's surviving claims against Rocket Mortgage, Virginia Daschbach brings this motion to substitute herself on behalf of her late husband.

## III.   ARGUMENT

Rule 25 provides that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party." Fed. R. Civ. P. 25(a)(1). Upon substitution, a "substituted party steps into the same position of the original party." *Ransom v. Brennan*, 437 F.2d 513, 516 (5th Cir. 1971). In resolving a Rule 25 motion to substitute, "a court must consider whether: (1) the motion is timely; (2) the claims pled are not extinguished; and (3) the person being substituted is a proper party." *Abellan v. HRDS Le Roy Il, LLC*, No. 16-1037, 2020 WL 10355049, at *1 (C.D. Ill. June 19, 2020). As explained below, all of the requirements are met for substitution. The motion is timely, and the movant is the proper party to carry on the prosecution of Plaintiff's surviving

claims. As such, the Court should grant the instant motion and substitute the movant as the plaintiff in this case.

### A.    The motion is timely under Fed. R. Civ. P. 25.

As to the first requirement, a motion for substitution may be made "within 90 days after service of a statement noting the death." Fed. R. Civ. P. 25(a)(1). Rule 25(a)(3) requires that the statement noting the death "must be served on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." *Marcus*, 80 F.4th at 44. "The only nonparties mentioned in Rule 25 are 'the decedent's successor or representative.'" *Id.* As such, a valid suggestion of death "must be provided to nonparty successors or representatives in order to empower them to take appropriate 'action to preserve the claim if so desired.'" *Id.* (citing *Fariss v. Lynchburg Foundry*, 769 F.2d 958, 962 (4th Cir. 1985)). Indeed, "it would be superfluous for the rule to provide that nonparties must be served under Rule 4 if service upon a decedent's successor or personal representative was not required." *Id.* (citing *United States v. Walker*, 665 F.3d 212, 228 (1st Cir. 2011)).

The instant Motion is timely. Although Rocket Mortgage filed a Suggestion of Death on December 15, 2023 (dkt. 44), the certificate of service fails to demonstrate that it served the notice of Plaintiff's "successor or representative" pursuant to Rule 4. The lack of adequate service means that "the 90-day period to move to substitute was never triggered." *Marcus*, 80 F.4th at 44–45. And this makes sense. It makes little sense to provide notice to only the deceased of his own death. Rather, the notice must be provided to the deceased's representatives and successors, who have the ability to act on his behalf. Notwithstanding the lack of a valid statement of death, the motion is still timely. Indeed, "a motion to substitute can be made before a valid suggestion of death has been made." *Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993).

Moreover, even assuming the Suggestion of Death was adequately served, the movant filed within 90 days of the suggestion's filing in any case. Simply put, this Motion is timely.

**B.**   **Plaintiff Richard Daschbach's claims under the TCPA and the New Hampshire state telemarketing calls are not extinguished.**

Second, substitution under Rule 25 is "only appropriate to the extent that the claim is not extinguished." *MacCausland v. Uber Techs., Inc.*, No. CV 17-10253-NMG, 2019 WL 13234782, at *10 (D. Mass. Aug. 30, 2019). Whether a claim survives the death of a party "is determined by 'the nature of the cause of action for which the suit is brought.'" *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 603 F. Supp. 2d 677, 680 (S.D.N.Y. 2009) (quoting *Ex parte Schreiber*, 110 U.S. 76, 80, 3 S.Ct. 423, 28 L.Ed. 65 (1884)). Unless a statute directly addresses the issue, "courts are generally guided by principles of federal common law, which prescribe that claims characterized as 'penal' abate upon a party's death, while claims characterized as 'remedial' survive." *Id.* (citing *Ex parte Schreiber*, 110 U.S. at 80, 3 S.Ct. 423; *United States ex rel. Neher v. NEC Corp.*, 11 F.3d 136, 137 (11th Cir.1994)). To make this determination, courts examine the following factors: "(a) whether the purpose of the action is to redress individual wrongs or wrongs to the public; (b) whether the recovery runs to the individual or the public; and (c) whether the recovery is disproportionate to the harm suffered." *Sharp v. Ally Fin., Inc.*, 328 F. Supp. 3d 81, 88 (W.D.N.Y. 2018) (citation omitted).

The Sixth Circuit, albeit in the context of a Rule 15 motion to amend, squarely addressed "whether a claim under the TCPA survives a plaintiff's death." *Parchman v. SLM Corp.*, 896 F.3d 728, 738 (6th Cir. 2018). The *Parchman* court explained that because the "TCPA does not contain an expression of Congressional intent regarding survival", the survival of the claims turns on the factors highlighted above. *Id.* And because the statute's primary purpose is to protect "individuals from the harassment, invasion of privacy, inconvenience, nuisance, and other harms associated

with unsolicited, automated calls", the first factor argues in favor of finding the statute is remedial. *Id.* at 738-39. The court also found that because recovery under the TCPA runs to the harmed individual (as opposed to the public), the second factor argues in favor of finding the statute to be remedial. *Id.* at 740.

As to the third factor, the *Parchman* court explained that the $500 damages provision is not "wholly disproportionate to the harm suffered as a result of receiving these irritating and invasive calls," but went on to state that the "treble damages provision is more likely disproportionate". *Id.* While this leans, in part, toward finding TCPA claims penal, the court went on to explain:

> [T]he TCPA should not be found to be penal merely because one remedy authorized by the statute may be disproportionate to the harm suffered. "[T]he Supreme Court, this court and the courts of numerous other circuits have held a number of statutory schemes authorizing multiple recoveries and minimum recoveries greater than actual damages to be remedial." *Murphy*, 560 F.2d at 210. Murphy itself found the Truth in Lending Act was "not made penal by the fact that" it allowed actual damages plus "twice the finance charge." *Id.* at 210. The RICO statute has also been found to be a remedial statute even though it provides that an injured person "shall recover threefold the damages he sustain[ed]." 18 U.S.C. § 1964(c); *see Malvino v. Delluniversita*, 840 F.3d 223, 230 (5th Cir. 2016); *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991). Courts have also found the antitrust statute, which provides for damages identical to those allowed by the RICO statute, to be remedial. 15 U.S.C. § 15(a); *see, e.g., Hicks v. Bekins & Moving Storage Co.*, 87 F.2d 583, 585 (9th Cir. 1937).

*Id.* In the end, the *Parchman* court found that the claims were remedial and that "claims under the TCPA do survive a plaintiff's death." *Id.* at 741.

The Sixth Circuit decision is in line with the majority view. Indeed, numerous courts have conducted the same analysis and reached the same conclusion that TCPA claims survive the death of a plaintiff. *See Sharp*, 328 F. Supp. 3d at 97-98 ("a private claim brought pursuant to § 227(b)(3) and § 227(c)(5) of the TCPA is primarily of a 'remedial' nature, and thus, it did not extinguish upon Plaintiff's death."); *Wright v. USAA Sav. Bank*, No. 219CV00591WBSCKD, 2019 WL

6

6341174, at *1–2 (E.D. Cal. Nov. 27, 2019); *Est. of O'Shea through O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L-RBB, 2021 WL 4819311, at *2 (S.D. Cal. Oct. 15, 2021); *Krakauer v. Dish Network LLC*, No. 1:14-CV-333, 2019 WL 3002883, at *5 (M.D.N.C. July 10, 2019); *Jewett v. Bishop, White Marshall & Weibel, P.S.*, No. CV 12-10142 PSG MRWX, 2013 WL 6818245, at *2 (C.D. Cal. Feb. 25, 2013); *Fed. Trade Comm'n v. Day Pacer LLC*, No. 19 CV 1984, 2023 WL 5671618, at *9 (N.D. Ill. Sept. 1, 2023).

The same is true here. Daschbach filed this action to redress injuries that he and members of the alleged classes suffered. He seeks damages for the individuals harmed by Rocket Mortgage's conduct and does not seek any damages for the public at large. (*See* Dkt. 41 ¶¶ 17, 48, 62-63, 74-75, 89-90, 97-98.) Further, the damages sought are not disproportionate to the harm suffered. While Rocket Mortgage will likely argue that the presence of statutory damages and the potential for any damages to be trebled renders the TCPA penal, the majority of courts to address this issue have rejected this contention. Put simply, the TCPA is a remedial statute designed to address harms suffered by individuals who receive unlawful calls. *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 54–55 (2d Cir. 2017), as amended (Aug. 21, 2017) (noting the TCPA should be construed "in light of its broad remedial purpose to protect consumers"); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013) ("Because the TCPA is a remedial statute, it should be construed to benefit consumers."); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019).

The New Hampshire state telemarketing law claims should survive for the same reasons. Plaintiff sought redress under the state law claims on behalf of himself and the class members for injuries they suffered, as opposed to public harm. (*See* Dkt. 41 ¶¶ 108-109, 118-119.) The damages are also sought for the individual harmed, not the public at large. (*See id.*) And the statutory damages of $1,000 are remedial in nature for the same reasons as under the TCPA. N.H. Rev. Stat.

Ann. § 359-E:11(II); *Parchman*, 896 F.3d at 740 (noting that the harm associated with the receipt of unlawful calls "is hard to quantify"). The fact that damages can be increased for willful or knowing violations of the statute also does not render the entire statute penal in nature. Indeed, it must be pointed out that the New Hampshire legislature delineated between "penalt(ies)" and "damages" under the statutory scheme. *Compare* N.H. Rev. Stat. Ann. § 359-E:11(I), *with* § 359-E:11(II). On balance, the provisions of the New Hampshire state telemarketing laws at issue here, like the TCPA, were intended to be remedial in nature. As such, the state law claims should survive as well.

Finally, to the extent that Rocket Mortgage asserts that the class claims should be stricken, the Court should follow the majority of courts that routinely decline to do so in advance of a motion for class certification. *See Lemus v. Owens-Brockway Glass Container, Inc.*, No. 221CV00146FLAAFMX, 2022 WL 18278584, at *2 (C.D. Cal. June 21, 2022) (rejecting the defendant's argument that a substituted plaintiff was an inadequate class representative and finding the "argument unpersuasive, as it is premature and more properly made in opposition to a motion for class certification."); *Adler v. Bank of Am., N.A.*, No. 13 CV 4866 VB, 2015 WL 2330171, at *2 (S.D.N.Y. Mar. 24, 2015) (same); *Turnage v. Oldham*, No. 2:16-CV-2907-SHM-TMP, 2019 WL 5424425, at *4 (W.D. Tenn. Oct. 22, 2019) (explaining that a substituted plaintiff "could serve as a class representative for a damages subclass."); *Williams v. Big Picture Loans, LLC*, 339 F.R.D. 46, 60 (E.D. Va. 2021), *aff'd sub nom. Williams v. Martorello*, 59 F.4th 68 (4th Cir. 2023) ("allowing an estate administrator to serve as a class representative in place of a deceased plaintiff is a generally accepted practice."); *Allen v. Holiday Universal*, 249 F.R.D. 166, 186 (E.D. Pa. 2008) ("There is no *per se* rule that an estate administrator cannot be a class representative, and courts have found estate administrators to be adequate class representatives notwithstanding the

possible evidentiary and discovery challenges this might cause."); *Est. of O'Shea through O'Shea*, 2021 WL 4819311, at *3 (finding, in a TCPA case, that a substituted party satisfies "the typicality and adequacy requirements of Rule 23(a).").

Because the TCPA and the New Hampshire state telemarketing laws are remedial statutes designed to address harms suffered by individuals, the Court should find that the claims survive Plaintiff's death.

### C.    Virginia Daschbach is the proper party for substitution.

Finally, a "proper party" for substitution under Rule 25 means either "the successor of the deceased or the representative of his estate." *Yates v. Smith*, No. 917CV1227LEKML, 2019 WL 4508929, at *1 (N.D.N.Y. Sept. 19, 2019) (citation omitted); *Americus Mortg. Corp. v. Est. of Belli*, No. CIV.A. 12-10861-GAO, 2014 WL 4966027, at *1 (D. Mass. Sept. 30, 2014) ("The estate of a deceased party is not a proper party under Rule 25. A proper party under Rule 25 must be a legal representative of the deceased."); *Komondy v. Gioco*, No. 3:12-CV-250 (CSH), 2014 WL 12918203, at *5 (D. Conn. Jan. 29, 2014). "Although a state court determination can be helpful in identifying a decedent's successor or representative, no such designation is required before a federal court can determine the proper party for substitution." *CFS 12 Funding LLC v. Wiesen*, No. 21-CV-9711 (PKC), 2023 WL 3817910, at *2 (S.D.N.Y. June 5, 2023) (quoting *U.S. Bank N.A. as Trustee for RMAC Trust, Series 2016-CTT v. Sager*, 2022 WL 4392668, at *3 (E.D.N.Y. Sept. 23, 2022)). Rather, Rule 25(a)(1) "sought to dispel unwarranted rigidity and allow more flexibility in substitution." *Todd v. A Team Sec., Inc.*, No. 20CIV1568LDHVMS, 2021 WL 11636881, at *4 (E.D.N.Y. Sept. 9, 2021).

A "representative" of the deceased is "determined by the forum state's law." *Yates*, 2019 WL 4508929, at *1. Under New Hampshire law, the following can be appointed "administer" of

the estate: (1) the executor named in a will; (2) the widow, husband or any of the next of kin, or to such suitable person as they or any of them may nominate; (3) one of the devisees or creditors; or (4) any such person that a judge deems proper. N.H. Rev. Stat. Ann. § 553:2. Relevant here, Rule 25 does not impose the requirement that a decedent be "formally appointed as the representative of the estate." *U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT v. Sager*, 630 F. Supp. 3d 417, 421 (E.D.N.Y. 2022). Rather, "[w]here there is no appointed representative, and no practical need to seek one, the district court should ... look at the facts and circumstances of each case and then determine whether the person moving to substitute will sufficiently prosecute or defend the action on the decedent's behalf." *Id.* (citing *In re Baycol Prod. Litig.*, 616 F.3d at 788).

A "successor," on the other hand, is "(1) the primary beneficiary of an already distributed estate; (2) named in a will as the executor of the decedent's estate, even if the will is not probated; or (3) the primary beneficiary of an unprobated intestate estate which need not be probated." *Boniface v. Viliena*, 338 F. Supp. 3d 50, 72 (D. Mass. 2018); *In re Baycol Prod. Litig.*, 616 F.3d 778, 784–85 (8th Cir. 2010) (same) (collecting cases); *see also Sinito v. U.S. Dep't of Just.*, 176 F.3d 512, 516 (D.C. Cir. 1999) ("we have held not only that an executor or administrator of a decedent's estate is a proper party for substitution, but also that the distributee of a decedent's estate may be a "successor" of an estate that has been distributed and thus can be a proper party.").

The movant is unquestionably a proper party within the meaning of Rule 25. Indeed, she would qualify as both the "representative" and a "successor" of Mr. Daschbach. The movant is named in Mr. Daschbach's will as the executor of the estate. (*See* V.Daschbach Decl. ¶ 4.) While the will has not and will not be probated (*id.*), this makes no difference for the purposes of Rule 25. *See U.S. Bank Nat'l Ass'n as Tr. for RMAC Tr., Series 2016-CTT*, 630 F. Supp. 3d at 421. In addition to being named in the will, the movant would also qualify to be appointed the

administrator of the estate under New Hampshire law. *See* N.H. Rev. Stat. Ann. § 553:2(II). Put simply, the movant, Plaintiff's surviving spouse, qualifies as a representative of the estate and thus a "proper party" to be substituted here. *See McSurely v. McClellan*, 753 F.2d 88, 97, 99 (D.C. Cir. 1985) (finding surviving spouses to be "proper parties" where they were named as executors in wills that "were not probated" and neither was designated as a "legal representative").

The movant would also qualify as a "successor" of Mr. Daschbach. Because the estate will not be probated, there are no beneficiaries of a distributed estate. However, the movant meets the last two categories to qualify as Plaintiff's "successor." As explained above, she is named in the will as the executor of Mr. Daschbach's estate, which will not be probated. (V.Daschbach Decl. ¶ 4.) This is sufficient to qualify as a proper party. *See CFS 12 Funding LLC*, 2023 WL 3817910, at *2-3. Added to this, the movant is a co-trustee and primary beneficiary of the revocable trust established by Plaintiff. (V.Daschbach Decl. ¶ 5.) However, the Court need not make any determinations regarding the trust, because it is sufficient that she was named as the executor in the unprobated will. *See, e.g., Komondy*, 2014 WL 12918203, at *7.

As a final point here, the movant could satisfy the third category to be a successor as well. Because all of Plaintiff's assets were distributed via a revocable trust, there are no plans to file with New Hampshire's probate division. (V.Daschbach Decl. ¶¶ 4-5.) Even assuming *arguendo* that the will and trust were both found to be inadequate (they would not be), the movant would still be the primary beneficiary under New Hampshire law of an unprobated intestate estate. N.H. Rev. Stat. Ann. § 561:1(I)(b). And because a surviving spouse cannot be disinherited, *see* N.H. Rev. Stat. Ann. § 560:10, *et seq.*, there is no scenario where the movant would not remain a primary beneficiary. For all of these reasons, it is clear that Plaintiff's spouse qualifies as a "successor" under Rule 25 as well.

Regardless of which way the Court analyzes the issue, the movant is a proper party to be substituted for Mr. Daschbach. She is capable of understanding the facts and circumstances of the case and will diligently prosecute the action on the decedent's behalf. (V.Daschbach Decl. ¶¶ 7-8.) As such, the Court should grant this motion and substitute the movant, Virginia Daschbach, on behalf of the Plaintiff.

## IV.    CONCLUSION

This Court should grant the instant motion. The motion is timely, and the Movant is a proper party to continue to prosecute Plaintiff's surviving claims. Therefore, the Movant, Virginia Daschbach, respectfully requests that the Court grant this Motion to Substitute, and order any additional relief as the Court deems just and proper.

Date: March 14, 2024                        **VIRGINIA DASCHBACH**,

                                             */s/ Taylor T. Smith*

                                            Taylor True Smith (admitted *pro hac vice*)
                                            Woodrow & Peluso LLC
                                            3900 E Mexico Ave Ste 300
                                            Denver, CO 80210
                                            720-907-7628
                                            Fax: 303-927-0809
                                            Email: tsmith@woodrowpeluso.com

                                            V. Richards Ward, Jr.
                                            Law Offices of V. Richards Ward Jr PLLC
                                            98 Center Street
                                            PO Box 1117
                                            Wolfeboro, NH 03894
                                            Tel: 603-569-9222
                                            Fax: 603-569-9022
                                            Email: Rick@VRWardLaw.com

                                            *Counsel for the Movant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 14, 2024, a true and correct copy of the above papers was served upon counsel of record by filing such papers via the Court's CM/ECF system.

*/s/ Taylor T. Smith*